**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TAYLOR BUDOWICH, *et al.*,

      Plaintiffs,

v.                               Case No.: 1:21-cv-03366

NANCY PELOSI, *et al.*,

      Defendants.

_____/

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

On December 23, 2021, at roughly 7:00 p.m. EST, Plaintiff Taylor Budowich received notice from his bank, JPMorgan Chase Bank, N.A. that it was subpoenaed by the House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. JPMorgan informed Mr. Budowich that it intended to produce the documents unless Mr. Budowich provided it "documentation" not later than 5:00 p.m. December 24, 2021 "legally obligating [JPMorgan] to stop taking such steps." To state the obvious, December 24th is federal holiday. The federal courts are closed. The Capitol is closed. National banks are closed.[1]

Mr. Budowich's counsel immediately reached out to JPMorgan to seek an extension. JPMorgan refused. Mr. Budowich reached out to counsel for the Select Committee for an extension.  The Select Committee refused. Thus, Mr. Budowich is forced, on less than 24 hours'

---

[1] Due to the extremely short timeline within which Mr. Budowich was forced to draft this order, it does not contain citations to the Complaint. Nonetheless, Mr. Budowich expressly incorporates the allegations of the Complaint in this motion and relies on them as support for this motion. Additionally, the undersigned files an affidavit in accordance with Local Rule 65.1(b).

notice, to file a complaint and temporary restraining order that prevents JPMorgan from producing Mr. Budowich's personal financial records.

It gets worse. JPMorgan refuses to provide Mr. Budowich with a complete copy of the Subpoena. The Select Committee has also refused to provide Mr. Budowich with a copy of the Subpoena. Thus, Mr. Budowich is left in the undesirable position to move for a restraining order, on less than 24 hours' notice, without knowing what records were subpoenaed, without knowing how long they had been subpoenaed, without knowing the date range of subpoenaed records, without knowing whose records—Mr. Budowich or his company—were subpoenaed. All on a federal holiday.

Mr. Budowich requests an order temporarily restraining JPMorgan from producing Mr. Budowich's financial records to the Select Committee and for fees and costs associated with bringing this motion. The conduct by both JPMorgan and the Select Committee demonstrates bad faith. Instead of acting as the American people's institution investigating events that undermined democracy, the Select Committee's actions here demonstrate it is a politicized entity determined to harass its political adversaries.

## I. Standard of Review

To obtain a temporary restraining order, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining order were not granted; (3) that such an order would not substantially injure other interested parties; and (4) that such an order furthers the public interest. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). The Court evaluates these four factors on a sliding scale. Fraternal Ord. of Police Libr. of Cong. Lab. Comm. v. Libr. of Cong., 639 F. Supp. 2d 20, 23–24 (D.D.C. 2009) (citing Davenport v. Int'l Bhd.

of Teamsters, 166 F.3d 356, 361 (D.C.Cir.1999)). "If plaintiffs make an exceptionally strong showing on one factor, they need not make as strong a showing on the remaining factors. For example, if plaintiffs make[] a strong showing of irreparable harm and there is no substantial harm to defendants, the Court applies a correspondingly lower standard for likelihood of success." Id. (citing WMATC v. Holiday Tours, 559 F.2d 841, 843 (D.C.Cir. 1977)). Plaintiffs Taylor Budowich and Conservative Strategies, Inc.[2] moves for an order temporarily restraining JPMorgan from producing documents to the Select Committee.

## II.    Argument

This Court should grant Mr. Budowich's motion. JPMorgan provided Mr. Budowich essentially no notice to challenge a subpoena it knew Mr. Budowich was likely to challenge. But beyond the "gotcha" tactics of both JPMorgan and the Select Committee, all four factors weigh in Mr. Budowich's favor. The Select Committee is not duly formed and thus its actions are without authority. Because the Committee is not duly formed, the subpoena is invalid. Additionally, Mr. Budowich will suffer irreparable harm if his records are produced. There is no recourse once the records are produced. However, there is no harm to the Select Committee. The Select Committee is not authorized to conduct criminal investigations. There is no timeline for its investigation. Any delay to it causes no harm whatsoever. Lastly, the temporary restraining order favors the public interest because, although the Select Committee purports to represent the public, it is operating ultra vires, is infringing private citizens constitutional rights, and the public has no right in Mr. Budowich's financial records.

---

[2] Because the undersigned does not possess a full and complete copy of the subpoena, the undersigned reserves the right to add any other companies associated with Taylor Budowich that have an account at JP Morgan Chase.

