```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
-----------------------------X

TAYLOR BUDOWICH
CONSERVATIVE STRATEGIES, INC.

            Plaintiffs
                 v.            Civil Action 21-3366 (JEB)

NANCY PELOSI, et al.,

            Defendants

-----------------------------X
                              Washington, D.C
                              Thursday, January 20, 2022
                              10:00 a.m.

            TRANSCRIPT OF TRO HEARING (via video)
         BEFORE THE HONORABLE JAMES E. BOASBERG
                UNITED STATES DISTRICT JUDGE
APPEARANCES:

For the Plaintiffs:        Christopher Dempsey, Esq.
                   Jared Burns, Esq.
                   Daniel Bean, Esq.
                   ABEL BEAN LAW, P.A.
                   100 N. Laura Street, Suite 501
                   Jacksonville, FL 32202
                   (904) 944-4100

For the Defendants:        Douglas N. Letter, Esq.
                   U.S. HOUSE OF REPRESENTATIVES
                   Office of General Counsel
                   219 Cannon House Office Building
                   Washington, DC 20515
                   (202) 225-9700

                   Loretta Lynch, Esq.
                   PAUL, WEISS, RIFKIND, WHARTON
                      & GARRISON LLP
                   1285 Avenue of the Americas
                   New York, NY 10019-6064
                   (212) 373-3000
```

```
APPEARANCES:  (Cont'd.)

For Defendants:       Roberto J. Gonzalez, Esq.
                      Rosie Vail, Esq.
                      PAUL, WEISS, RIFKIND, WHARTON
                         & GARRISON LLP
                      2001 K Street NW
                      Washington, DC 20006
                      (202) 223-7300
```

```
Court Reporter:       Lisa Walker Griffith, RPR
                      U.S. District Courthouse, Room 6507
                      Washington, D.C.  20001
                      (202) 354-3247
```

1      **P R O C E E D I N G S**

2            THE COURTROOM DEPUTY:  We're here for a motion

3      hearing in Civil Case 21-3366.  Taylor Budowich Conservative

4      Strategies Inc. versus Nancy Pelosi, et.al.

5            Counsel, please identify yourselves, beginning with

6      the plaintiffs.

7            MR. DEMPSEY:  Good morning, Your Honor.  Christopher

8      Dempsey, along with my colleagues on Zoom, Dan Bean, Jared

9      Burns.  I'm here on Zoom with my client, Mr. Budowich.

10           THE COURT:  Okay.  Thank you.  Good morning to you

11     both.

12           MR. LETTER:  Good morning, Your Honor.  This is

13     Douglas Letter, the General Counsel for the U.S. House of

14     Representatives.

15           THE COURT:  Good morning, Mr. Letter.

16           MR. LETTER:  Good morning.

17           THE COURT:  Let's have Ms. Lynch state her

18     appearance for JPMorgan.

19           MS. LYNCH:  Good morning, Your Honor.  On behalf of

20     Defendant JPMorgan Chase, Loretta Lynch from the firm of Paul

21     Weiss, and off Zoom, my partner, Roberto Gonzalez and

22     associate Ms. Rosie Vail, V-a-i-l.

23           THE COURT:  Thank you.

24           So we're here today for a TRO hearing on the

25     application by the plaintiffs to have the documents that were

1  subpoenaed from JPMorgan and provided to the Select Committee

2  returned.  And also to block the use in any way of the

3  documents by the committee which has obviously already seen

4  the documents.

5      Anything preliminary before we begin, Mr. Dempsey?

6      MR. DEMPSEY:  No, Your Honor.  Plaintiffs are ready

7  to proceed.

8      THE COURT:  Okay.

9      Mr. Letter?

10      MR. LETTER:  No, Your Honor.  We're ready.

11      THE COURT:  Okay.  I have actually obtained a copy

12  of the subpoena for in-camera review which I obtained

13  yesterday from the defendants, government defendants.

14      Ms. Lynch, what is JPMorgan's position on sharing

15  the subpoena with the plaintiffs?  Because the House has not

16  shared it and does not have a duty, JPMorgan, the House is

17  not taking a position as to whether JPMorgan can or cannot

18  share the document.  What is your position on that?

19      MS. LYNCH:  Good morning, Your Honor.  Thank you for

20  the opportunity.  JPMorgan's position is that it has provided

21  the cover of the subpoena, it did not provide the rider

22  pursuant to discussions with the House Committee.  And would

23  prefer to have the opportunity to confer again with the House

24  on that point before coming to a decision as to what it could

25  or could not provide.

1              Typically, as was noted in the correspondence to the

2     client, the decision as to whether it should provide the

3     subpoena was referred back to the committee and we have not

4     had a chance to speak with them about that subsequently.

5              THE COURT:  Again, Mr. Dempsey, I think you can

6     continue to talk with JPMorgan about that since it is your,

7     they are the holder of your client's account and you can

8     discuss with them or your client can discuss with them about

9     release.  As I said, I have reviewed it because I think it is

10    relevant to determine whether it is overbroad.  So I have

11    done that.

12              All right.  So let us --

13              Ms. Lynch, I didn't give you the opportunity.   Is

14    there anything preliminary for you before we begin?

15              MS. LYNCH:  No, Your Honor.  But thank you for the

16    opportunity.

17              THE COURT:  All right.

18              Mr. Dempsey, go ahead.

19              MR. DEMPSEY:  Your Honor, before we proceed,

20    plaintiffs object to the Court's in-camera review of the

21    subpoena at issue.  And having not had the chance to review

22    the subpoena ourselves and analyze it consistent with our

23    arguments, believe that there is an unfair advantage being

24    taken here.  And would request--

25              THE COURT:  I'm actually doing it to protect you.

1    So I'm not sure how there is an unfair advantage.  If I

2    didn't review it, then I would simply take the House's word

3    for it, that it was not overbroad and I wouldn't go any

4    further than that.  But to protect you and your client, I

5    have taken it upon myself to review it to make sure that I

6    agreed with their representation.  So how is that an unfair

7    advantage?

