# EXHIBIT B

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

To JPMorgan Chase Bank, N.A.

You are hereby commanded to be and appear before the
Select Commitee to Investigate the January 6th Attack on the United States Capitol

of the House of Representatives of the United States at the place, date, and time specified below.

[✓] **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 1540A Longworth House Office Building, Washington, D.C. 20515

Date: December 7, 2021    Time: 10:00 a.m.

[ ] **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: ___

Date: ___    Time: ___

[ ] **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: ___

Date: ___    Time: ___

To any authorized staff member or the U.S. Marshals Service
___ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this 23rd day of November, 2021.

_[signature]_
Chairman or Authorized Member

Attest: _[signature: Kevin McCabe]_
Clerk

## PROOF OF SERVICE

Subpoena for
    JPMorgan Chase Bank, N.A.

Address 383 Madison Avenue, New York, NY 10017

before the Select Commitee to Investigate the January 6th Attack on the United States Capitol

*U.S. House of Representatives*
*117th Congress*

Served by (print name) _____

Title _____

Manner of service _____

Date _____

Signature of Server _____

Address _____

JPMC_00000002

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

One Hundred Seventeenth Congress
Select Committee to Investigate the January 6th Attack on the United States Capitol

November 23, 2021

VIA US and ELECTRONIC MAIL

Custodian of Records
JPMorgan Chase Bank, N.A.
383 Madison Avenue
New York, NY 10017

Dear Custodian of Records:

Pursuant to the authorities set forth in House Resolution 503 and the rules of the House of Representatives, the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") hereby transmits a subpoena that compels JPMorgan Chase Bank, N.A. to produce the documents set forth in the accompanying Schedule A by December 7, 2021.

The Select Committee is investigating the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power, in order to identify and evaluate lessons learned and to recommend to the House and its relevant committees corrective laws, policies, procedures rules, or regulations. The inquiry includes examination of how various individuals and entities utilized the U.S. financial system leading up to the events of January 6, 2021, and thereafter.

To expedite production and efficiently seek those documents most pertinent to its investigation, the Select Committee believes that a preliminary scoping call will be extremely valuable. By discussing which accounts and transactional activity is most pertinent – prior to production – the Select Committee can ensure that it obtains the most essential documents in the fastest way possible.

A copy of the rules governing Select Committee document production, definitions, and instructions are attached. Please contact Senior Investigative Counsel Amanda Wick at 202-225-7800 as soon as practicable to arrange for a scoping discussion and an order of production for the documents.

Sincerely,

Bennie G. Thompson
Chairman

JPMC_00000003

Custodian of Records
Page 2

## SCHEDULE A

To: Custodian of Records
JPMorgan Chase Bank, N.A.
383 Madison Avenue
New York, NY 10017

In accordance with the attached Definitions and Instructions, please provide complete and unredacted copies of the following by December 7, 2021, with respect to:

1. Taylor Budowich
2. Conservative Strategies Inc.
3. ▓▓▓▓▓▓▓▓▓▓
4. ▓▓▓▓▓▓▓▓▓▓
5. ▓▓▓▓▓▓▓▓▓▓

or any account (including, but not limited to, any money market, securities or trading account or any loan account of structure) in the name of the above-named individual or entity (or any other name, alias, code name, code number, or entity used in lieu of the named individual or entity), as well as any account in which such individual or entity is or was, or has been identified as being, a trustee, settler or grantor, administrator or controlling party (as defined below), protector (also known as "protectorate"), signator or co-signator, beneficiary, or beneficial owner, or in which such individuals or entities have or have had in any way control over, individually or with others:

1. All monthly or other periodic account statements from October 1, 2020 to the present;

2. All documents related to account opening, due diligence, proposed closing or closing;

3. All cancelled checks drawn for amounts of $1,000 or more (front and back) from October 1, 2020 to the present;

4. All deposit slips in amounts of $1,000 or more for checking and savings accounts, and copies of any deposit items to which those slips relate from October 1, 2020 to the present;

5. All documents related to any transfer of funds to or from any such account, including any wire transfer, check, cashier's check, book entry transfer, or cash letter and any document indicating the originator, beneficiary, source of funds or destination of such transfer from October 1, 2020 to the present;

6. All documents that identify, address or are related to the identification of any trustee, settler or grantor, administrator or controlling party, protector, beneficiary, beneficial owner or signator, including but not limited to signature cards;

7. All documents related to monitoring for, identifying, or evaluating possible suspicious activity, including suspicious activity identified by JPMorgan Chase Bank, N.A.'s

Custodian of Records
Page 3

    surveillance/monitoring program or referred by any employee or third-party, including, but not limited to, suspicious activity relating to relationships, transactions, or ties with any foreign individual, entity, or government;

8. All documents concerning investigative reports or analyses conducted by JPMorgan Chase Bank, N.A. and related materials;

9. All documents related to, or provided in response to:

    a. any request, inquiry or investigation, by any U.S. federal, state or local agency;

    b. any administrative, civil, or criminal action;

    c. any subpoena, search warrant, seizure warrant, summons, or other legal writ, notice, or order or request for information, property, or material, including, but not limited to, those requested or provided by JPMorgan Chase Bank, N.A. pursuant to Sections 314(a) or 314(b) of the USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272, or any other tax, anti-money laundering or bank statute; or

    d. any request for information made to or by a third party, including, but not limited to any government agency or financial institution;

10. All correspondence or memoranda relating to each account from October 1, 2020 to the present; and

11. Currency Transaction Reports (U.S. Treasury Report Form 4789).

JPMC_00000005

## DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS

1. In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2. Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee').

3. In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4. The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions. With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee. This includes, but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5. Electronic document productions should be prepared according to the following standards:

    a. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    b. All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7. Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8. When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9. The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10. The pendency of or potential for litigation shall not be a basis to withhold any information.

11. In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14. In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control. Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

16. If a date or other descriptive detail set forth in this request referring to a document

is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18. All documents shall be Bates-stamped sequentially and produced sequentially.

19. Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4. The term "including" shall be construed broadly to mean "including, but not limited to."

5. The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7. The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8. The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9. The term "individual" means all natural persons and all persons or entities acting on their behalf.