UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR BUDOWICH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:21-cv-03366-JEB |
| ) | |
| NANCY PELOSI, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **MOTION TO COMPEL NOTICE**

As this Court is aware, Defendant JPMorgan Chase Bank, N.A.'s willful and intentional actions have already successfully precluded judicial review of a subpoena directed at private financial records of Plaintiffs. JPMorgan's deliberate conduct in this matter left Plaintiffs with no time to challenge the production of their private financial records. Instead of working to accommodate its customers' valid and protected interest in financial privacy, JPMorgan denied all reasonable requests for delay and required Plaintiffs, with less than twenty-four (24) hours of actual notice, to seek and obtain a judicial order on Christmas Eve, a federal holiday on which all Courts, government entities, and banking institutions were closed for business. Notwithstanding its prior knowledge that Plaintiffs were seeking judicial intervention but precluded from obtaining immediate relief due to holiday closures, JPMorgan produced Plaintiffs' private financial records on that same date and then proceeded to argue that Plaintiffs' request for relief in the instant action was moot because it had already produced Plaintiffs' financial records.

To avoid repetition of this inequitable scenario—which ostensibly leaves Plaintiffs with no practical or meaningful ability to judicially challenge the production of their private financial records before those records are produced—Plaintiffs respectfully request that the Court enter an

Order requiring JPMorgan to provide Plaintiffs with advance notice of at least ten (10) days before producing any additional private financial records of Plaintiffs to the Select Committee. As prior conduct of the Parties herein makes clear, judicial supervision is required to ensure that Plaintiffs are not again deprived of a meaningful opportunity to be heard and seek relief.

## I.     BACKGROUND

On December 22, 2021, Plaintiff Taylor Budowich sat for a roughly four (4) hour deposition before the Select Committee in Washington, D.C. That same day, JPMorgan had delivered to Mr. Budowich's address in California correspondence advising him that the Select Committee had subpoenaed Mr. Budowich's private financial records from JPMorgan. (ECF No. 14-6). This correspondence stated that JPMorgan would comply "in a timely manner" unless Mr. Budowich provided JPMorgan with "documentation legally obligating it to stop taking such steps." Id. The deadline for Mr. Budowich to provide such documentation was December 24, 2021, at 5:00 p.m. EST. Because Mr. Budowich was in Washington, D.C. complying with his personal subpoena from the Select Committee on December 22, 2021, he did not receive this notice until 7:00 p.m. EST on December 23, 2021. Mr. Budowich's counsel immediately sent an email to JPMorgan objecting to production of Mr. Budowich's private financial records and requesting a modest extension of time. (ECF No. 14-7).

The following day, Mr. Budowich again sought extensions from both the Select Committee and JPMorgan. (ECF Nos. 14-8, 14-9, 14-10). Despite December 24, 2021 being a federal holiday on which this Court, Congress, and JPMorgan were all closed, JPMorgan refused to extend its self-imposed deadline for its production. During their discussions with JPMorgan and the Select Committee, counsel for Plaintiffs made clear Mr. Budowich's intention to challenge the subpoena in court. In fact, Mr. Budowich filed this lawsuit and a motion for temporary restraining order that same day. Nonetheless, JPMorgan produced Mr. Budowich's personal financial records to the

Select Committee in an attempt to eliminate Plaintiffs' ability to obtain practical and meaningful judicial intervention in the process.

Because Mr. Budowich's original motion for a temporary restraining order sought to prevent JPMorgan from producing his records, the Court denied it as moot, as JPMorgan, despite notice of Mr. Budowich's legal challenge, had by that time already produced the private financial records at issue. See Minute Order dated Dec. 29, 2021. Mr. Budowich then filed an amended motion for a temporary restraining order seeking, under the unique facts of this case, entry of an Order by this Court mandating that the Select Committee return Mr. Budowich's private financial records. The Court denied the motion, holding that it lacked jurisdiction to require Congress to do anything with financial records already in its possession.

As it turns out, JPMorgan actually received the subpoena on November 23, 2021. The original date for production of Plaintiffs' records was December 7, 2021. However, JPMorgan requested an extension and self-selected the deadline of December 24, 2021. The Select Committee agreed to this new deadline. Inexplicably, JPMorgan waited nearly one (1) month before it advised Plaintiffs of the subpoena seeking their records—and only provided notice once Mr. Budowich was away from his California home complying with his personal subpoena for an in-person deposition in Washington, D.C.

The Select Committee now avers it has received all requested financial records from JPMorgan. (ECF No. 28 at 1). JPMorgan has declared it "has no present intention to produce additional documents pursuant to the subpoena." ECF No. 28 at 2. Nonetheless, JPMorgan acknowledges that a further production is possible.[1] (ECF No. 28 at 2).

---

[1] Moreover, the Select Committee now takes the position that the subpoena is not continuing and that the end date for documents—"to the present"—is the date of the subpoena, to wit: November 23, 2021. (ECF No. 28). Yet inexplicably, JPMorgan has refused to advise whether it produced any private financial records of Plaintiff beyond November 23, 2021, and likewise, has yet to provide Plaintiffs with copies of their own private financial records that JPMorgan provided to the

---

The actions of JPMorgan effectively nullified *any* practical or meaningful review of the subpoena before records were produced. To avoid repeating this scenario, Plaintiffs seek modest relief: an order requiring notice of at least ten (10) days before any further production by JPMorgan of Plaintiffs' private financial records to the Select Committee. Such notice will provide Plaintiffs with sufficient time to challenge the production, if necessary, and allow this Court to properly exercise its constitutional authority and oversight absent the kind of unfair advantage and gamesmanship demonstrated by JPMorgan last Christmas Eve.

