**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

TAYLOR BUDOWICH, *et al*.,

               Plaintiffs,

    v.

NANCY PELOSI, *et al*.,

               Defendants.

Case No. 1:21-cv-3366-JEB

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS</u>**

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

*Counsel for the Congressional Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND ..............................................................................................................................2

A.    The January 6th Attack ............................................................................................ 2

B.    The Formation Of The Select Committee................................................................. 2

C.    The Select Committee's Subpoenas Concerning Plaintiffs ..................................... 3

D.    Procedural History ................................................................................................... 5

STANDARD OF REVIEW .............................................................................................................7

ARGUMENT ...................................................................................................................................7

I.    THE SPEECH OR DEBATE CLAUSE MANDATES DISMISSAL............................... 8

II.   THIS CASE IS MOOT .................................................................................................... 9

III.  PLAINTIFFS FAIL TO STATE A CLAIM ................................................................. 11

      A.    Plaintiffs' Claims Regarding The Validity Of The Select Committee
            Subpoena Should Be Dismissed For The Same Reasons This Court
            Concluded Plaintiffs Are Unlikely To Succeed On The Merits ........................... 12

      B.    Plaintiffs' Right to Financial Privacy Act And Constitutional Claims
            Fail On Their Merits ............................................................................................ 13

CONCLUSION..............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Dep't of Hous. & Urb. Dev.*,
118 F.3d 786 (D.C. Cir. 1997) ................................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 7

*Bean LLC v. John Doe Bank*,
291 F. Supp. 3d 34 (D.D.C. 2018) ................................................................... 14, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 7

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ............................................................................................... 15

*\*Brown & Williamson Tobacco Corp. v. Williams*,
62 F.3d 408 (D.C. Cir. 1995) .................................................................................. 8

*Buckley v. Valeo*,
424 U.S. 1 (1976) ................................................................................................... 18

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) ............................................................................... 10

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*,
497 U.S. 261 (1990) ............................................................................................... 17

*Decker v. Nw. Env't Def. Ctr.*,
568 U.S. 597 (2013) ................................................................................................. 9

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) ................................................................................................. 17

*\*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) .................................................................................... 8, 15, 17

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) ................................................................................................... 9

*\*Gravel v. United States*,
408 U.S. 606 (1972) ................................................................................................. 8

*Hannah v. Larche*,
363 U.S. 420 (1960) ......................................................................................... 18, 19

*Kupperman v. U.S. House of Representatives,*
   436 F. Supp. 3d 186 (D.D.C. 2019) ................................................................. 10

*Los Angeles Cnty. v. Davis,*
   440 U.S. 625 (1979) ......................................................................................... 9

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................... 7

*MBIA Ins. Corp. v. F.D.I.C.,*
   708 F.3d 234 (D.C. Cir. 2013) ......................................................................... 11

*McPhaul v. United States,*
   364 U.S. 372 (1960) .................................................................................. 14, 15

*Nat'l Ass'n of Mfrs. v. Taylor,*
   582 F.3d 1 (D.C. Cir. 2009) ............................................................................. 16

*Nat'l Black Police Ass'n v. Dist. of Columbia,*
   108 F.3d 346 (D.C. Cir. 1997) ..................................................................... 9, 10

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York,*
   140 S. Ct. 1525 (2020) (per curiam) ................................................................ 10

*Sadowski v. Bush,*
   293 F. Supp. 2d 15 (D.D.C. 2003) .................................................................... 7

*Senate Permanent Subcomm. on Investigations v. Ferrer,*
   856 F.3d 1080 (D.C. Cir. 2017) ........................................................................ 8

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ........................................................................................... 10

*Swarthout v. Cooke,*
   562 U.S. 216 (2011) ......................................................................................... 15

*Trump v. Deutsche Bank AG,*
   943 F.3d 627 (2d Cir. 2019) ............................................................................. 14

*Trump v. Thompson,*
   20 F.4th 10 (D.C. Cir. 2021) ............................................................. 1, 2, 12, 14

*United States v. Harriss,*
   347 U.S. 612 (1954) ......................................................................................... 16

*Worth v. Jackson,*
   451 F.3d 854 (D.C. Cir. 2006) ......................................................................... 10

**<u>Constitutional & Legislative Authorities</u>**

U.S. Const., Amend. I ................................................................................. 4, 6, 12, 13, 16

U.S. Const., Amend. IV ................................................................. 4, 6, 11, 12, 13, 14, 15, 16

U.S. Const., Amend. V ............................................................................... 4, 11, 13, 15