**A. Mr. Budowich is likely to succeed on the merits.**

Mr. Budowich is likely to succeed on the merits because it is clear that the Select Committee is operating ultra vires. House Resolution 503, the resolution creating the Select Committee, requires that the Committee be comprised of thirteen members. H.R. 503, § 2(a) ("The Speaker shall appoint 13 Members to the Select Committee."). The Committee has, and has always had, only nine members. See https://january6th.house.gov/about/membership. Further, Section 2(a) requires that five of the thirteen members "be appointed after consultation with the minority leader." H.R. 503, § 2(a). There are only two Republican members on the Select Committee, neither of which were recommended by the minority leader. Thus, the committee is not duly formed pursuant to its own authorizing charter.

The separation of powers doctrine is no impediment here. Although the judiciary normally avoids questions of congressional procedure and authority, here Mr. Budowich's personal rights are being violated by an entity that fails to comply with its own authorizing charter. The Court can intervene in such circumstances. See, e.g., Watkins v. United States, 354 U.S. 178, 187 (1957) ("There is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress."). Moreover, Mr. Budowich is likely to prevail on his claim that any information that is pertinent to the Select Committee's investigation has already been turned over by Mr. Budowich. Thus, the subpoena for Mr. Budowich's financial records to JPMorgan lacks any connection to the Select Committee's stated objectives. See id.

Further, as stated in the Complaint, the Select Committee's unauthorized investigation into the finances of private citizens exceeds its authority under the Constitution and *violates* the separation of powers doctrine. Id. ("Nor is the Congress a law enforcement or trial agency. These are functions of the executive and judicial departments of government."). Contrary to the

statements of several members of the Select Committee, "[i]nvestigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." Watkins, 354 U.S. at 187. Because the Select Committee has admitted it is a quasi-law enforcement entity, its actions violate the Constitution. Accordingly, Mr. Budowich is likely to succeed on the merits.

**B. Mr. Budowich will suffer irreparable harm and the Select Committee and JPMorgan will suffer no harm.**

Mr. Budowich will suffer irreparable harm absent a restraining order. To demonstrate irreparable harm, "[t]he moving party must show '[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm.' Chaplaincy of Full Gospel, 454 F.3d at 297 (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir. 1985)). Additionally, "the injury must be beyond remediation." Id.

Here, the imminence is easily present. Mr. Budowich was given twenty-two hours, on Christmas Eve, to provide "documentation" to JPMorgan to object to the subpoena. Both JPMorgan and the Select Committee declined to extend the deadline for compliance. Mr. Budowich filed his complaint and this motion as soon as possible, and before JPMorgan's and the Select Committee's arbitrary and completely unreasonable deadline.

Moreover, on information and belief (because JPMorgan and the Select Committee refuse to provide Mr. Budowich with a copy of the Subpoena), the JPMorgan Subpeona requests documents that far exceed the scope of what is necessary for the Select Committee to investigate the causes of the events on January 6, 2021. Any records sought after January 31, 2021 would be unnecessary and are an attempt to pry into Mr. Budowich's personal and professional life, unconnected to any legislative purpose. Moreover, the injury would be beyond remediation. Once the records are produced, Mr. Budowich will have lost control of the documents and will be at the

mercy of the Select Committee to safeguard his personal information. Thus, a temporary restraining order will maintain the status quo while the Court has sufficient time to contemplate the weighty constitutional arguments of congressional authority, individual liberties, and separation of power.

The Select Committee and JPMorgan will suffer no harm if the status quo is maintained while the Court considers the issues in this case. The Select Committee is investigating past events with an objective of issuing a report. H.R. 503 § 3. A slight delay in this process will not harm the Select Committee. As a responding third-party, JPMorgan will suffer no harm by entry of a temporary restraining order.

**C. The public interest will not be harmed.**

Lastly, the public interest will not be harmed by the issuance of a temporary restraining order. The public has no right to Mr. Budowich's private financial documents. Thus, any delay in the Select Committee obtaining such documents would not impact the public interest. Moreover, the public has an interest in ensuring that elected members of government do not abuse their powers by acting in an unconstitutional manner that infringes citizens' rights. As that is what the Select Committee is doing here, the public interest is best served in maintaining the status quo during the pendency of this case.

WHEREFORE, Plaintiff Taylor Budowich respectfully requests that this Court enter a temporary restraining order preventing JPMorgan Chase Bank, N.A. from producing records belonging to Taylor Budowich or any entity for which he is the owner to the Select Committee.

Date:  December 24, 2021                  Respectfully submitted,

                                          **s/ Christopher W. Dempsey**
                                          CHRISTOPHER W. DEMPSEY
                                          D.D.C. Bar ID:  AR0006
                                          Daniel K. Bean (*Pro hac vice* forthcoming)
                                          Jared J. Burns (*Pro hac vice* forthcoming)
                                          ABEL BEAN LAW, P.A.
                                          100 N Laura Street, Suite 501
                                          Jacksonville, Florida 32202
                                          Telephone:  (904) 944-4100
                                          Fax:  (904) 944-4122
                                          Email: cdempsey@abelbeanlaw.com