8          MR. DEMPSEY:  Because the plaintiffs are forced into

9    the position of arguing about something that they do not have

10   any clarity on.

11         THE COURT:  But again, don't you want me to have

12   seen it rather than just take the House's word for it?

13         MR. DEMPSEY:  Yes, Your Honor.  We want the Court to

14   see the subpoena.  But the plaintiffs--

15         THE COURT:  Okay.  But you just objected.  So are

16   you withdrawing that objection to my having reviewed it now?

17         MR. DEMPSEY:  The objection, more precisely put, is

18   we object to plaintiffs not having been provided a copy of

19   the subpoena prior to this hearing so that we could analyze

20   it and our arguments would be consistent with what is

21   provided in the subpoena as far as requests.

22         THE COURT:  But since they haven't provided it and

23   they're not under duty to provide it, wouldn't you prefer me

24   to have seen it than not?

25         MR. DEMPSEY:  That's not our first preference, Your

1    Honor.  Our first preference is that all the parties are on

2    the same sheet music.  But yes, we're grateful that the Court

3    had the opportunity to review the subpoena itself.

4          THE COURT:  Okay.  Go ahead.

5          MR. DEMPSEY:  Your Honor, the timeline here is

6    telling.  On November 23 of 2021, the Select Committee served

7    Defendant JPMorgan with a congressional subpoena with an

8    initial deadline for production of private financial records

9    of December 7, which was subsequently extended, further

10   request of JPMorgan to December 24, 2021, Christmas eve at

11   5:00 P.M.

12          On December 21st, after having had possession of the

13   subpoena and request for plaintiff's private financial

14   records, again, on December 22, 2021, while Plaintiff

15   Budowich was in Washington, D.C. testifying under oath at his

16   deposition before the Select Committee, Defendant JPMorgan

17   sent correspondence to him at an address in Sacramento,

18   California advising of the Congressional subpoena and its

19   Christmas eve deadline.

20          The correspondence was received by plaintiff after

21   business hours on December 23, 2021, consistent with his

22   travel schedule.  And then on December 24, 2021, Christmas

23   eve, counsel for plaintiffs, via both telephone conversation

24   and in writing, to both the Select Committee and Defendant

25   JPMorgan requested an extension of the Defendant JPMorgan's

1   production deadline until January 3, 2022 in light of the

2   long holiday weekend and federal government closures.

3        THE COURT:  All right.  So let's get to the nub here

4   which you address in your reply but not in your original

5   brief, which is Speech or Debate.  I understand that you are

6   unhappy with the timeline and the way the chronology has

7   worked out.  But isn't that a problem you want to be taking

8   up with JPMorgan?  In other words, don't you want to be

9   saying to them: Look, you are the bank that holds my client's

10  accounts.  You should have given your client more time to

11  interpose his objections.  Isn't your complaint there rather

12  than with the House?

13       MR. DEMPSEY:  Well, it's with both, Your Honor,

14  because the House initiated the request for private financial

15  records itself.  Defendant JPMorgan was responding to what it

16  apparently believed was a valid request by a Select Committee

17  for financial records.  So yes, we have claims against both

18  the Defendant Select Committee and Defendant JPMorgan.  But

19  the instant matter concerns whether or not we can --

20  plaintiffs can be protected by judicial relief.

21       THE COURT:  But then, but then isn't your problem

22  that there is no case that you have identified for me anyway,

23  that says that you can clawback documents that are in the

24  possession of a House Committee?  Is there any case that says

25  you can do that, even if I agreed with you that I could do

1    that?

2         MR. DEMPSEY:  As far as the -- there is case law on

3    the clawback relief that we've requested.  But not

4    necessarily against Congress itself.

5         THE COURT:  Right.  So in other words, Ferrer,

6    F-e-r-r-e-r, 856 F3d., 1080 D.C. Circuit from 2017, didn't

7    that specifically held that the Court couldn't order the

8    subcommittee to return, destroy or refrain from publishing

9    produced documents?  And Brown & Williamson, if you argue,

10   which would be a better argument, that the House should never

11   have gotten this document, Brown & Williamson is even worse

12   on the facts, given that the documents had been stolen by a

13   paralegal and given to Congress and they still couldn't be

14   ordered to give them back.

15        So what I'm struggling with here is what authority I

16   have to order the return of these documents to you, even if I

17   didn't like what happened or were outraged by what happened.

18   What power do I have to order their return?

19        MR. DEMPSEY:  Well, regarding the Brown & Williamson

20   case, the Hearst case as well, and the Ferrer case, none

21   concern the Court's authority to order disgorgement of

22   document wrongly acquired due to an ultra vires or improper

23   acts of legislature itself.

24        In Brown & Williamson, the committee concerned

25   received the documents from a third party.  Here, the

1    committee itself issued what purported to be a valid subpoena

2    for the financial records and mandated that JPMorgan Chase

3    produce them, absent an opportunity for plaintiffs to

4    challenge that subpoena in federal court.

5        So at minimum, Your Honor, you could fashion relief

6    in the form the Court did in the Southern District of New

7    York in the Bergman, case, which looked at the scope of the

8    subpoena concerned, the legislative inquiry at issue, and

9    determined an over breadth subpoena to that which was

10   expressly required by the mandate of the committee.  So there

11   is a precedent.

12       THE COURT:  So your argument could be I think, and

13   then you do make this point, that we may not be able to claw

14   them back under Ferrer and these other cases, but I could

15   tell Congress they can't further use them if the subpoena

16   were overbroad or if it were not advancing a legitimate

17   legislative purpose.  So, I trust that would be your

18   alternative position to the clawback, right?