II. **ARGUMENT**

In this request, Plaintiffs seek constitutionally guaranteed due process: notice and opportunity to be heard. See Dusenbery v. United States, 534 U.S. 161, 167 (2002). The Due Process Clause of the Fifth Amendment requires that "individuals whose property interests are at stake [be] entitled to 'notice and an opportunity to be heard.'" Id. "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must . . . afford *a reasonable time* for those interested to make their appearance." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (emphasis added) (citations omitted).

Although the Fifth Amendment's Due Process Clause applies to action by the federal government, it can also apply to private actors whose actions can be attributed to the federal government. See Simms v. D.C., 699 F. Supp. 2d 217, 224 (D.D.C. 2010).[2] "[S]tate action may

---

Select Committee, despite Plaintiffs' written request for the same on February 7, 2022. Without these records, Plaintiffs cannot confirm whether JPMorgan produced records dated after November 23, 2021.

[2] Many cases discussing when a private party's conduct can qualify as "state action" arise under the Due Process Clause of the Fourteenth Amendment. However, because "[t]he Fourteenth Amendment is substantially the same [as the Fifth Amendment,] cases analyzing States' liability

be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974)). The federal government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [United States]." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Here, the Select Committee issued a subpoena to JPMorgan. The subpoena, of course, was an exercise of the Select Committee's coercive power. See Cudahy Packing Co. of La. v. Holland, 315 U.S. 357, 370 (1942) (Douglas, J., dissenting) ("A subpoena of course exerts a coercive influence."); Nixon v. Sirica, 487 F.2d 700, 770 (D.C. Cir. 1973) (describing the coercive effect of legislative subpoenas). Therefore, JPMorgan's actions can be attributed to the federal government and the Fifth Amendment's Due Process Clause applies. As demonstrated by JPMorgan's initial compliance with the subpoena for Plaintiffs' records, the prior "notice" was inadequate; Plaintiffs were not given an opportunity to be heard *before* JPMorgan complied with the subpoena. Therefore, to adequately preserve Plaintiffs' Fifth Amendment rights, it is respectfully submitted that this Court should require JPMorgan to provide Plaintiffs with notice at least ten (10) days prior to any production of additional private financial records of Plaintiffs by JPMorgan to the Select Committee.

This Court has the authority to order this relief. The Supreme Court has long recognized the inherent, broad equitable powers of federal courts to "go beyond the matters immediately

---

under the Fourteenth Amendment can be relied upon to analyze the [United States'] liability under the Fifth Amendment." Colbert v. D.C., 78 F. Supp. 3d 1, 8 n.5 (D.D.C. 2015); see also DeFrantz v. U.S. Olympic Comm., 492 F. Supp. 1181, 1192 (D.D.C.), aff'd, 701 F.2d 221 (D.C. Cir. 1980) (applying private party state action analysis to Fifth Amendment claim).

underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances" so that the Court can provide "complete rather than truncated justice." Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946); see also Liu v. Sec. & Exch. Comm'n, 140 S. Ct. 1936, 1947 (2020) (quoting Porter for the proposition that federal courts have broad equitable powers "'available for the proper and complete exercise of that jurisdiction.'").

The willful and intentional actions of JPMorgan precluded Plaintiffs' access to this Court to object to the subpoena prior to JPMorgan's production of Plaintiffs' private financial records. Courts have routinely explained that "[t]he requirement that *prior* notice must be given has important underpinnings of fairness and efficiency." Cootes Drive LLC v. Internet L. Libr., Inc., No. 01 CIV. 0877 (RLC), 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002) (discussing the advisory committee comments to Federal Rule of Civil Procedure 45); see also UMG Recordings, Inc. v. Does 1-4, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *3 (N.D. Cal. Mar. 6, 2006) (requiring that consumers be given notice and an opportunity to be heard on subpoenas to telecommunications company "in the interest of fairness").  During the hearing on the motion for temporary restraining order, the Court recognized that Congress had an "incentive" "to do whatever it c[ould] to get documents before a target can interpose [an] objection because, once you get the documents, [it is] home free[.]"  (ECF No. 27 at 23:21–24).  Clearly, orchestrating a production of records with unreasonable notice that provides no opportunity to be heard before the production is contrary to the notions of equity and fundamental fairness.

Not only does the relief sought herein protect Plaintiffs' Fifth Amendment Due Process rights and promote fairness, it also serves to conserve judicial resources and economy without imposing any significant burden on the Parties.  Prior notice of at least ten (10) days will allow the Parties to adequately brief objections to the subpoena or, if needed, litigate a motion for temporary

restraining order and provide the Court time to decide the motion, all without needing to fully resolve the issues now.  Without such relief, there is nothing preventing Defendants from engaging in the same conduct complained of herein, which materially disadvantaged Plaintiffs and rewarded JPMorgan's failure by design to provide any meaningful notice.  Plaintiffs previously requested JPMorgan to provide such notice without the need to file a motion, but JPMorgan refused this reasonable compromise.

Accordingly, Plaintiffs respectfully request that this Court order Defendant JPMorgan to provide Plaintiffs with prior notice of at least ten (10) days of its intent to produce any additional private financial records of Plaintiffs to the Select Committee.

Date:  February 18, 2022

Respectfully submitted,

**ABEL BEAN LAW, P.A.**

*s/ Christopher W. Dempsey*
CHRISTOPHER W. DEMPSEY
DANIEL K. BEAN
JARED J. BURNS
100 N Laura Street, Suite 501
Jacksonville, Florida 32202
Telephone:  (904) 944-4100
Fax:  (904) 944-4122
Email: cdempsey@abelbeanlaw.com
dbean@abelbeanlaw.com
jburns@abelbeanlaw.com

*Attorneys for Plaintiffs*