H. Res. 503, 117th Cong. (2021) ......................................................................... 2, 14

**<u>Other Authorities</u>**

Press Release, Kevin McCarthy, House of Representatives, McCarthy Statement about
    Pelosi's Abuse of Power on January 6th Select Committee (July 21, 2021),
    https://perma.cc/4JNC-73R2 .................................................................................. 2

Press Release, Nancy Pelosi, Speaker, House of Representatives, Pelosi Statement on
    Republican Recommendations to Serve on the Select Comm. To Investigate the
    Jan. 6 Attack on the U.S. Capitol (July 21, 2021), https://perma.cc/B86B-SJTA ................... 2

## INTRODUCTION

This lawsuit represents another misguided attempt to prevent a lawfully constituted Congressional committee from "investigating the single most deadly attack on the Capitol by domestic forces" and evaluating the need for legislation to "ensur[e] the safe and uninterrupted conduct of [Congress's] constitutionally assigned business." *Trump v. Thompson*, 20 F.4th 10, 35 (D.C. Cir. 2021), *injunction denied*, 142 S. Ct. 680 (2022), *cert. denied*, No. 21-932 (Feb. 22, 2022).

As part of its investigation, the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") issued a subpoena to JPMorgan Chase Bank ("JPMorgan") seeking documents pertaining to the accounts of Plaintiffs Taylor Budowich and Conservative Strategies, Inc., based on information about their involvement in the events leading up to the January 6th attack.  Plaintiffs filed suit and a motion for a temporary restraining order seeking return of the documents that JPMorgan produced in response to the Select Committee's subpoena.  After this Court denied the motion, Plaintiffs filed an Amended Complaint.  Supreme Court and Circuit precedent, along with long-established constitutional principles, compel dismissal of Plaintiffs' suit.

As this Court has already held, this lawsuit cannot proceed against the Congressional Defendants in light of the Constitution's Speech or Debate Clause.  In addition, the documents that are the subject of this case have already been produced by JPMorgan, and the Select Committee does not seek any additional documents.  This case is therefore moot.  And, in any event, Plaintiffs' various claims fail on the merits.  In short, the Amended Complaint makes a variety of flawed legal claims to thwart the Select Committee's efforts to understand fully, and to

1

prevent a recurrence of, the events of January 6th.  Under these circumstances, Plaintiffs'
complaint must be dismissed.

## BACKGROUND

### A.     The January 6th Attack

On January 6, 2021, rioters seeking to stop the peaceful transfer of power following the
2020 Presidential election launched a violent assault on the United States Capitol.  H. Res. 503,
117th Cong. (2021), Preamble.  As Plaintiffs describe the event, a large group "entered the U.S.
Capitol, breached security, and disrupted the counting of Electoral College votes until order was
restored."  Am. Compl. ¶ 32.  "The rampage left multiple people dead, injured more than 140
people, and inflicted millions of dollars in damage to the Capitol."  *Trump v. Thompson*, 20 F.4th
at 15.

### B.     The Formation Of The Select Committee

In response to the unprecedented attack, the House of Representatives adopted House
Resolution 503, "[e]stablish[ing] the Select Committee to Investigate the January 6th Attack on
the United States Capitol."  This resolution authorizes the Select Committee to (1) "investigate
the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol;"
(2) "identify, review, and evaluate the causes of and the lessons learned from the domestic
terrorist attack on the Capitol;" and (3) "issue a final report to the House containing such
findings, conclusions, and recommendations for corrective measures . . . as it may deem
necessary."  H. Res. 503, § 4(a)(1)-(3).

To carry out those functions, House Resolution 503 authorizes the Speaker of the House
to appoint up to thirteen Members to the Select Committee, five of whom "shall be appointed
after consultation with the minority leader."  H. Res. 503, § 2(a).  Consistent with the Resolution,

2

the Speaker initially appointed seven Democrats and one Republican and then consulted with the

House Minority Leader, who recommended five additional Republicans.  Am. Compl. ¶¶ 41, 42.

The Speaker then spoke with the Minority Leader, advised that she would appoint three of the

Members he had recommended, and asked the Minority Leader to recommend two other

Republicans.[1]  After the Minority Leader declined and, instead, withdrew all five

recommendations,[2] the Speaker named an additional Republican to the Select Committee.  Am.

Compl. ¶ 43.  Since then, the Select Committee has functioned with seven Democrats and two

Republicans.

### C.  The Select Committee's Subpoenas Concerning Plaintiffs

In furtherance of its duty to "investigate the facts, circumstances, and causes" of the

attack of January 6th, the Select Committee issued subpoenas to certain government agencies,

companies, and individuals, including Plaintiff Taylor Budowich and JPMorgan.