19       MR. DEMPSEY:  Yes, Your Honor.  That's a great way

20   to put it.  It is the alternative relief that we're

21   requesting.  But again, the facts and circumstances of this

22   case are fairly unique and that is probably why there is no

23   reported precedent on point.

24       And again, if the Court read Brown & Williamson and

25   Hearst and Ferrer,  as argued by the Select Committee, it

1    would raise prudential concerns by providing the legislature,

2    or other parties adverse to mitigation generally, with the

3    mechanism and the latitude to acquire by inequitable,

4    illegitimate, illegal or constitutionally violative means

5    information it can, once possessed, claim a privilege against

6    interference.  So the facts presented here are extremely

7    extraordinary and have not been presented to any Court to

8    date that this counsel could find.

9         THE COURT:  But if we look at then the question of

10   whether there is legitimate legislative purpose for the

11   January 6th Subcommittee, you would agree I trust that that

12   has already been decided by the D.C. Circuit in Trump versus

13   Thompson.  So how could I decide differently from what the

14   D.C. Circuit there?  And that's a case that was affirmed last

15   night by the Supreme Court's decision which, although it

16   didn't discuss legitimate legislative purpose, it certainly

17   didn't vacate that decision.  So aren't I bound by that

18   decision?

19        MR. DEMPSEY:  Well, Trump versus Thompson, Your

20   Honor, did find that the Select Committee at issue here did

21   have a valid legislative purpose to investigate and

22   potentially legislate regarding the events of January 6.

23        But that case did not examine whether or not the

24   Select Committee is duly constituted, as we argue it is not,

25   as it does not have the requisite number of members under its

own governing resolution.  And didn't really go beyond the --

and wrote upon the issues raised in our pleadings.  That case

was mostly concerned with claims of executive privilege.

    We don't argue or disagree with Trump versus

Thompson, that the committee has some legitimate legislative

purpose here.  Our issue is with the breadth of the subpoena

and the request for plaintiff's private financial records and

their relationship to the committee's investigation of the

ellipse rally on January 6, when they had a viable

alternative source for the information, which was Mr.

Budowich's production through counsel to the Select Committee

and his participation in a four-hour deposition in

Washington, D.C.

    We combed through all of plaintiffs' records and

produced information relevant to the financial transactions

related to the ellipse rally on January 6.  That was the

nature of Congress' legitimate inquiry here.  But beyond

that, the legislature doesn't have authority to inquire.

    THE COURT:  I agree with you that it would be

troubling to me if the subpoena said, for example, we want 10

years of financial records from Mr. Budowich and from

Conservative Strategies, Inc. in relation to anything.  But

as I said, I have reviewed the subpoena and I know you are at

a disadvantage because you are not.  But I have reviewed it

and I can tell you that it is not overbroad.  That it is not

1  seeking numbers of records that would have no relation to

2  January 6th and the funding of those and related events.  It

3  is sufficiently narrowed that I'm not terribly concerned.

4      Now, I understand that you would like to say, they

5  deposed Mr. Budowich.  He gave them records; that's

6  sufficient.  But why did they have to trust that everything

7  he has told them is correct?  Why can't they doublecheck by

8  going to the bank records and seeing if they believe he told

9  them the truth?  And that there were no other funds that were

10 either taken in or expended in support of the January 6th

11 events?

12     MR. DEMPSEY:  Your Honor, we appreciate the trust

13 but verify argument.  We're all litigators at this hearing,

14 or former litigators.  So we understand that position, the

15 need to verify with third parties information provided by

16 arguably a party opponent or a target of an investigation.

17 But those inquiries must be narrowly tailored, balancing the

18 constitutional and fundamental rights of plaintiffs to the

19 right of financial privacy.

20     Of course, we have not, like Your Honor, had the

21 opportunity to review the subpoena.  But for example, if the

22 subpoena was limited to financial records and the timeframe

23 tightly cabined around the events of the ellipse rally on

24 January 6th, we would be a little less concerned.

25     But based on information and belief and

1    conversations with other parties who are the targets of the

2    Select Committee's investigation, and production by banking

3    institutions, explained after the fact to these individuals,

4    these targets, that the committee has requested financial

5    records to date.

6            And we can think of no legislative purpose that

7    could be had relating to financial records beyond the

8    timeframe of December 2020 and January 2021.  What these

9    targets of investigation are up to these days have no

10   relationship to the events of January 6.

11           But again, I think it's important not to gloss over

12   the composition of the committee issue.  That it is not duly

13   constituted because House Resolution 503 finds that there

14   needs to be 13 members.  The committee only has nine.  As

15   such, it acts without authorization and necessarily ultra

16   vires.

17           And this Court can find guidance in the Exxon Corp

18   versus FTC decision, which was cited recently in Mazars in

19   the D.C. Circuit, which stated, quote: To issue a valid

20   subpoena, a committee or subcommittee must conform strictly

21   to the resolution establishing its investigatory powers.

22   Because through the strict compliance of the authorizing

23   resolution, the Select Committee, therefore, speaks on behalf

24   of the entire House.  And the way the resolution reads, there

25   needed to be both minority and majority representation.

1          And we understand the facts here and that is that

2     the Speaker did not approve of the five representatives to

3     the committee recommended by Minority Leader McCarthy.  But

4     the answer is not to just move forward anyway.  It is a

5     compulsion to compromise, and that is by design.  So that the

6     committee investigating such important and grave events as

7     January 6th would be able to speak with credibility as the

8     entire House.  It is a political branch and, as is the case

9     with the executive privilege dynamics, the political branches

10    are meant to work out their differences, then move forward.