In a cover letter accompanying the subpoena to Budowich, Chairman Bennie Thompson

explained that the Select Committee had "credible evidence" of Budowich's "involvement in and

knowledge of the events within the scope of the Select Committee's inquiry."  Am. Compl. Ex.

A at 4.  Specifically, Chairman Thompson reported that the Select Committee had "reason to

believe" that Budowich had directed $200,000 from a source that was "not disclosed" to pay for

an advertising campaign to encourage people to attend the "Stop the Steal" rally on January 6th,

in support of then-President Trump and his allegations of election fraud.  *Id.*  The subpoena to

---

[1] Press Release, Nancy Pelosi, Speaker, House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol (July 21, 2021), https://perma.cc/B86B-SJTA.

[2] Press Release, Kevin McCarthy, House of Representatives, McCarthy Statement about Pelosi's Abuse of Power on Jan. 6th Select Committee (July 21, 2021), https://perma.cc/4JNC-73R2.

Budowich sought, among other things, records concerning financial transactions relating to the rally. *Id.* at 6-7.

On November 23, 2021, the Select Committee issued a subpoena to JPMorgan for certain of Budowich's financial records. Am. Compl. Ex. B at 5.

In response to the subpoena issued to Budowich personally, after the Select Committee agreed to an extension, Budowich produced 391 documents. ECF 14 (Pls.' Am. Mot. for Temp. Restraining Order), at 2-3. In a letter accompanying transmission of the documents, Budowich asserted general objections, including an objection that the Select Committee was not "duly authorized" and objections based on the First, Fourth, and Fifth Amendments. Am. Compl. Ex. D at 3. Budowich nonetheless agreed to produce "all responsive documents in his possession, custody, or control." *Id.* at 3-5. On December 22, Budowich appeared for a deposition where he answered questions concerning "payments made and received regarding his involvement in the planning of" the rally. Am. Compl. ¶ 64.

On December 16, counsel for Budowich wrote JPMorgan to object to its disclosure of any of Plaintiffs' bank records "without a warrant." Am. Compl. Ex. E at 2. On December 21, JPMorgan notified Budowich that it had received a subpoena from the Select Committee and that it would comply with that subpoena unless it received "documentation legally obligating it to stop taking such steps." Am. Compl. Ex. F at 2. In subsequent correspondence, Plaintiffs' counsel contended that JPMorgan would be in "willful or intentional" violation of the Right to Financial Privacy Act if it produced Plaintiffs' bank records. Am. Compl. Ex. I at 2.

On December 24, JPMorgan produced to the Select Committee records responsive to the subpoena. ECF 14, at 5.

### D.      Procedural History

On December 24, 2021, Plaintiffs filed a complaint and sought a temporary restraining order to enjoin JPMorgan from producing bank records in response to the subpoena.  *See* ECF 1 (Compl.), ECF 2 (Mot. for Temp. Restraining Order).  During a December 29 hearing on Plaintiffs' motion, JPMorgan informed the Court that the documents in question had already been produced to the Select Committee.  The Court therefore denied Plaintiffs' Motion as moot, but did so without prejudice.  *See* December 29, 2021 Minute Order.

On January 4, 2022, Plaintiffs filed an Amended Emergency Motion for Temporary Restraining Order, asking this Court to, among other things, issue a mandatory injunction ordering the Select Committee to "disgorge, promptly return, sequester, or destroy" the documents produced by JPMorgan.  ECF 14, at 1.

On January 20, 2022, this Court held a hearing on Plaintiffs' motion for a temporary restraining order.  Ruling from the bench, this Court denied the motion.  ECF 27 (Jan. 20, 2022 Oral Arg. Tr.), at 34.  *First*, this Court held that it lacked jurisdiction in light of the Speech or Debate clause.  This Court explained that it could not "order Congress . . . to return documents that it has received," that it "does not have the authority to tell Congress what it can or cannot do with such documents," and that the Speech or Debate clause would be a bar to jurisdiction "even if [Plaintiffs] had been able to bring the case prior to" the document production.  *Id.* at 32:11-33:16.  *Second*, this Court held in the alternative that, even if it had jurisdiction, it "would find that the Select Committee has a valid legislative purpose."  *Id.* at 33:17-22.  *Third*, this Court held that, even if it had jurisdiction, it would reject Plaintiffs' arguments that the Select Committee was not validly constituted because this Court must "defer to Congress in the manner of interpreting its rules," and it would be "usurping Congressional authority" to hold otherwise.

*Id.* at 34:1-10. *Finally*, this Court held that, even if it had jurisdiction, it would find that the subpoena is "not overly broad." *Id.* at 34:11-15.