11         But that's not what happened here.  And the lack of

12    the requisite number of members for the authorizing

13    resolution deprives the committee of any authority to issue

14    valid subpoenas.  So plaintiffs' position is that the

15    subpoena issued to JPMorgan was invalid and ultra vires.  And

16    the committee had no authority to compel the production of

17    those private financial records.

18         THE COURT:  Right.  But there was consultation with

19    the Minority Leader, that the resolution doesn't say that the

20    Speaker has to accept everyone whom the Minority Leader

21    proposes, or even that there must be a certain number of

22    minority members on the committee.  You would agree with

23    that, right?

24         MR. DEMPSEY:  I think we beg to differ, Your Honor.

25    If you look at Section Two, Subsection A, it provides the

1    Speaker shall appoint 13 members to the Select Committee,

2    five of whom shall be appointed after consultation with the

3    Minority Leader.

4         "Shall" is mandatory language as this Court is very

5    familiar is interpreting statutes.  In Section 2C regarding

6    vacancies, states any vacancy in the Select Committee shall

7    be filled in the same manner as the original appointment.

8    That is what we just read into the record, Section 2A.

9         Our point is that, in order to act with authority,

10   the committee needed to be bipartisan.  That process needed

11   to play itself out in the chambers of the House until

12   everyone concerned could agree and then move forward with the

13   force of the entire House of Representatives to investigate

14   the events of January 6.  That did not occur.  And under

15   Exxon--

16        THE COURT:  You seem to be saying that there had to

17   be five Republican members.  And it doesn't say that, does

18   it?

19        MR. DEMPSEY:  It says five of whom shall be

20   appointed after consultation.  The committee might have an

21   argument, okay, well, they just appointed five members after

22   consultation, regardless of political party.  But again, the

23   governing resolution says the Speaker shall appoint 13

24   members.  Thirteen members have not been appointed so the

25   committee does not have the force for any investigative

1    power.

2         THE COURT:  That's a separate argument, the total

3    number as opposed to consultation.

4         Okay.  Thank you very much.  I may come back to you,

5    Mr. Dempsey, if I have questions after I hear from

6    Mr. Letter.  I appreciate your thoughts.

7         So Mr. Letter, let me start with the issue that Mr.

8    Dempsey just raised about the 13 members.  Why is that not a

9    mandatory provision?

10        MR. LETTER:  Certainly, Your Honor.  I'm happy to

11   address that.  As you know, the main thing that I want to

12   point out is that this Court has absolutely no jurisdiction

13   to look at those issues.  As I'm sure you and I will discuss

14   shortly, Mr. Dempsey is wrong.  There is exact precedent

15   precisely on point for what he is alleging here.

16        In any event, Your Honor, as we pointed out, "shall"

17   often does not mean "must."  There is no requirement here

18   that the Speaker had to appoint 13 members.  As we pointed

19   out, there is precedent for what the Speaker did here.

20   Speaker Hastert , not that long ago, did the same thing.  And

21   the House of Representatives, as with the Senate, precedent

22   is extremely important.  It's the kind of thing the

23   parliamentarians take into account.

24        Moreover, in a way linked to our jurisdictional

25   argument, is that the Supreme Court and the D.C. Circuit have

1    made clear that this Court's authority to interpret the

2    internal rules and procedures of the House and the Senate is

3    extremely limited.  And so this is exactly the type of issue

4    that the Courts are not to get into.  Under the Rules Clause

5    each House -- each chambers sets its own rules.  And the

6    Courts have made clear that it's up to those chambers to

7    decide how to carry out those rules.

8         So you would be completely improper for this Court

9    to say I think that the Speaker is wrong, she does not

10   understand House rules and House resolution.  I know better

11   and I know here that "shall" means "must."

12        The Barker case, the D.C. Circuit made quite clear

13   that the explanation of House rules by the General Counsel of

14   the House is binding on the Courts.  And here, as we have

15   said, "shall" does not mean "must."  And so, that is -- Mr.

16   Dempsey, unfortunately, it shows a lack of understanding of

17   how the House works.

18        For example, he argues that the way Standing

19   Committees are appointed has to be governed here, that's just

20   absolutely wrong.  The House has certain ways of doing

21   things.  And Standing Committees and Select Committees are

22   appointed differently.  And there is no requirement that the

23   Speaker has to have 13 members.  It's just not there.  It is

24   not up to the Courts to tell the Speaker that she doesn't

25   know what House rules or what House resolutions mean.

1          THE COURT:  Let's go back to the jurisdictional

2     issue.  So for Speech or Debate, that your argument -- and I

3     certainly have not found cases to the contrary -- is that

4     once Congress is in possession of documents, that it is not

5     for the Court to tell them to disgorge such documents.

6          But do you take the position that, even if a

7     committee did not have a proper legislative purpose, or that

8     a subpoena at issue was plainly invalid or overbroad or

9     otherwise defective, that no one could challenge a

10    committee's ability to use those documents?

11         MR. LETTER:  Yes, Your Honor.  And that is our

12    position and I'll give some explanation.  It might be

13    different, as Your Honor well knows, there are all sorts of

14    cases where there has been review of whether a committee has

15    a valid purpose, et cetera, whether it is State Attorney or

16    law enforcement.  So we've had plenty of circumstances when

17    there has been review of what committees have done.

18         For example, the Supreme Court has done that.  Well,

19    when has it done that?  It has done it when, for example,

20    witnesses are facing criminal charges.  So the batch of

21    cases, Watkins, et cetera, criminal charges by the -- brought

22    by the Justice Department for failure to comply with a

23    subpoena.