Following that ruling, the parties submitted a Joint Status Report. In the report, the Congressional Defendants stated that "to their knowledge, they have received all of the financial records requested, and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning Plaintiffs." ECF 28 (Feb. 3, 2022 Joint Status Report), at 1. They further represented that "the subpoena does not compel production of more financial records beyond Defendant JPMorgan's production made on December 24, 2021 (except in the unlikely event that responsive records are later discovered that should have been provided at that time)." *Id.* at 2. For its part, JPMorgan stated that it "has no present intention to produce additional documents pursuant to the subpoena" and "[t]he possibility that JPMorgan could do so at some point in the future is purely theoretical." *Id.* Plaintiffs indicated that they intended to move for leave to file an amended complaint and a preliminary injunction request or other appropriate motions. *Id.* at 4.

On February 18, 2022, Plaintiffs filed an Amended Complaint. *See* ECF 30 (Am. Compl.). Against the Congressional Defendants, the Amended Complaint alleges that the subpoena is invalid because the Select Committee is not duly authorized (Count I) and because the Select Committee lacks a valid legislative purpose (Count II); Defendants violated Plaintiffs' procedural due process rights (Count III); Defendants violated the Right to Financial Privacy Act (Count IV); and Defendants violated the First and Fourth Amendments (Counts V and VI). *Id.* at 23-29. The same day, Plaintiffs filed a motion asking this Court to enter an order requiring JPMorgan to provide Plaintiffs with ten days' notice before producing any additional documents

to the Select Committee.  *See* ECF 31 (Mot. to Compel Notice), at 2.  Plaintiffs did not file a

motion for a preliminary injunction.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs

have the burden of establishing this Court's jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S.

555, 561 (1992).  In determining whether it has jurisdiction, the Court accepts a complaint's

well-pled factual allegations as true and draws reasonable inferences in a plaintiff's favor; the

court, "need not, however, accept inferences unsupported by the facts alleged or legal

conclusions that are cast as factual allegations."  *Sadowski v. Bush*, 293 F. Supp. 2d 15, 17

(D.D.C. 2003), *dismissed*, No. 03-5189, 2004 WL 547605 (D.C. Cir. Mar. 17, 2004).

"Moreover, the court need not limit itself to the allegations of the complaint. . . . Rather, the

court, where necessary, may consider the complaint supplemented by undisputed facts along

with the court's resolution of disputed facts to determine whether it has jurisdiction over the

case."  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).

## ARGUMENT

Plaintiffs' various theories against the Congressional Defendants are all flawed.  *First*, as

this Court has already held, the Speech or Debate Clause bars suits like this one against

Congressional Defendants for legislative acts.  *Second*, this Court also lacks jurisdiction because

the case is moot.  The Select Committee has already received the subpoenaed documents; it does

not seek further documents from JPMorgan relating to Plaintiffs, and such documents are the sole subject of Plaintiffs' suit. *Third*, even if this Court did have jurisdiction, the D.C. Circuit and this Court have already held that the Select Committee has a valid legislative purpose. That purpose undoubtedly encompasses the subpoena to Plaintiffs. And, as this Court and another district court have held, the Select Committee is validly constituted. *Fourth*, Plaintiffs' claim under the Right to Financial Privacy Act is misplaced because the Act restricts only agencies and departments of the United States, and the Select Committee is neither. *Finally*, all of Plaintiffs' constitutional claims fail. Plaintiffs' suit against the Congressional Defendants should therefore be dismissed.

## I.     THE SPEECH OR DEBATE CLAUSE MANDATES DISMISSAL

This Court has already held that it "has no jurisdiction to order Congress, because of the Speech [or] Debate Clause, to return documents that it has received." ECF 27 (Jan 20, 2022 Oral Arg. Tr.) at 32:20-22. Likewise, this Court held that it "does not have the authority to tell Congress what it can or cannot do with such documents." *Id.* at 32:23-24. Indeed, as this Court recognized, the Speech or Debate Clause would bar Plaintiffs' claims against the Congressional Defendants "even if [Plaintiffs] had been able to bring the case prior to" the production of documents. *Id.* at 33:9-16. Accordingly, as the Congressional Defendants have previously explained in detail, the claims here should be dismissed for the simple reason—already recognized by this Court—that this Court lacks jurisdiction to issue the relief against the Congressional Defendants that Plaintiffs' demand. *See* ECF 23 (Mem. in Opp. to Mot. for Temp. Restraining Order), at 9-13; *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504-05 (1975); *Gravel v. United States*, 408 U.S. 606, 618 (1972); *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995).