24         That's obviously not what has happened here.  What

25    has happened here is there are allegations that were made

1    that the committee has acted wrongly.  The D.C. Circuit has

2    dealt with that exact situation a number of times.  For

3    example, in Hearst versus Black, the Court reports there that

4    the claims were, and it said, that obviously the Court had to

5    accept those claims as true for purposes of the Motion to

6    Dismiss there, it said that the committee and the commission,

7    the FTC -- I'm sorry, the FCC, quote: Conspired together to

8    deprive appellant of his constitutional rights and liberties

9    under the First, Fourth and Fifth Amendments to the

10   Constitution, et cetera.  End quote.

11        So we have a situation the D.C. Circuit was facing

12   where the claim was that the committee had conspired to

13   violate constitutional rights.  As we said in our brief, I'll

14   just quote briefly.  Quote:  The universal rule so far as we

15   know is that the legislative discretion in discharge of its

16   constitutional functions, whether rightfully or wrongfully

17   executed, is not a subject for judicial interference.

18        I'll just go on a little more briefly.  The

19   Constitution has lodged the legislative power exclusively in

20   the Congress.  If a Court can say to the Congress that it

21   could use or could not use information in its possession, the

22   independence of a legislature would be destroyed and the

23   constitutional separation of the powers of government evaded.

24   Nothing is better settled than that each of the three great

25   departments of the government shall be independent and not

1    subject to be controlled directly or indirectly by either of

2    the others.

3           THE COURT:  So your point though is that, that in

4    all jurisdiction depends entirely on timing.  In other words,

5    if the target of a subpoena can get to a Court before the

6    documents are released, the Court would certainly have

7    jurisdiction to weigh the validity of the subpoena in that

8    case, right?

9           MR. LETTER:  Yes and no, Your Honor.  What I mean by

10   that is, if Mr. Dempsey sued the committee under those

11   circumstances, and said the committee should not have asked

12   for these, could not ask for them, violated the Constitution,

13   et cetera, and the Court should enjoin the committee from

14   doing so, no, that is absolutely, clearly barred by the

15   Constitution.  If Mr. Dempsey instead sues a bank or some

16   other private party, that is different.  And that's --

17          THE COURT:  But let's take -- the third party makes

18   it a little more complicated.  Let's take the simpler

19   scenario where you seek documents directly from a target, the

20   individual, not a bank.

21          And you are saying then the individual could not sue

22   Congress to enjoin or to quash the subpoena, you are saying

23   because there wouldn't be jurisdiction.  But if the

24   individual refused to comply, and you moved to enforce the

25   subpoena, then a Court would have jurisdiction?

1          MR. LETTER:  That's exactly right, Your Honor.  For

2    instance, I know you said the third party we will take up

3    next so I'll come back to that.   But that's right, Your

4    Honor.  That's what various cases by the Supreme Court are

5    about.  The subpoena was issued or testimony was sought, the

6    witness refused to comply, went into contempt.  The United

7    States Attorney then criminally prosecuted, there is clearly

8    judicial review.  Obviously the Supreme Court has set that

9    up.

10         THE COURT:  But even if it's not contempt if

11   Congress seeks otherwise to enforce the subpoena without

12   bringing criminal charges, then the Court would have

13   jurisdiction.  But you are saying though that the rubicon is

14   crossed once the documents are produced and in Congress'

15   possession, then Courts are powerless?

16         MR. LETTER:  Yes and no.  Again, I don't mean to be

17   unclear.  I'll explain.  In your first hypothetical, if

18   Congress decided we were going to sue to seek enforcement, so

19   if Congress goes into court and asks the assistance of the

20   Courts, which we have done in some rare circumstances, then

21   we do not claim that Congress can go into court to seek the

22   assistance of the Courts and yet the Court can't look at the

23   validity the subpoena.

24         So for example, in the circuit, we brought an action

25   against Donald McGahn, seeking his testimony.  By contrast,

1    if it is somebody suing us in advance, you can't do that.

2         And the D.C. Circuit explained all of this in the

3    AT&T case that Mr. Dempsey cited.  The AT&T case says these

4    formalities matter.  The D.C. Circuit wasn't blind to this.

5    It dealt with this very issue.  And they said, if the

6    Congress were a defendant, there would be no jurisdiction.

7    If the plaintiffs had named Congress as a defendant, as Mr.

8    Dempsey did in his request for relief here encompasses --

9    right now, I think he is going just against the bank, the

10   specific, the first thing that he filed.  Now he wants an

11   order against Congress.

12        The law is absolutely clear, and you've heard

13   nothing from Mr. Dempsey to say that it isn't, that this

14   Court has no jurisdiction.  By contrast, if for example, in

15   the Mazars case, President Trump sued Mazars and Deutsche

16   Bank, his own bank and said don't you dare comply with this

17   subpoena.  And obviously there was jurisdiction there.  And

18   the House moved successfully to intervene.  So the Supreme

19   Court set a test for when subpoenas could be enforced in

20   those circumstances.  But that's not this case.

21        THE COURT:  So does this create an incentive for

22   Congress to do whatever it can to get documents before a

23   target can interpose objection because, once you get the

24   documents, you are home free?

25        MR. LETTER:  Well, as I said, Your Honor, not

1    necessarily,  I'm not sure that it does because, even if we

2    didn't get the documents, as I said, under AT&T makes clear,

3    if Mr. Dempsey sued the House, even though we didn't have the

4    documents, if he sued and said: Your Honor, issue an order

5    striking down the subpoena or issue an order directing the

6    committee to withdraw the subpoena, no, there is no

7    jurisdiction to do that.  So it's not -- when we said we

8    should cross -- it's a rubicon, in this situation, the

9    rubicon has a couple of different branches.

10          It's absolutely clear to say Hearst versus Black --

11   Rangel, by the way Rangel didn't involve a subpoena.

12   Mr. Rangel, a member of Congress, he stood up in the well of

13   the House and he accused the members of Congress and staffers

14   of racial discrimination, of violation of First Amendment

15   rights.  He said the Constitution is being trampled upon and

16   he raised procedural issues, just like Mr. Dempsey is.  The

17   D.C. Circuit said yes, yes, yes, this is done all the time.

18   We wouldn't have a case if somebody didn't say that the

19   Constitution was violated or procedures were not violated, et

20   cetera.  The D.C. Circuit made absolutely clear there is no

21   jurisdiction.