## II.      THIS CASE IS MOOT

1.  Article III "restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quotation marks and citation omitted).  An Article III controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (quotation marks omitted).  Even where a suit presents a live controversy when filed, courts "must refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than speculative chance of affecting them in the future." *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quotation marks and citation omitted).

This case is moot.  As stated in the February 3, 2022 Joint Status Report, the Select Committee Defendants "have received all of the financial records requested, and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning Plaintiffs."  ECF 28 (Feb. 3, 2022 Joint Status Report) at 1.  Accordingly, the Select Committee does not seek "production of more financial records beyond Defendant JPMorgan's production made on December 24, 2021 (except in the unlikely event that responsive records are later discovered that should have been provided at that time)." *Id.* at 2.  Likewise, in the same status report, JPMorgan confirmed that it had "no present intention to produce additional documents pursuant to the subpoena." *Id.*

Because Plaintiffs suffer no ongoing injury, it would be "impossible for [this Court] to grant any effectual relief" to them, even if they prevailed. *Decker v. Nw. Env't. Def. Ctr.*, 568 U.S. 597, 609 (2013) (quotation marks and citation omitted).  A judgment regarding documents that are not sought by the Select Committee would not redress any harm to Plaintiffs and would be a quintessential "advisory opinion[] on abstract propositions of law" that Article III prohibits this Court from issuing. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 633 (1979) (quotation marks

and citation omitted); *see Kupperman v. U.S. House of Representatives*, 436 F. Supp. 3d 186, 191-94 (D.D.C. 2019).[3]

2.  The highly theoretical and remote possibility that JPMorgan could at some future date discover documents responsive to the subpoena that it had not already produced—documents that the Select Committee currently has no reason to believe exist—does not preserve an Article III controversy here.  A case is moot where "there is no reasonable expectation that the alleged violation will recur."  *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quotation marks and citation omitted); *see Kupperman*, 436 F. Supp. 3d at 191.  "[Z]ero risk is not the test" for mootness. *Clarke v. United States*, 915 F.2d 699, 702 (D.C. Cir. 1990).

For example, a challenge to a statute that is repealed during litigation is moot absent an affirmative indication that the statute will be reenacted.  The Supreme Court has entertained challenges to repealed statutes only "where the governing body expressed an intent to re-enact the allegedly defective law."  *Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006); *see also New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam).  The D.C. Circuit has similarly explained that "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude" that a case survives; instead, "there must be evidence indicating that the challenged law likely will be reenacted." *Nat'l Black Police Ass'n*, 108 F.3d at 349.  The same is true of the subpoena at issue here.

There is no reasonable likelihood that any additional documents will be produced in response to the subpoena.  To the contrary, the Select Committee has made clear that it does not seek any additional documents from JPMorgan relating to Plaintiffs, and JPMorgan has

---

[3] For these same reasons, Plaintiffs lack standing to maintain this suit.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (holding no redressable injury where injunctive relief is sought and there is no "continuing violation or the likelihood of a future violation").

represented that it does not expect to produce additional documents to the Select Committee.  *See* ECF 28, at 1-2.  The likelihood that some theoretical yet-to-be-discovered documents responsive to the subpoena might crop up—that have not been discovered in the three months since the JPMorgan production and the six weeks since the parties' status report—approaches zero.  Plaintiffs have provided no evidence that such documents exist, and the Select Committee is aware of none.  Accordingly, this case is moot.  At the very least, this Court should exercise its discretion to dismiss the claims under the doctrine of prudential mootness.  *See MBIA Ins. Corp. v. F.D.I.C.*, 708 F.3d 234, 245 (D.C. Cir. 2013) ("Where it is so unlikely that the court's grant of [remedy] will actually relieve the injury, the doctrine of prudential mootness permits the court in its discretion to stay its hand, and to withhold relief it has the power to grant by dismissing the claim for lack of subject matter jurisdiction." (quotation marks and citation omitted)).[4]

## III.    PLAINTIFFS FAIL TO STATE A CLAIM

As to the Congressional Defendants, Plaintiffs' Amended Complaint repeats many of their initial allegations.  Plaintiffs' claims that the Select Committee lacks a legitimate legislative purpose and is not validly constituted should be dismissed for the same reasons that this Court denied the motion for a temporary restraining order.  Further, Plaintiffs' claims under the Right to Financial Privacy Act and the First, Fourth, and Fifth Amendments fail on the merits.

---

[4] To the extent Plaintiffs attempt to assert claims for damages against the Congressional Defendants under the Right to Financial Privacy Act (Am. Compl. at 35) that would not be mooted by the production of documents, those claims fail on the merits.  *See* p. 13, *infra*.  And, as the Congressional Defendants have previously explained, there has been no waiver of sovereign immunity allowing for damages against the Congressional Defendants.  *See* ECF 23 (Mem. in Opp. to Mot. for Temp. Restraining Order), at 13-14.