22          McCarthy versus Pelosi, the most recent case,

23   Minority Leader McCarthy says that what the House has done

24   with regards to remote voting rules is unconstitutional, is

25   directly inconsistent with the Constitution.  That's his

1    claim.

2         The District Court and the D.C. Circuit said, no

3    jurisdiction, dismiss Speech or Debate.  And this isn't just

4    some silly procedural mix-up or loop hole in the

5    Constitution.  As the Supreme Court held and the D.C. Circuit

6    have held, there is a very good reason for this rule.  It

7    comes from the framers who were very aware of what the crown

8    did with parliament, something that was very central during

9    the constitutional convention.  And they said, we don't want

10   this happening.

11        And the Supreme Court has even made quite clear in

12   cases like Eastland, for example, we are well aware, well

13   aware that there will be circumstances when this seems to be

14   unfair.  That a member of Congress can stand up on the floor

15   of the House and the Senate and say terrible, libelous

16   things.  But that is a balance that the framers made.

17        Mr. Dempsey said, we're saying the Speech or Debate

18   Clause overrides all the rest of the Constitution.  No, the

19   Speech or Debate Clause says exactly what it did and the

20   framers had a real good reason for doing that.  They wanted

21   to protect the independence of the Congress from the

22   executive branch and from the judiciary.  This was very well

23   thought out.

24        THE COURT:  Let me go back to Mr. Dempsey for a

25   minute.

1           Thank you, Mr. Letter.

2           So perhaps I was viewing this through, at least

3     according to Mr. Letter, I'm viewing this through too narrow

4     a lense jurisdictionally.  That it is not typically a

5     question of whether Congress has the documents or not.  It's

6     that you couldn't sue them anyway.  In other words, you

7     couldn't sue Congress to enjoin a subpoena.

8           So let me ask you then, I asked you earlier about

9     any case where you could get documents clawed back.  But let

10    me broaden that according to Mr. Letter's argument and ask

11    you if there are any cases in which a Court has found

12    jurisdiction where a target of a subpoena has sued Congress

13    even before releasing the documents.

14          MR. DEMPSEY:  Yes, Your Honor.  The Bergman case out

15    of Southern District of New York that we referenced earlier,

16    the parties successfully sued Congress and the Court entered

17    relief, trimming the breadth of the subpoena consistent with

18    its legislative investigative mandate.  And that is good

19    authority.  And I'm sorry --

20          THE COURT:  Can you point me to the, where that is

21    cited in your brief?

22          MR. DEMPSEY:  In our brief?

23          THE COURT:  Is it in your brief?

24          MR. DEMPSEY:  Yes, sir.  Yes, Your Honor.  The cite

25    because I have it handy now is 389 F. Supp. 1127.  Again,

1    that's the Southern District of New York.  And it's a 1975

2    case.

3              THE COURT:  Do you have anything besides a 45 year

4    old District Court case?

5              MR. DEMPSEY:  Well, it is a 45 year old case, Your

6    Honor, but a lot of good law on this topic was made in the

7    70s, including the Eastland case that Mr. Letter just

8    referenced.

9              But if the Court would permit, I would like to

10   bounce back to the clawback relief and point to the

11   Weyerhaeuser case which found support in the Supreme Court

12   case of Porter and provided: A party acts at their peril in

13   completing the acts sought to be enjoined.  Upon notice of a

14   injunction proceeding, the Court may, under such

15   circumstances, issue a mandatory injunction restoring the

16   status quo.

17             That's an equitable precept, Your Honor, meant to

18   preclude the very kind of conduct that the Select Committee

19   engaged in here.  And if permitted by this Court, the

20   committee will have no incentive whatsoever to do but the

21   same thing that they did to Plaintiff Budowich, which is to

22   set a very short deadline to receive documents and accomplish

23   their production prior to the complaining party having the

24   availability to seek relief in court.  And that sort of

25   blocking the courthouse door activity is exactly why under

1   Weyerhaeuser, and then Porter, Courts are authorized to put

2   the parties back in the position that they had upon notice.

3          And I can think of no clearer notice than that was

4   received by defendants in this action, it's at Exhibit I to

5   the plaintiffs' motion for emergency relief.  And it states,

6   I'll read it into the record.  Having not received a copy of

7   the subpoena, we have no choice but to file to date to a

8   courthouse we all know is closed for the holiday, a petition

9   for declaratory relief.  Knowing that our client intends to

10  exercise his legal rights in court, we ask you to consider

11  whether JPMorgan wants to be complicit in preventing its

12  customer, who it promised to treat with equity and fairness,

13  from having its day in courts.  We request again that

14  JPMorgan delay its response to the subpoena to prevent Mr.

15  Budowich to seek relief from this Court.

16         Similar messages were communicated in writing and

17  verbally to the Select Committee Defendants.  Yet, they

18  proceeded to move forward with the production on Christmas

19  eve, knowing that plaintiffs--

20         THE COURT:  All right.  But this is still, it seems

21  to me this is the problem we have with JPMorgan, not

22  Congress.

23         MR. DEMPSEY:  Congress itself, Your Honor, refused

24  to extend the deadline.  We went to them direct.  And

25  inconsistent with our prior dealings with the Select

 1    Committee, where they were more than amenable given our

 2    burdens and the document production context to move

 3    deadlines, extend deadlines, to extend Mr. Budowich's

 4    deposition, no big deal.  The only time they proceeded and

 5    would not relent and give an extension is in the instance of

 6    these private financial records.  Why they needed to be

 7    produced on Christmas eve over a holiday weekend, a federal

 8    holiday when the courthouses were closed is beyond

 9    plaintiffs, other than some gainsmanship or unfair advantage

10    was being sought.