**A.**     **Plaintiffs' Claims Regarding The Validity Of The Select Committee Subpoena Should Be Dismissed For The Same Reasons This Court Concluded Plaintiffs Are Unlikely To Succeed On The Merits**

Jurisdiction aside, this Court has also correctly rejected the merits of several of Plaintiffs' claims.  This Court concluded that the Select Committee is validly constituted and is pursuing legitimate legislative purposes.  ECF 27 (Jan. 20, 2022 Oral Arg. Tr.), at 34.  That conclusion properly followed the D.C. Circuit's straightforward (and binding) holding that "the January 6th Committee plainly has a valid legislative purpose and its inquiry concerns a subject on which legislation could be had."  *Trump v. Thompson*, 20 F.4th at 41 (quotation marks and citation omitted); *id.* at 17 (describing "Congress's uniquely vital interest in studying the January 6th attack on itself to formulate remedial legislation and to safeguard its constitutional and legislative operations"); ECF 27, at 34:17-22 (noting that this Court is "bound to follow" the D.C. Circuit's decision in *Trump v. Thompson*, which in any event "seems plainly right").

Plaintiffs nevertheless still insist that the Select Committee is acting without any valid legislative power.  *See* Am. Compl. ¶ 2; 83-94, 123-29; *id.* ¶¶ 152-55 (predicating Fourth Amendment claim on Plaintiffs' argument that the Select Committee is "acting *ultra vires* and absent any warrant, legal authority, or justification").  Plaintiffs, however, point to no changes that merit this Court departing from its prior adherence to binding D.C. Circuit precedent.  The only notable change is that another court has *agreed* with this Court's conclusion that the Select Committee is validly constituted.  *See* Order at 10, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Jan. 25, 2022), ECF 43 (holding that "the issues surrounding the 2020 election and the January 6th attacks" are "clearly subjects on which legislation could be had") (quotation marks omitted).

As to Plaintiffs' challenge to the validity of the Select Committee's composition, this Court concluded that it "would be going beyond its authority to hold that the Speaker, who is

empowered by House Rule 1.11, to appoint such committees" lacked power to do so here.  ECF

27, at 34.  Moreover, "this Court would have to defer to Congress in the manner of interpreting

its rules."  *Id.*  Plaintiffs' Amended Complaint reiterates the same arguments this Court already

appropriately rejected.  *Compare* Compl. ¶¶ 53-60 *with* Am. Compl. ¶¶ 76–82.

For the reasons already provided by this Court and explained in the Congressional

Defendants' opposition to a temporary restraining order, Plaintiffs' claims regarding the purpose

and validity of the Select Committee should be dismissed.  *See* ECF 23 (Mem. in Opp. to Mot.

for Temp. Restraining Order), at 14-24.

**B.      Plaintiffs' Right to Financial Privacy Act And Constitutional Claims Fail On
          Their Merits**

In addition to the claims this Court has already rejected, Plaintiffs allege (1) violation of

the Right to Financial Privacy Act; (2) a standalone cause of action under the First Amendment;

(3) a new standalone cause of action under the Fourth Amendment; and (4) a new procedural due

process cause of action under the Fifth Amendment.  Even if the Court had jurisdiction to

address these arguments—and it does not for the reasons this Court already explained, ECF 27,

at 32—these claims fail on the merits.

1.  In their opposition to Plaintiffs' motion for a temporary restraining order, the

Congressional Defendants set forth detailed analyses of why: (1) the Right to Financial Privacy

Act does not entitle Plaintiffs to relief; and (2) Plaintiffs' financial records do not constitute

political speech protected by the First Amendment.  *See* ECF 23 (Mem. in Opp. to Mot. for

Temp. Restraining Order), at 24-38.  Those arguments apply equally to Plaintiffs' claims under

the Right to Financial Privacy Act and the First Amendment in Plaintiffs' Amended Complaint

(which largely track Plaintiffs' original complaint), and Plaintiffs' claims should thus be

dismissed for the same reasons the Select Committee has already articulated.  *See, e.g.*, *id.*;

*Trump et al. v. Deutsche Bank AG, et al.*, 943 F.3d 627, 641-43 (2d Cir. 2019), *vacated and remanded sub nom. on other grounds by Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020); *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 48 (D.D.C. 2018).