11         That is why the Courts are equitably empowered to

12    order injunctive relief, mandatory injunctive relief to put

13    the parties back to where they would have been, what the

14    status quo was at the time of notice of intent to seek

15    judicial relief.

16         THE COURT:  I understand those are generally

17    applicable doctrines.  But what Mr. Letter argues is not when

18    Congress -- I'm sorry.  I just pulled up Bergman.  And it

19    doesn't look like the jurisdictional issue was raised there.

20    Do you disagree, Mr. Dempsey?

21         In other words, you are right, in that the case

22    specifically says the plaintiffs bring this action to declare

23    invalid and to enjoin compliance with the subpoena issued by

24    the Special Committee on Aging of the Senate.  The subpoena

25    was served upon a bank.

1          MR. DEMPSEY:  I'll just interject, Your Honor, and

2    note that the opinion states: However, compliance with the

3    subpoena was delayed for 24 hours to allow plaintiffs to seek

4    Court relief.  So, apparently, that's how to allow parties to

5    get a judicial weigh in.

6          THE COURT:  Mr. Letter, your position on this is,

7    this is just one District Court that got it wrong and never

8    looked at -- and should have looked at jurisdiction or is

9    there another way you would distinguish Bergman?

10          MR. LETTER:  I guess my main answer is I don't need

11   to distinguish Bergman because it preceded Eastland by

12   several months.  The Supreme Court said that Mr. Dempsey is

13   wrong.  He is absolutely wrong.

14          And by the way, obviously I can rebut everything

15   that Mr. Dempsey is saying about unfairness, et cetera.

16   Remember, Mr. Dempsey started out by saying that the subpoena

17   was issued in November.  It was the return date in early

18   December.  Then it extended it because the bank asked for an

19   extension.  An extension was given.

20          The committee is trying to move at a very rapid

21   case.  Mr. Budowich did come in, the committee nevertheless

22   had considerable questions that it wished to look into; and

23   therefore, the committee chose not to extend again, it had

24   already extended the return date.

25          And if I may just point out, again, what I'm looking

1    at D.C. Circuit and Supreme Court precedence, at one point,

2    in AT&T, the Court says something about, you know, there

3    could be a challenge, but so long as members of the

4    subcommittee are not themselves made defendants in a suit to

5    enjoin implementation of the subpoena.  Then cites to

6    Eastland at 421 U.S. 513.

7            Mr. Dempsey has to deal with the Supreme Court and

8    D.C. Circuit that is directly on point.  He can't just say

9    something unfair has been done.  Again, that, the D.C.

10   Circuit has, and the Supreme Court have recognized plaintiffs

11   always come in with claims.

12           We think, again, for all the reasons that we've

13   given, Mr. Dempsey's claims of unfairness, et cetera, are all

14   incorrect.  But we don't even get there.  This is just

15   absolutely clear, Weyerhaeuser does not involve Congress.

16   For example, about the committee's not validly constituted

17   against -- we addressed that briefly --  a valid legislative

18   purpose.

19           THE COURT:  I've already heard -- That's already

20   been ruled on by the --

21           MR. LETTER:  The Financial Privacy Act, Mr. Dempsey

22   refuses to deal with the fact that Congress is not an agency

23   or department of --

24           THE COURT:  I don't think we need, I don't think we

25   get there.

1          MR. LETTER:  Thank you, Your Honor.

2          THE COURT:  Your other points are incorrect.

3          MR. LETTER:  Unless the Court has anything further,

4    Rangel, McCarthy versus Pelosi, Ferrer, Judicial Watch, Brown

5    & Williamson, Hearst versus Black, D.C. Circuit precedence

6    directly on point.  We should not be here.  Mr. Dempsey

7    should have --

8          THE COURT:  All right.  Thank you very much.

9          All right, I'm prepared to rule.  I'm going the deny

10   the motion?

11         I think Mr. Letter is certainly correct regarding

12   jurisdiction in terms of the Speech or Debate clause as it

13   relates to documents that Congress already has.  That there

14   is no case, I found none, I don't think there can be one,

15   that says that Congress must give back documents that it has

16   received, and no matter how Congress has received them.

17         Again, Brown & Williamson is a case in which those

18   documents were essentially stolen and illegally given to

19   Congress.  So I think that there really is no case and there

20   is no question that Congress, this Court has no jurisdiction

21   to order Congress, because of the Speech and Debate Clause,

22   to return documents that it has received.  And I further

23   agree, that does not have the authority to tell Congress what

24   it can or cannot do with such documents.

25         Now Mr. Letter may well be correct that I don't have

1    jurisdiction over this suit at all, that you can't bring this

2    suit regardless of whether they had the documents or didn't

3    have the documents.  And although Bergman is to the contrary,

4    I think you are right, it is to the contrary, Mr. Dempsey, I

5    think that that is a District Court decision from the

6    Southern District of New York from 1975 that I would have no

7    business following in the face of D.C. Circuit and Supreme

8    Court precedent to the contrary.

9         So I believe that I do not have jurisdiction to

10   consider this matter because of the Speech or Debate Clause

11   in terms of whether -- even if you had been able to bring the

12   case prior to the return of document.

13        Now you could have sued JPMorgan to seek an

14   injunction.  But to sue Congress to seek this, whether before

15   or after the production, I would not have jurisdiction to

16   consider.

17        Even if I did have jurisdiction to consider the

18   matter, I would find that the Select Committee has a valid

19   legislative purpose, which would be the Trump versus Thompson

20   decision, and one that I am bound to follow, although it

21   seems plainly right, given the committee's investigating and

22   considering proposing legislation after its conclusion.