2.  In addition, Plaintiffs' new Fourth Amendment claim fails.  Plaintiffs' Fourth Amendment cause of action is predicated on their mistaken theory that the Select Committee lacks authority to act.  *See* Am. Compl. ¶ 101 ("The Fourth Amendment restricts the ability of the Select Committee to issue sweeping subpoenas untethered from any valid legislative purpose."); *see also* ¶ 154 ("JPMorgan's production of private financial records of Plaintiffs to the Select Committee acting *ultra vires* and absent any warrant, legal authority, or justification deprived Plaintiffs of rights, privileges, or immunities secured and protected by the Fourth Amendment to the United States Constitution.").  Because both this Court and the D.C. Circuit have rejected the theory that the Select Committee lacks authority to issue subpoenas for information, Plaintiffs' Fourth Amendment claims fail at the outset.

In *Trump v. Thompson*, the D.C. Circuit held that "Congress's power to obtain information is broad and indispensable . . . and encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them."  20 F.4th at 24 (internal punctuation omitted).  Given this holding, Plaintiffs' argument that the subpoena violates the Fourth Amendment because it is "sweeping" is wrong.  A subpoena is not impermissibly overbroad if its call for documents or testimony is within the scope of the Congressional inquiry at issue.  *See McPhaul v. United States*, 364 U.S. 372, 382 (1960).

The Select Committee's inquiry includes examining the January 6th attack as well as its "circumstances" and "causes," to inform a consideration of "changes in law, policy, procedures,

rules, or regulations."  H. Res. 503 § (3)(1), 4(c).  Given that scope, the subpoena is

appropriately tailored to meet the Select Committee's valid legislative purpose and is not

impermissibly "sweeping."  *See Eastland*, 421 U.S. at 509.  Specifically, as Chairman Thompson

explained, there is reason to believe that Budowich directed $200,000 from a source that was

"not disclosed" to pay for an advertising campaign to encourage people to attend the "Stop the

Steal" rally on January 6th, in support of then-President Trump and his allegations of election

fraud.  Am. Compl. Ex. A at 3.  The subpoena to Budowich sought records concerning financial

transactions relating to the rally.  *Id.* at 5-6.  *See McPhaul*, 364 U.S. at 382.  The subpoena,

therefore, is not impermissibly "sweeping" and does not violate Plaintiffs' Fourth Amendment

rights.

   3. Plaintiffs' new procedural due process theory is also wrong.  The Due Process

Clause of the Fifth Amendment forbids the Federal Government from depriving a person of "life,

liberty, or property, without due process of law."  U.S. Const., Amend. V.  Analysis of a

procedural due process claim proceeds in two steps: courts first ask whether there exists a liberty

or property interest of which a person has been deprived, and, if so, courts ask whether the

procedures followed were constitutionally sufficient.  *See Swarthout v. Cooke*, 562 U.S. 216, 219

(2011).

   a. Plaintiffs' complaint fails at the first step of the procedural due process analysis

because Plaintiffs do not identify a cognizable liberty or property interest implicated by the

subpoena.  To the extent Plaintiffs attempt to assert a liberty or property interest in avoiding

production of this information, such a liberty or property interest must "stem from an

independent source such as state law," *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564,

577 (1972), and Plaintiffs have not identified any state law or other independent source that

supports a claim of entitlement to avoid JPMorgan's production.  Plaintiffs do not attempt to

identify any property interest implicated by the production of information at issue here; instead,

Plaintiffs summarily allege that "JPMorgan's production of private financial records of Plaintiffs

to the Select Committee implicates certain protected liberty interests, to wit: privacy,

engagement in expressive speech, and associational rights."  Am. Compl. ¶ 132.  The subpoena

does not, however, implicate any interests Plaintiffs may have in privacy, engagement in

expressive speech, or associational rights.

Any liberty interest in "privacy" predicated on the Fourth Amendment plainly fails for

the same reasons that Plaintiffs' Fourth Amendment claim fails.  *See* pp. 13-15, *supra*.  The D.C.

Circuit, moreover, has "express[ed] grave doubts as to the existence of a constitutional right of

privacy in the nondisclosure of personal information."  *Am. Fed'n of Gov't Emps., AFL-CIO v.*

*Dep't of Hous. & Urb. Dev.*, 118 F.3d 786, 791 (D.C. Cir. 1997).  Plaintiffs have no liberty

interest arising from a right to privacy in the nondisclosure of the information at issue here.