23        I think again, if I had jurisdiction, which I don't,

24   but if I had jurisdiction, the valid composition issue is

25   harder, Mr. Dempsey, you are right, I think that is a harder

1    decision, although I think ultimately that this Court would

2    be going beyond its authority to hold that the Speaker, who

3    is empowered by House Rule 1.11, to appoint such committees.

4    And also that this Court would have to defer to Congress in

5    the manner of interpreting its rules.

6            And that there are certain cases such as Gutierrez

7    de Martinez v. Lamagno, 515 US 417, in which "shall" is

8    interpreted as "may," that I would be usurping Congressional

9    authority if I found that was not a valid composition of the

10   committee.

11           Finally, having reviewed the subpoena, I also found

12   that it is not overly broad.  Although as I said, that is an

13   issue that I could only look at if I did have jurisdiction.

14   So those are my alternative rulings in holding ultimately

15   that the motion should be denied.

16           So Mr. Dempsey, the question is from here, again,

17   this was a TRO based on more expedited briefing.  You both

18   have heard more from the other side and from me on some of

19   these issues.

20           If you want to file a motion for preliminary

21   injunction and have further briefing on that, Mr. Dempsey, I

22   will permit you to do that.  Or I'm also happy if you want to

23   consult with your client and think about how next to proceed,

24   I'm also happy to have a status hearing whenever you would

25   like to determine how the litigation should go forward.  So,

1    I defer to you that.

2            MR. DEMPSEY:  Your Honor, we appreciate the Court's

3    ruling.  We would like to proceed with the latter option of

4    consulting and conferring with our client, deciding next

5    steps and direction forward.  And then status conference with

6    the Court to mediate any disputes between the parties

7    procedurally.

8            THE COURT:  Okay.  You tell me how soon you want to

9    have a hearing?  When I say that, I mean just a status

10   hearing for you to update me on what you want to do.

11           MR. DEMPSEY:  Approximately one week, Your Honor.

12           THE COURT:  Okay.  The 27th is one week from today.

13           Mr. Letter, are you available?

14           So the point of this hearing will just be for the

15   plaintiffs to indicate how they wish to proceed and then

16   we'll set a schedule at that point.

17           MR. LETTER:  Your Honor, my calendar is one room

18   away.  Would you give me 30 seconds to get that?

19           THE COURT:  Sure.

20           MR. LETTER:  Thank you.

21           (There was a pause in the proceedings.)

22           MR. LETTER:  Thank you, Your Honor.  On the 27th,

23   I'm supposed to be in a House internal proceeding in the

24   morning.  I am free at any point in the afternoon.  Is that

25   possible?

1          THE COURT:  Mr. Dempsey, would the afternoon work

2     for you?

3          MR. DEMPSEY:  Yes, Your Honor.

4          THE COURT:  Is 2:00 convenient, Mr. Dempsey?

5          MR. DEMPSEY:  Yes, Your Honor.

6          THE COURT:  Mr. Letter?

7          MR. LETTER:  Yes, Your Honor.  2:00 on the 27th.

8          THE COURT:  We can do this by audio.

9          Ms. Lynch, is that a convenient time for you?

10         MS. LYNCH:  Yes, Your Honor.

11         MR. LETTER:  Your Honor, I'm sorry.  I just did want

12    to let you know that we did ask specifically under the

13    authority of the Supreme Court recognizing Munaf versus

14    Geren, that given what the Court has ruled, that the Court

15    should just sua sponte dismiss the case.

16         THE COURT:  I appreciate it.  I'm going to deny that

17    oral request to dismiss the case.  I think given the facts

18    and the issues involved, I would give the plaintiffs time to

19    brief that if he decides.  What we could end up doing is

20    having a preliminary injunction and motion to dismiss

21    briefing.  But I do not intend to dismiss it sua sponte.

22         Anything else then any party wishes to mention

23    today?

24         Mr. Dempsey, anything from the plaintiff?

25         MR. DEMPSEY:  Yes, Your Honor.  Plaintiffs move for

1    a copy of the subpoena at issue.  We are open to any

2    safeguards or restrictions on its dissemination.  But we

3    think it would assist plaintiffs in determining next steps in

4    advance of our status conference next week if we were able to

5    review the subpoena itself.  And the authority for that is,

6    of course, Washington Legal Foundation and Judicial Watch.

7    There has really has been no articulated basis for secrecy

8    here.  This is a public investigation, intended to be made

9    public with intense public interest.  And we believe that the

10   parties, both parties at least deserve the chance to review

11   the subpoena.

12           THE COURT:  I would have to look at that in more

13   detail.  You could, I'll let you brief that.  If you want

14   reach an agreement with JPMorgan, I'll let you file a motion

15   on that.  But I'm not going to rule on that orally without

16   taking a look at the law.

17           MR. DEMPSEY:  Thank you, Your Honor.  Nothing else

18   from plaintiffs.

19           MR. LETTER:  Your Honor, the Judicial Watch

20   decision --

21           THE COURT:  I'm not ruling now.

22           Anything else from you before we adjourn, Mr.

23   Letter?

24           MR. LETTER:  No, Your Honor.  Thank you very much.

25           THE COURT:  Okay.  Ms. Lynch, anything else from

1    you.

2              MS. LYNCH:  No, Your Honor.  Thank you.

3              THE COURT:  Okay.  Again, thank you, everyone, for

4    your hard work on short timeframe.  We'll see every one at

5    2:00 on the 27th.

6              (Whereupon, at 11:00 a.m., the hearing adjourned.)

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of the remotely reported proceedings in the above-entitled matter.

Please Note: This hearing was held in compliance with the COVID-19 pandemic and the standing orders of this court, and is therefore subject to the technological limitations of court reporting remotely, including static, signal interference and other restrictions.

_____   1-24-2022
Lisa Walker Griffith, RPR            Date