Any liberty interest in "engagement in expressive speech" and "associational rights" fails

for the same reason that Plaintiffs' First Amendment claim fails.  *See* ECF 23, at 34-36.  As the

D.C. Circuit has explained, "[m]ore than fifty years ago, the Supreme Court held that the public

disclosure of 'who is being hired, who is putting up the money, and how much' they are

spending to influence legislation is 'a vital national interest.'"  *Nat'l Ass'n of Mfrs. v. Taylor*, 582

F.3d 1, 6 (D.C. Cir. 2009) (citing *United States v. Harriss*, 347 U.S. 612, 625-26 (1954)); *see*

*also Bean LLC v. John Doe Bank*, 291 F. Supp. at 46 (rejecting freedom of association claim,

explaining that, while the work done by the defendant research firm "conducted on behalf of its

clients may have been political in nature, [its] commercial relationship with those clients was

not, and thus that relationship does not provide [the research firm] with some special First Amendment protection from subpoenas").

Moreover, any argument that the subpoena implicates Plaintiffs' First Amendment rights is squarely foreclosed by *Eastland*, 421 U.S. at 509. There, the Supreme Court rejected an organization's argument that a Congressional subpoena's purpose was to "'harass, chill, punish, and deter' [it] in the exercise of [] First Amendment rights." *Id.* at 510 n.16. The Court explained that the typical First Amendment balancing test "plays no part" when a Congressional subpoena is involved. *Id.* Therefore, even if Plaintiffs could articulate some First Amendment interest in avoiding disclosure, they have no such interest in the context of a legislative subpoena.

"Process is not an end in itself," *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009), and without an independent liberty or property interest, Plaintiffs' due process claim fails.

b.      Even if Plaintiffs were able to identify some viable liberty interest, "determining that a person has a liberty interest under the Due Process Clause does not end the inquiry; whether [a person's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant [governmental] interests." *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (quotation marks, citation, and footnote omitted). The Select Committee's subpoena seeks records relevant to determining the root causes of the January 6th insurrection that resulted in multiple deaths and aimed to prevent Congress from carrying out its constitutional responsibility to officially count the electoral college votes. This is a paradigmatic example of the grave governmental interest in the "free

functioning of our national institutions." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (citation omitted).

Plaintiffs' summary assertions that they have a due process right to notice and an opportunity to be heard fail.  Am. Compl. ¶ 133 (citing no authority to support the allegation that "JPMorgan's production of private financial records of Plaintiffs to the Select Committee was and is in violation of the Due Process rights of Plaintiffs to constitutionally adequate procedures – nominally notice and an opportunity to be heard").  The Supreme Court has been crystal clear that persons whose conduct is under investigation do not have the full panoply of due process rights that exist for criminal prosecutions.  *Hannah v. Larche*, 363 U.S. 420, 441-42 (1960) (subject of investigation by Civil Rights Commission is not "entitled, by virtue of the Due Process Clause, to know the specific charges that are being investigated, as well as the identity of the complainants, and to have the right to cross-examine those complainants and other witnesses").  Like the commission at issue in *Hannah*, the Select Committee "is purely investigative and fact-finding.  It does not adjudicate.  It does not hold trials or determine anyone's civil or criminal liability.  It does not issue orders.  Nor does it indict, punish, or impose any legal sanctions.  It does not make determinations depriving anyone of his life, liberty, or property."  *Id.* at 441.  The purpose of the Select Committee "is to find facts which may subsequently be used as the basis for legislative or executive action."  *Id.*

As the Supreme Court explained, "[t]he investigative function of [legislative] committees is as old as the Republic."  *Id.* at 444.  And "the history of these committees clearly demonstrates that only infrequently have witnesses appearing before congressional committees been afforded the procedural rights normally associated with an adjudicative proceeding.  In the vast majority of instances, congressional committees have not given witnesses detailed notice or an

opportunity to confront, cross-examine and call other witnesses." *Id.* at 445.  Plaintiffs do nothing to show why the Select Committee is any different or why they are entitled to more process than that provided in other Congressional investigations, and they cannot make such a showing.

Plaintiffs' new procedural due process theory should be dismissed.

\* \* \*

This case is one of a slew of challenges brought by recipients of Select Committee subpoenas to impede the Select Committee's critical work.  The Congressional Defendants ask this Court to resolve this motion as expeditiously as possible so that the Select Committee can focus exclusively on its important task.  The Congressional Defendants are happy to forgo oral argument on this motion if that would facilitate swift dismissal of this matter.

## CONCLUSION

For the reasons stated above, this Court should dismiss the Amended Complaint in its entirety against the Congressional defendants.

Respectfully submitted,

/s/  *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

(202) 225-9700
Douglas.Letter@mail.house.gov
-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte[*]
Noam Biale[*]
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com
-and-

ARNOLD & PORTER
John A. Freedman
Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

Dated:  March 25, 2022

---

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

_/s/ Douglas N. Letter_
Douglas N. Letter