## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR BUDOWICH, *et al.*, <br><br>       Plaintiffs, <br><br>       v. <br><br> NANCY PELOSI, in her official capacity as Speaker of the United States House of Representatives, *et al.*, <br><br>       Defendants. | No. 1:21-cv-03366 (JEB) |

## DEFENDANT J.P. MORGAN CHASE BANK, N.A.'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

For the reasons stated in the attached Memorandum of Points and Authorities in Support of its Motion to Dismiss the Amended Complaint, Defendant J.P. Morgan Chase Bank, N.A., by and through its attorneys, moves pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint (ECF No. 30) in its entirety, with prejudice, for lack of standing and for failure to state a claim upon which relief may be granted. A proposed Order is also attached hereto.

Dated: March 25, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

*/s/ Loretta E. Lynch*
Loretta E. Lynch (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3118
lelynch@paulweiss.com

Roberto J. Gonzalez (DC Bar No. 501406)
2001 K Street, NW
Washington, DC 20006-1047
Telephone:  (202) 223-7300
rgonzalez@paulweiss.com

*Counsel for Defendant*
*J.P. Morgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

Pursuant to LCvR 5.3, I hereby certify that, on March 25, 2022, I caused to be electronically filed a copy of the foregoing Memorandum of Points and Authorities in Support of Defendant J.P. Morgan Chase Bank, N.A.'s Motion to Dismiss the Amended Complaint using the Court's CM/ECF system, and service was effected electronically pursuant to LCvR 5.4(d) to all counsel of record.

*/s/ Loretta E. Lynch*
Loretta E. Lynch

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TAYLOR BUDOWICH, *et al.*,

                          Plaintiffs,

                     v.

NANCY PELOSI, in her official capacity as Speaker of the United States House of Representatives, *et al.*,

                          Defendants.

No. 1:21-cv-03366 (JEB)

## DEFENDANT J.P. MORGAN CHASE BANK, N.A.'S
## MEMORANDUM OF POINTS AND AUTHORITIES
## <u>IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

PROCEDURAL BACKGROUND........................................................................ 6

ARGUMENT .................................................................................................... 7

I.      STANDARD OF REVIEW ....................................................................... 7

II.     PLAINTIFFS' RIGHT TO FINANCIAL PRIVACY ACT CLAIM (COUNT IV)
        SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................. 9

        A.      Plaintiffs' RFPA Claim Fails Because the RFPA Does Not Apply to
                Subpoenas Issued by Congressional Committees.................................... 9

        B.      Plaintiffs Fail to Adequately Plead They Were Damaged .................... 11

        C.      Plaintiff Conservative Strategies, Inc. Has No Standing to Assert a Claim
                under the RFPA................................................................................ 14

III.    PLAINTIFFS' FIRST, FOURTH, AND FIFTH AMENDMENT CLAIMS
        (COUNTS III, V, VI) SHOULD BE DISMISSED FOR LACK OF STANDING
        AND FAILURE TO STATE A CLAIM ....................................................... 15

IV.     PLAINTIFFS' CLAIM AGAINST JPMCB FOR VIOLATING THE
        CALIFORNIA CONSTITUTION (COUNT VII) SHOULD BE DISMISSED
        FOR FAILURE TO STATE A CLAIM ....................................................... 21

        A.      Plaintiffs Fail to State a Claim for Invasion of Privacy under the California
                Constitution.................................................................................... 21

        B.      Corporate Plaintiff Conservative Strategies Has No Standing to Assert
                This Type of Claim ......................................................................... 25

V.      PLAINTIFFS' CLAIMS FOR VIOLATION OF CALIFORNIA'S UNFAIR
        COMPETITION LAW AGAINST JPMCB (COUNTS VIII AND IX) SHOULD
        BE DISMISSED FOR FAILURE TO STATE A CLAIM .............................. 25

        A.      JPMCB's Actions Are Not "Unlawful"; Thus Count VIII Should Be
                Dismissed ...................................................................................... 25

        B.      JPMCB's Actions Are Not "Unfair"; Thus Count IX Should Be Dismissed ....... 28

VI.     PLAINTIFFS' CLAIMS FOR DECLARATORY JUDGMENTS THAT THE
        SELECT COMMITTEE IS NOT DULY AUTHORIZED (COUNT I) AND
        DOES NOT HAVE A VALID LEGISLATIVE PURPOSE (COUNT II)
        SHOULD BE DISMISSED FOR LACK OF STANDING AND FOR FAILURE
        TO STATE A CLAIM ........................................................................... 29

CONCLUSION.................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*,
464 F. App'x 651 (9th Cir. 2011) .............................................................................26

*Ali* v. *Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) ................................................................................30

*\*Am. Acad. of Pediatrics* v. *Lungren*,
940 P.2d 797 (Cal. 1997) .......................................................................................23

*\*Anderson* v. *USAir, Inc.*,
818 F.2d 49 (D.C. Cir. 1987) ..................................................................................19

*Arizonans for Off. Eng.* v. *Arizona*,
520 U.S. 43 (1997).....................................................................................................8

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)..............................................................................................7, 24

*Ass'n of Am. Physicians & Surgeons, Inc.* v. *Schiff*,
23 F.4th 1028 (D.C. Cir. 2022) ..............................................................................15

*Bean LLC* v. *John Doe Bank*,
291 F. Supp. 3d 34 (D.D.C. 2018) ..........................................................................15

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007)...................................................................................................7

*\*Bond* v. *U.S. Postal Serv. Fed. Credit Union*,
164 F. Supp. 3d 740 (D. Md. 2015) ......................................................................9, 12

*Brackfield & Assocs. P'ship* v. *Branch Banking & Tr. Co.*,
No. 3:14-CV-524-PLR-HBG, 2015 WL 5177737 (E.D. Tenn. Sept. 4, 2015),
*aff'd*, 645 F. App'x 428 (6th Cir. 2016)....................................................................12

*Chamber of Commerce* v. *EPA*,
642 F.3d 192 (D.C. Cir. 2011) ..............................................................................8, 15

*Cheeks* v. *Fort Myer Const. Co.*,
722 F. Supp. 2d 93 (D.D.C. 2010) ..........................................................................17

*Colgate* v. *JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................................................28

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.,
  412 U.S. 94 (1973)................................................................................................18

*Correctional Servs. Corp. v. Malesko,
  534 U.S. 61 (2001)..............................................................................................16

Covad Commc'ns Co. v. Bell Atl. Corp.,
  407 F.3d 1220 (D.C. Cir. 2005) .............................................................................8

*Crooker v. United States State Dep't,
  628 F.2d 9 (D.C. Cir. 1980)............................................................................9, 16

*Crosby v. Nat'l Foreign Trade Council,
  530 U.S. 363 (2000).............................................................................................27

Dailey v. Bank of Am.,
  106 F. App'x 533 (9th Cir. 2004) ........................................................................17

Davis v. HSBC Bank Nevada, N.A.,
  691 F.3d 1152 (9th Cir. 2012) .............................................................................25

Eastland v. United States Servicemen's Fund,
  421 U.S. 491 (1975).............................................................................................24

Edmonson v. Leesville Concrete Co., Inc.,
  500 U.S. 614 (1991).............................................................................................18

*EEOC v. St. Francis Xavier Parochial Sch.,
  117 F.3d 621 (D.C. Cir. 1997)...............................................................................7

*Eidmann v. Walgreen Co.,
  522 F. Supp. 3d 634 (N.D. Cal. 2021), appeal dismissed, No. 21-15659, 2021
  WL 4785889 (9th Cir. May 17, 2021) ..................................................................26

Elsman v. Standard Fed. Bank,
  46 F. App'x 792 (6th Cir. 2002) ..........................................................................17

*In re Facebook, Inc. Internet Tracking Litig.,
  956 F.3d 589 (9th Cir. 2020), cert. denied sub nom. Facebook, Inc. v. Davis,
  141 S. Ct. 1684 (2021)..............................................................................2, 21, 22

Fitts v. Fed. Nat. Mortg. Ass'n,
  44 F. Supp. 2d 317 (D.D.C. 1999), aff'd, 236 F.3d 1 (D.C. Cir. 2001)...................30

*Flowers v. First Hawaiian Bank,
  295 F. Supp. 2d 1130 (D. Haw. 2003), aff'd sub nom. Flowers v. U.S. Army,
  25th Infantry Div., 179 F. App'x 986 (9th Cir. 2006) ............................................13

*Grafilo* v. *Wolfsohn*,
  245 Cal. Rptr. 3d 564 (Cal. Ct. App. 2019) ...........................................................22

*Hall* v. *Fiat Chrysler America US LLC*,
  550 F. Supp. 3d 847 (C.D. Cal. 2021) .................................................................28

*United States* v. *Hambrick*,
  55 F. Supp. 2d 504 (W.D. Va. 1999) ...................................................................31

*Hernandez* v. *Hillsides, Inc.*,
  47 Cal. 4th 272 (Cal. 2009).................................................................................22

*Hoskins* v. *TCF Nat'l Bank*,
  248 F. App'x 742 (7th Cir. 2007) ........................................................................18

*\*Hugler* v. *Chimes D.C.*,
  No. CV RDB-15-3315, 2017 WL 1176031 (D. Md. Mar. 30, 2017) ...............12, 14

*\*United States* v. *Jacobsen*,
  466 U.S. 109 (1984)............................................................................................18

*\*Jeffrey H.* v. *Imai, Tadlock & Keeney*,
  101 Cal. Rptr. 2d 916 (Cal. 2000).......................................................................23

*Jones* v. *Nat'l Council on Disability*,
  66 F. Supp. 3d 94 (D.D.C. 2014), *aff'd*, 2015 WL 653308 (D.C. Cir. 2015)...........8

*\*Kaempe* v. *Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ...............................................................................8

*Kelley* v. *Fed. Bureau of Investigation*,
  67 F. Supp. 3d 240 (D.D.C. 2014) ................................................................11, 13

*Kentucky Dep't of Corr.* v. *Thompson*,
  490 U.S. 454 (1989)............................................................................................20

*Klayman* v. *Nat'l Sec. Agency*,
  280 F. Supp. 3d 39 (D.D.C. 2017), *aff'd sub nom. Klayman* v. *Obama*, 759 F.
  App'x 1 (D.C. Cir. 2019) ...........................................................................8, 15, 16

*Kretchmar* v. *Fed. Bureau of Investigation*,
  32 F. Supp. 3d 49 (D.D.C. 2014), *aff'd* (Jan. 16, 2015) ........................................20

*\*Low* v. *LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....................................................21, 22, 23

*Lozano* v. *AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ...............................................................................25

*Lugar* v. *Edmondson Oil Co.*,
   457 U.S. 922 (1982)..................................................................................17

*McGrain* v. *Daugherty*,
   273 U.S. 135 (1927)..................................................................................24

*McKinney* v. *Google, Inc.*,
   No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120
   (N.D. Cal. Aug. 30, 2011)..........................................................................29

*Mead* v. *City First Bank of DC, N.A.*,
   616 F. Supp. 2d 78 (D.D.C. 2009) ..............................................................7

*Med. Bd. of California* v. *Chiarottino*,
   170 Cal. Rptr. 3d 540 (Cal. Ct. App. 2014) ................................22, 23, 24

*United States* v. *Miller*,
   425 U.S. 435 (1976)............................................................................19, 20

*Naegele* v. *Albers*,
   110 F. Supp. 3d 126 (D.D.C. 2015), *aff'd*, 672 F. App'x 25 (D.C. Cir. 2016)..........................8

*New Vision Photography Program, Inc.* v. *D.C.*,
   54 F. Supp. 3d 12 (D.D.C. 2014) (Boasberg, J.)........................................19

*Off. of Thrift Supervision Dep't of Treasury* v. *Dobbs*,
   931 F.2d 956 (D.C. Cir. 1991) ...............................................................9, 16

*Oneok, Inc.* v. *Learjet, Inc.*,
   575 U.S. 373 (2015)..................................................................................27

*Pittsburgh Nat'l Bank* v. *United States*,
   771 F.2d 73 (3d Cir. 1985)........................................................................14

*Prince* v. *Acheson*,
   305 F. Supp. 3d 48 (D.D.C. 2018) (Boasberg, J.)........................................7

*Richardson* v. *D.C. Bar Ass'n*,
   No. 97-7051, 1997 WL 404321 (D.C. Cir. June 30, 1997) .......................20

*Roberts* v. *Gulf Oil Corp.*,
   195 Cal. Rptr. 393 (Cal. Ct. App. 1983) ..................................................25

*United States* v. *Santiago-Lugo*,
   904 F. Supp. 43 (D.P.R. 1995)..................................................................31

*Sargeant* v. *Dixon*,
   130 F.3d 1067 (D.C. Cir. 1997) ..............................................................20

*SCC Acquisitions, Inc.* v. *Superior Ct.*,
196 Cal. Rptr. 3d 533 (Cal. Ct. App. 2015) ........................................................25

*\*Schilling* v. *Rogers*,
363 U.S. 666 (1960) .............................................................................................30

*Shaeffer* v. *Califia Farms, LLC*,
258 Cal. Rptr. 3d 270 (Cal. Ct. App. 2020) .......................................................25

*Skelly Oil Co.* v. *Phillips Petroleum Co.*,
339 U.S. 667 (1950) .............................................................................................30

*\*Skinner* v. *Ry. Lab. Execs.' Ass'n*,
489 U.S. 602 (1989) .............................................................................................18

*Sparrow* v. *United Air Lines, Inc.*,
216 F.3d 1111 (D.C. Cir. 2000) ............................................................................7

*Swope* v. *Northumberland Nat'l Bank*,
625 F. App'x 83 (3d Cir. 2015) ..........................................................................17

*Tah* v. *Glob. Witness Publ'g, Inc.*,
991 F.3d 231 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) ...........7, 22, 29

*The Pen* v. *DC Radio Assets*,
LLC, 181 F. Supp. 3d 49 (D.D.C. 2014) .............................................................18

*\*Trump* v. *Deutsche Bank AG*,
943 F.3d 627 (2d Cir. 2019), *vacated and remanded sub nom. on other
grounds by Trump* v. *Mazars USA, LLP*, 140 S. Ct. 2019 (2020). ................9, 10, 14

*Trump* v. *Mazars USA, LLP*,
140 S. Ct. 2019 (2020) ..........................................................................................9

*Vance* v. *Chao*,
496 F. Supp 2d 182 (D.D.C. 2007) .......................................................................8

*\*Watkins* v. *United States*,
354 U.S. 178 (1957) ..........................................................................14, 17, 28, 31

*Zaman* v. *U.S. Dep't of Homeland Sec.*,
No. CV 19-3592 (ABJ), 2021 WL 5356284 (D.D.C. Nov. 16, 2021).................20

**Statutes**

2 U.S.C. § 192 ............................................................................................................17

12 U.S.C. § 3401 .................................................................................................10, 14

12 U.S.C. § 3402 ................................................................................................9, 14

*12 U.S.C. § 3405 ...................................................................................................1, 11

*12 U.S.C. § 3408 ...........................................................................................1, 10, 11

*12 U.S.C. § 3417 .................................................................................................11, 13

*12 C.F.R. § 1016.15(a)(7)(ii) .....................................................................................27

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................................................25

*Cal. Fin. Code § 4056(b)(7) ........................................................................................26

**Other Authorities**

U.S. Const. art. VI, cl. 2 ..............................................................................................27

Fed. R. Civ. P. 9(b) ......................................................................................................24

Fed. R. Civ. P. 12(b)(1) .....................................................................................1, 8, 15, 30

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 7, 30

Defendant J.P. Morgan Chase Bank, N.A. ("JPMCB" or the "Bank"), by and through its attorneys, respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **PRELIMINARY STATEMENT**

In this case, the Bank produced records pursuant to a facially valid subpoena issued by a committee of Congress, just as Plaintiff Budowich did in response to a subpoena from the same committee. Although the Bank was not required by law to provide Plaintiffs notice of the subpoena, the Bank did so voluntarily. Upon receiving notice, Plaintiffs' counsel asked the committee staff for an extension of the deadline for the Bank to produce the records, but an extension was not granted. As a result, the Bank produced the documents in compliance with the deadline.

Plaintiffs assert various claims based on federal and state law against the Bank for this sequence of events. None of these claims have merit, and all should be dismissed. First, Plaintiffs' Right to Financial Privacy Act ("RFPA") claim fails because the RFPA does not apply to subpoenas issued by committees of Congress. In any event, the RFPA requires that the "Government authority"—not the financial institution—give notice to the customer. *See* 12 U.S.C. §§ 3405, 3408. Moreover, Plaintiffs did not plead any facts that would substantiate actual damages or punitive damages. Second, Plaintiffs' claims under the First, Fourth, and Fifth Amendments to the U.S. Constitution fail for multiple reasons. Plaintiffs lack standing to seek declaratory and injunctive relief with respect to the subpoena because JPMCB has already produced the documents required by the subpoena. Moreover, Plaintiffs fail to state a claim, because, among other things, JPMCB is not a state actor. Third, Plaintiffs' claim under the California Constitution fails because, among other things, the production of documents in

response to a facially valid congressional subpoena falls far short of constituting an "egregious breach" of social norms that is "highly offensive."  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc.* v. *Davis*, 141 S. Ct. 1684 (2021).  Even if the failure to provide voluntary notice of a subpoena were actionable under the California Constitution (it is not), in this case, the Bank provided notice.  Fourth, Plaintiffs' claims under California's Unfair Competition Law fail for similar reasons.  Finally, Plaintiffs' claims for declaratory judgments that the congressional committee, and thus the subpoena at issue, are invalid are moot because, as noted, JPMCB has already complied with the subpoena.  Plaintiffs also fail to articulate any cognizable causes of action against the Bank with respect to these claims.

Thus, Plaintiffs fail to state any valid claims against the Bank for its compliance with a congressional subpoena.  The Court should decline Plaintiffs' invitation to fashion out of whole cloth an obligation to provide customers advance notice of a subpoena where no such obligation is imposed by law.  Nor should this Court countenance Plaintiffs' attempt to impose liability on the Bank for the manner in which it provided notice of the subpoena when it voluntarily did so. Going down either novel path would subject banks and other companies to obligations and liabilities not imposed under current law.

For the reasons stated herein, Plaintiffs' claims against JPMCB should be dismissed.

## **FACTUAL BACKGROUND**

The U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee") subpoenaed Plaintiff Taylor Budowich on November 22, 2021 for his testimony and required him to produce financial records and other documents by December 6, 2021.  *See* ECF No. 30, Feb. 18, 2022 Amended Complaint ("Am. Compl.") ¶ 57; Am. Compl. Exhibit ("Ex.") A.

2

Although Mr. Budowich, through counsel, made objections to the validity of the Select Committee and its investigation, he nevertheless produced documents and gave in-person testimony.  *See* Am. Compl. Ex. D; Am. Compl. ¶ 3.  Specifically, according to the Amended Complaint, Mr. Budowich produced "three-hundred ninety-one (391) documents responsive to [the Select Committee's] Subpoena," including "all financial account transactions for the time period December 19, 2020 to January 31, 2021."  *See* Am. Compl. ¶ 60 (citing Am. Compl. Ex. D).  He also made a "supplemental production of forty-nine (49) additional documents . . . on December 17, 2021," totaling approximately 1,700 pages by Plaintiffs' count.  *See* Am. Compl. ¶ 61.  Additionally, on December 22, 2021, Mr. Budowich "sat for a four (4) hour deposition before the Select Committee," answering questions about his financial activities in connection with the events of January 6th.  *See* Am. Compl. ¶¶ 63–64.  There is no indication that Plaintiff Mr. Budowich filed litigation contesting the Select Committee's subpoena directed to him for records and testimony.

On November 23, 2021, the Select Committee sent JPMCB a subpoena compelling the production of records relating to Plaintiff Mr. Budowich, Plaintiff Conservative Strategies, Inc. ("Conservative Strategies"), and any accounts for which either Plaintiff is a signator or controlling party, among other designations.  The cover letter to the subpoena to JPMCB explained:

> The Select Committee is investigating the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power, in order to identify and evaluate lessons learned and to recommend to the House and its relevant committees corrective laws, policies, procedures rules, or regulations.  The inquiry includes examination of how various individuals and entities utilized the U.S. financial system leading up to the events of January 6, 2021, and thereafter.

*See* Am Compl. ¶ 67; Am. Compl. Ex. B, Letter from Chairman Bennie J. Thompson.  The

subpoena set a deadline of December 7, 2021.  *See* Am. Compl. Ex. B, Letter from Chairman

Bennie J. Thompson (explaining that the Select Committee wanted to ensure that it "obtain[ed]

the most essential documents in the fastest way possible").

      Mr. Budowich, through counsel, mailed a letter dated December 16, 2021 to a JPMCB

address stating that Mr. Budowich "has been made aware that Congress may subpoena his

banking records" and that "Mr. Budowich objects to JP Morgan Chase disclosing his

customer/banking records to Congress without a warrant" and requesting notice of such a

subpoena.  *See* Am. Compl. Ex. E, Letter from Jared J. Burns.

      On December 21, 2021, before receipt of the letter from Mr. Budowich's counsel,

JPMCB voluntarily sent a letter to Mr. Budowich, notifying him that "J.P. Morgan Chase Bank,

N.A. received a subpoena . . . concerning a request for information involving you and/or your

accounts" from the Select Committee.  *See* Am. Compl. Ex. F, Letter from JPMorgan Chase &

Co; Am. Compl. Ex. E, USPS Electronic Delivery Confirmation; Am. Compl. ¶ 66.  In that

letter, the Bank stated it was obligated to comply with the Select Committee's subpoena "in a

timely manner," and in the absence of "documentation legally obligating it to stop taking such

steps," the Bank would comply with the subpoena.  *Id.*  The letter requested that Mr. Budowich

send any such documentation by December 24, 2021 at 5:00 p.m. Eastern.  *Id.*  Finally, the Bank

made clear that it was providing "merely a notification" that it had received the subpoena and

that Mr. Budowich should contact the Select Committee with any questions or if he would like

the Bank to send him a copy of the subpoena.  *Id.*

      On December 23, 2021, Plaintiffs' counsel emailed JPMCB acknowledging receipt of the

December 21, 2021 letter, requesting a copy of the full subpoena, and asking JPMCB to extend

the December 24, 2021 deadline.  *See* Am. Compl. Ex. I, Email from Jared Burns.  On December

24, 2021, Plaintiffs' counsel emailed JPMCB's in-house counsel "[t]hank[ing]" her for their

discussion held earlier that morning and informing JPMCB that Plaintiffs' counsel had sent a

"written request to the Committee's counsel for an extension for JP Morgan to respond to the

Committee's unlawful subpoena."  *See* Am. Compl. Ex. I, Email from Daniel K. Bean.

Plaintiffs' counsel added that they "followed that with a telephone call [to the Committee] an

hour later," but had not "received a response to either transmission."  *Id.*  The email further

stated that under the RFPA, Mr. Budowich is "entitled to notice . . . from the *government* of the

*government's* intent to request financial documents," and that no "such notice from the

*government*" had been received.  *Id.* (emphases added).  The email also stated that Mr. Budowich

would be filing that day a petition for declaratory relief and requested that "JP Morgan delay its

response to the subpoena," but did not cite any legal basis that would allow the Bank to refuse to

comply with the Select Committee's deadline.  *Id.*

        As Plaintiffs admitted, "the Select Committee refused to extend the deadline for when

JPMorgan could produce documents in order to provide Mr. Budowich with an opportunity to

seek judicial relief."  *See* Am. Compl. ¶ 5.  Having received no extension from the Select

Committee to the December 24th 5:00 p.m. Eastern deadline, JPMCB produced the required

documents.  *See id.* ¶ 73.  Plaintiffs have since acknowledged to this Court that, in so doing,

"JPMorgan was responding to what it apparently believed was a valid request by [the] Select

Committee for financial records."  *See* ECF No. 27, Jan. 20, 2022 Transcript of TRO Hearing

("TRO Tr.") at 8:15–17.  Later that evening after the production, Plaintiffs initiated this action.

*See* ECF No. 1, Dec. 24, 2021 Complaint.

## PROCEDURAL BACKGROUND

On December 24, 2021, Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order.  *See* ECF No. 2.  In that motion, Plaintiffs requested that JPMCB be restrained from "producing Mr. Budowich's financial records to the Select Committee."  *Id*. Following a conference call with the parties, the Court denied that motion as moot because JPMCB had already produced the records.  *See* Minute Entry (Dec. 29, 2021).

On January 4, 2022, Plaintiffs filed an Amended Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction.  *See* ECF No. 14.  In that motion, Plaintiffs requested that the Select Committee Defendants, among other things, "disgorge, promptly return, sequester, or destroy private financial records belonging to Plaintiffs." *Id*.  This Court denied Plaintiffs' motion, finding it did not have jurisdiction to consider an injunction against Congress. *See* Minute Entry (Jan. 20, 2022); TRO Tr. at 33:9–12.  This Court also reviewed the subpoena to JPMCB *in camera* and found that it was "not overbroad" and was "sufficiently narrowed."  *See* ECF No. 26.

Pursuant to this Court's order, the Parties submitted a Joint Status Report on February 3, 2022.  *See* ECF 28.  In that Report, the Select Committee Defendants represented that "they had received all of the financial records requested and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning Plaintiffs."  *Id.*  Further, with respect to whether there may be future productions pertaining to Plaintiffs, the Bank stated it had "no present intention to produce additional documents pursuant to the subpoena."  *Id.*  On February 18, 2022, Plaintiffs filed an Amended Complaint and a "Motion to Compel Notice."  *See* ECF Nos. 30, 31.

## ARGUMENT

### I.      STANDARD OF REVIEW

A court must dismiss a suit when the complaint fails to state a claim upon which relief

can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*,

550 U.S. 544, 570 (2007)); *Sparrow* v. *United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir.

2000). The complaint's factual matter must "be enough to raise a right to relief above the

speculative level." *See Bell Atl. Corp.*, 550 U.S. at 555; *Mead* v. *City First Bank of DC, N.A.*,

616 F. Supp. 2d 78, 80 (D.D.C. 2009) (dismissing a complaint asserting a violation of the RFPA

for failure to state a claim. When considering a motion to dismiss under Rule 12(b)(6), "a court

need not accept as true, however, a legal conclusion couched as a factual allegation, or an

inference unsupported by the facts set forth in the complaint." *See Prince* v. *Acheson*, 305 F.

Supp. 3d 48, 49 (D.D.C. 2018) (Boasberg, J.) (internal quotation marks and citations omitted). A

complaint cannot survive a motion to dismiss with only "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements." *See Tah* v. *Glob. Witness Publ'g,

Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021). Rather, the

"pleading must contain something more . . . than . . . a statement of facts that merely creates a

suspicion [of] a legally cognizable right of action." *See Bell Atl. Corp.*, 550 U.S. at 555 (quoting

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).

In considering whether the Amended Complaint fails to state a claim, this Court may

consider the "facts alleged in the complaint, any documents either attached to or incorporated in

the complaint and matters of which [the court] may take judicial notice." *See EEOC* v. *St.

Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997). Further, "where a

document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *See Jones* v. *Nat'l Council on Disability*, 66 F. Supp. 3d 94, 99 (D.D.C. 2014), *aff'd*, 2015 WL 653308 (D.C. Cir. 2015).  On a motion to dismiss, this Court may also take judicial notice of facts on the public record, such as court records, without converting the motion into one for summary judgment. *See Kaempe* v. *Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("[P]ublic records [are] subject to judicial notice on a motion to dismiss."); *Vance* v. *Chao*, 496 F. Supp 2d 182, 184 n.1 (D.D.C. 2007) ("The Court may take judicial notice of public documents, such as court records, without converting a motion to dismiss into a motion for summary judgment."); *Covad Commc'ns Co.* v. *Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).  That includes taking judicial notice of its own docket.  *See Naegele* v. *Albers*, 110 F. Supp. 3d 126, 131 (D.D.C. 2015), *aff'd*, 672 F. App'x 25 (D.C. Cir. 2016) (taking judicial notice of court's own docket in granting a motion to dismiss).

Separately, a court must also dismiss a suit when it lacks subject-matter jurisdiction to adjudicate the underlying claims under Rule 12(b)(1), which requires a plaintiff to establish that it has standing to bring such claims.  *See* Fed. R. Civ. P. 12(b)(1); *see also Chamber of Commerce* v. *EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).  When the relief a plaintiff seeks is speculative, the standing doctrine of "[m]ootness bars a federal court from adjudicating that plaintiff's claim." *Klayman* v. *Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 50 (D.D.C. 2017), *aff'd sub nom. Klayman* v. *Obama*, 759 F. App'x 1 (D.C. Cir. 2019).  Even if a plaintiff may have had standing at some point in time, in order to "qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review." *Arizonans for Off. Eng.* v. *Arizona*, 520 U.S. 43, 45 (1997).  For example, a case "becomes moot" once a "party has complied with

the subpoena and the party issuing the subpoena has obtained the testimony or documents it is

seeking." *Crooker* v. *United States State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980); *Off. of Thrift*

*Supervision Dep't of Treasury* v. *Dobbs*, 931 F.2d 956, 957 (D.C. Cir. 1991) (collecting cases).

## II.     PLAINTIFFS' RIGHT TO FINANCIAL PRIVACY ACT CLAIM
##          (COUNT IV) SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' claim that JPMCB violated the Right to Financial Privacy Act ("RFPA")

should be dismissed.  As the Second Circuit has held, the RFPA's obligations do not apply to

subpoenas issued by committees of Congress.  *Trump* v. *Deutsche Bank AG*, 943 F.3d 627, 641

(2d Cir. 2019), *vacated and remanded sub nom. on other grounds by Trump* v. *Mazars USA,*

*LLP*, 140 S. Ct. 2019 (2020).[1]  Additionally, even if the RFPA did apply, which it does not, it is

the obligation of the Government authority (not the financial institution) to provide notice of the

subpoena where applicable.  Further, Plaintiffs fail to plead facts showing that they suffered

actual or punitive damages under the statute's requirements.  Finally, even if the RFPA did apply

to congressional subpoenas, Plaintiff Conservative Strategies, Inc. does not fall within the

RFPA's coverage because it is a corporation.

### A.     Plaintiffs' RFPA Claim Fails Because the RFPA
###         Does Not Apply to Subpoenas Issued by Congressional Committees

To state a cause of action under the RFPA, it is axiomatic that the RFPA must apply to

the subpoena at issue.  *See* 12 U.S.C. § 3402; *cf. Bond* v. *U.S. Postal Serv. Fed. Credit Union*,

164 F. Supp. 3d 740, 744 (D. Md. 2015) (outlining the elements of an RFPA claim).  Here,

Plaintiffs fail to state a claim because the RFPA does not apply to subpoenas issued by

---

[1]     In *Mazars*, the Supreme Court vacated and remanded on the issue of whether the
congressional subpoenas in that case served a valid legislative purpose in seeking the
President's personal information, such that the President must comply.  *See Trump* v. *Mazars
USA, LLP*, 140 S. Ct. 2019, 2036 (2020).  The appellants before the Supreme Court did not
contest the Second Circuit's RFPA ruling.

congressional committees.  The RFPA applies to subpoenas issued by a "Government authority," which is defined as an "agency or department of the United States, or any officer, employee, or agent thereof."  12 U.S.C. § 3401(3).  As the Second Circuit determined after extensively analyzing the issue, a committee of Congress is not within the RFPA's definition of a "Government authority."  *See Deutsche Bank AG*, 943 F.3d at 645.  In that case, there was no dispute that the term "agency" could not "possibly refer to Congress."  *Id*. at 641.  The only dispute was whether "department" could refer to Congress and its committees.  *See id.*  The Second Circuit reasoned that "department" refers only to the Executive Branch and held that "Congress did not subject itself or its committees to the [RFPA]."  *Id.* at 642, 645.  In so holding, the Second Circuit agreed with the longstanding position of the House of Representatives, which was an intervenor in that suit.  *Id.* at 645.  The Second Circuit reasoned that (1) the plain meaning of "department" at the time the RFPA was enacted was an administrative division belonging to the Executive Branch and (2) the contextual clues in the RFPA indicate that Congress was not meant to be subject to the Act.  *See Deutsche Bank AG*, 943 F.3d at 641–42; *see also, e.g.*, 12 U.S.C. § 3408 (discussing *regulations* promulgated by the head of the agency or department, whereas Congress does not promulgate regulations and its leadership is not considered the head of an agency or department); § 3417 (providing civil penalties, which Congress would not have subjected itself to in the absence of a clear indication of an intent to do so).  Moreover, JPMCB is not aware of any court that has held congressional subpoenas are subject to the RFPA.[2]

---

[2]   The Bank respectfully refers the Court to the House Defendants' Memorandum of Law in Support of their Motion to Dismiss (the "House Memorandum"), *see* ECF No. 33, and the House Defendants' Memorandum of Law in Opposition to Plaintiffs' Amended Emergency Motion for a Temporary Restraining Order, *see* ECF No. 23, for additional arguments regarding the RFPA's non-applicability to congressional committee subpoenas.

Because JPMCB produced records to a committee of Congress, and not a "Government authority" under the RFPA, the Bank was not subject to the RFPA's procedures, including the requirement to obtain a certificate of compliance from the "Government authority" issuing the subpoena.  *See* Am. Compl. ¶ 138.

Even assuming *arguendo* that the RFPA applies, which it does not, Plaintiffs' allegation that JPMCB was noncompliant because the Bank did not provide notice or a copy of the subpoena would still fail.  *See* Am. Compl. ¶ 140.  The statute requires that the "*Government authority*" serve or mail the customer notice and a copy of the subpoena "*on* or *before*" the date on which the financial institution receives the subpoena or request.  12 U.S.C. §§ 3405, 3408 (emphases added).  The RFPA does not require the financial institution to provide notice of a subpoena.  Indeed, Plaintiffs' counsel, in his December 24, 2021 email to JPMCB, asserted that the RFPA entitled Mr. Budowich "to notice . . . from the *government* of the *government's* intent to request financial documents" but that "[n]either our client nor his lawyers, received such notice from the government."  *See* Am. Compl. Ex. I, Email from Daniel K. Bean (emphases added).

### B.     Plaintiffs Fail to Adequately Plead They Were Damaged

Even if Plaintiffs could adequately allege a violation of the RFPA, which they cannot, Plaintiffs have failed to adequately allege harm supporting actual or punitive damages.

When an RFPA violation occurs, a customer can seek statutory, actual, and punitive damages against her/his financial institution.  *See* 12 U.S.C. § 3417(a)(1)–(3).  Plaintiffs allege the legal conclusion that they suffered "injury, including actual damages," and that "JPMorgan's violation of the RFPA was willful and intentional," warranting punitive damages.  *See* Am. Compl. ¶¶ 145, 146; Prayer for Relief.  In determining whether Plaintiffs have stated a claim, this Court "need not accept legal conclusions cast in the form of factual allegations."

*Kelley* v. *Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 258 (D.D.C. 2014). A plaintiff's claim for actual and punitive damages under the RFPA should be dismissed when it relies on conclusory allegations with insufficient factual support. *See Hugler* v. *Chimes D.C.*, No. CV RDB-15-3315, 2017 WL 1176031, at *4, *7–*9 (D. Md. Mar. 30, 2017) (dismissing the actual and punitive damages component of an RFPA counterclaim because the court found there were insufficient facts in the pleading to warrant those remedies); *cf. Bond*, 164 F. Supp. 3d at 748–49 (scrutinizing plaintiff's pleadings for allegations supporting actual and punitive damages based on defendant's motion to dismiss and ultimately dismissing those remedies under Fed. R. Civ. P. 12(d) (summary judgment)). Here, Plaintiffs plead legal conclusions without any facts to demonstrate they are entitled to either actual or punitive damages.

To plead actual damages, the RFPA requires plaintiffs to "causally connect the disclosures at issue to the losses . . . suffered." *See Bond*, 164 F. Supp. 3d at 748. Actual damages may be "cognizable under the RFPA" if plaintiff "had sustained identity theft or other *tangible adverse financial consequences*." *See Hugler*, 2017 WL 1176031, at *7 (emphasis in original); *see also Brackfield & Assocs. P'ship* v. *Branch Banking & Tr. Co.*, No. 3:14-CV-524-PLR-HBG, 2015 WL 5177737, at *3 (E.D. Tenn. Sept. 4, 2015), *aff'd*, 645 F. App'x 428 (6th Cir. 2016) (dismissing plaintiffs' RFPA claims because they did not "allege a concrete and particularized injury."). Here, Plaintiffs throughout the Amended Complaint state nothing more than legal conclusions that they have suffered "actual damages." *See, e.g.*, Am. Compl. ¶¶ 135, 146, 151, 155, 168. Plaintiffs fail to plead any facts showing concrete, tangible harm. There are no allegations that, for example, the documents in JPMCB's production have been made public or disclosed by the Select Committee and that such disclosure caused some specific harm to Plaintiffs. To the extent that Mr. Budowich alleges he has been "required to purchase credit

monitoring services to ensure that his financial information is not further misused," Am. Compl.

¶ 172, no court has recognized this as sufficient for actual damages under the RFPA.  Purchasing

credit monitoring services, as Plaintiff Budowich himself alleges, was a proactive measure taken

to avoid future, speculative injury.  Speculative injuries are by definition not tangible and

therefore not actionable under the RFPA.  *See* 12 U.S.C. § 3417(a)(2).

Even if there were allegations articulating actual harm, Plaintiffs fail to allege a *causal*

connection between JPMCB's production of records to the Select Committee and the purported

harm in question.  This lack of causal connection is apparent from Plaintiffs' own admission that

Mr. Budowich himself produced hundreds of documents to the Select Committee, including

documents identifying account transactions.  *See* Am. Compl. ¶¶ 60–61, 58.  Indeed, Plaintiffs

stated that the subpoena to JPMCB sought documents that are "duplicative of records already

received by the Select Committee."  *See* Am. Compl. ¶ 103.  Nowhere in Plaintiffs' Amended

Complaint are facts demonstrating how JPMCB's "duplicative" and incremental production of

records to the Select Committee caused Plaintiffs tangible harm.

Plaintiffs similarly do not plead entitlement to punitive damages.  Plaintiffs simply allege

that "JPMorgan's violation of the RFPA was willful and intentional."  *See* Am. Compl. ¶¶ 145–

46.  But even if "talismanic words 'willful' and 'intentional' appear in the complaint . . . those

allegations cannot satisfy plaintiffs' pleading burden."  *See Kelley*, 67 F. Supp. 3d at 257.  Under

the RFPA, "willfulness is more than gross negligence" and "*so patently egregious and unlawful*

that anyone undertaking the conduct should have known it unlawful."  *See Flowers* v. *First

Hawaiian Bank*, 295 F. Supp. 2d 1130, 1138 (D. Haw. 2003), *aff'd sub nom. Flowers* v. *U.S.

Army, 25th Infantry Div.*, 179 F. App'x 986 (9th Cir. 2006) (emphasis added) (internal

quotations omitted).  Here, as Plaintiffs acknowledged, the Bank, as required by law, complied

13

with a facially valid congressional subpoena.  *See* TRO Tr. at 8:15–17; *Watkins* v. *United States*, 354 U.S. 178, 187–88 (1957) ("It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.  It is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees . . . .").  Further, the Second Circuit had held, in line with the House of Representatives' longstanding position, that the RFPA did not apply to congressional subpoenas. *Deutsche Bank AG*, 943 F.3d at 645.  In these circumstances, where the Bank is required to comply with subpoenas and there was case law supporting the view that the RFPA did not apply, JPMCB's compliance with the subpoena falls far short of any conclusory allegations of a willful and intentional violation of the RFPA.  *See id.*

> **C.**     **Plaintiff Conservative Strategies, Inc. Has**
> **No Standing to Assert a Claim under the RFPA**

Plaintiff Conservative Strategies, Inc., a corporation, is not a "customer" as defined by and protected by the RFPA.[3]  Plaintiffs admit that Conservative Strategies is "a California for-profit company."  Am. Compl. ¶ 10.  The RFPA defines "person" as an "individual or a partnership of five or fewer individuals," and only a "person" can be a "customer" whose financial records are protected under the Act.  *See* 12 U.S.C. §§ 3401(4)–(5), 3402.  As a result, Plaintiff Conservative Strategies' claim should be dismissed for this independent reason.  *See Pittsburgh Nat'l Bank* v. *United States*, 771 F.2d 73, 75–76 (3d Cir. 1985) (holding that a corporation is "unambiguously" not a person under the RFPA and is not entitled to challenge a subpoena under the statute); *Hugler*, 2017 WL 1176031, at *2 ("The RFPA does not protect

---

[3]     Public records confirm Conservative Strategies is a domestic stock corporation organized under the General Corporation Laws of California.  *See generally* California Secretary of State Business Search (last visited Mar. 9, 2022), *available at* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=04678250-29655968 (attached to this Memorandum as <u>Exhibit A</u>).

corporations . . . ."); *cf. Bean LLC* v. *John Doe Bank*, 291 F. Supp. 3d 34, 48 (D.D.C. 2018)

(holding limited liability company "has no rights under the RFPA because it is not a 'person'

who may qualify as a 'customer'").

For all of these reasons, Plaintiffs' RFPA claim (Count IV) should be dismissed.

## III.   PLAINTIFFS' FIRST, FOURTH, AND FIFTH AMENDMENT CLAIMS (COUNTS III, V, VI) SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM

Plaintiffs seek declaratory judgments that the Select Committee's subpoena to JPMCB

violates the First, Fourth, and Fifth Amendments to the U.S. Constitution.  Plaintiffs also seek

injunctive relief based on the same theory.  These claims should be dismissed for lack of

standing and for failure to state a claim. *See* Am. Compl. ¶¶ 133, 151, 154.

First, these claims should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure because JPMCB has already produced the documents required by the subpoena.

*See Ass'n of Am. Physicians & Surgeons, Inc.* v. *Schiff*, 23 F.4th 1028, 1032 (D.C. Cir. 2022)

(affirming Rule 12(b)(1) dismissal and explaining that, absent concrete plans "or indeed even

any specification of *when* the some day will be," any harm is too speculative to support standing

(quoting *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (internal quotations omitted))).

"Article III limits federal judicial jurisdiction to cases and controversies." *See Chamber*

*of Commerce*, 642 F.3d at 199.  The doctrines of standing and mootness "reflect and enforce" the

limitation that federal courts are without authority "to render advisory opinions [or] to decide

questions that cannot affect the rights of litigants in the case before them." *Id.* (internal quotation

marks omitted).  "Mootness bars a federal court from adjudicating that plaintiff's claim if events

have so transpired that the [court's] decision will neither presently affect the parties' rights nor

have a more-than-speculative chance of affecting them in the future." *See Klayman*, 280 F.

Supp. 3d at 50 (quoting *Chamber of Commerce*, 642 F.3d at 199) (internal quotations omitted).

It is well-established in this Circuit that the "substance of the controversy disappears" and a case "becomes moot" once a "party has complied with the subpoena and the party issuing the subpoena has obtained the testimony or documents it is seeking." *Crooker*, 628 F.2d at 10; *Dobbs*, 931 F.2d at 957.  Here, Plaintiffs' claims based on the U.S. Constitution are moot because JPMCB already produced the documents pertaining to Plaintiffs required under the subpoena.  Indeed, Plaintiffs' first motion for a temporary restraining order, which sought to preclude production to the Select Committee, was denied as moot because the documents had already been produced.  *See* Minute Entry (Dec. 29, 2021).  As Plaintiffs admit, JPMCB made its production relating to Plaintiffs on December 24, 2021.  *See* Am. Compl. ¶ 73.  Further, JPMCB has stated, with respect to productions relating to Plaintiffs under the subpoena, that it "has no present intention to produce additional documents pursuant to the subpoena" and the "possibility that JPMorgan could do so at some point in the future is purely theoretical."  *See* ECF No. 28. For their part, the House Defendants represented that they have "received all of the financial records requested, and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning Plaintiffs."  *Id.*  Because a decision from this Court would not affect the "parties' rights nor have a more-than-speculative chance of affecting them in the future," *see Klayman*, 280 F. Supp. 3d at 50 (internal quotations omitted), Plaintiffs' claims should be dismissed as moot.

To the extent that Plaintiffs seek damages from JPMCB for alleged constitutional violations (which they do not sufficiently plead in their Amended Complaint), such a claim fails as a matter of law.  *See Correctional Servs. Corp.* v. *Malesko*, 534 U.S. 61, 63 (2001) (holding that *Bivens* cannot be extended to confer a right of action for damages against private corporate entities for constitutional violations even if those entities are acting under color of federal law).

Second, Plaintiffs fail to state a claim under the First, Fourth, and Fifth Amendments to the U.S. Constitution because, among other reasons, those constitutional provisions constrain the actions of the state, not private parties like JPMCB.

It is well-settled that with respect to claims pursuant to the U.S. Constitution "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *See Lugar* v. *Edmondson Oil Co*., 457 U.S. 922, 937 (1982); *Cheeks* v. *Fort Myer Const. Co.*, 722 F. Supp. 2d 93, 111 (D.D.C. 2010) ("A cognizable constitutional deprivation requires that the deprivation be the result of government action.") (citing *Bishop* v. *Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990)).

Plaintiffs cannot cite any authority for their novel claim that a bank or other private party's compliance with a congressional subpoena constitutes state action for purposes of stating claims for violations of the U.S. Constitution.  To the contrary, failure to comply with a congressional subpoena is a violation of law and may result in contempt of Congress, criminal prosecution, and civil litigation.  *See* 2 U.S.C. § 192; *Watkins*, 354 U.S. at 187–88 (describing how it is every person's "unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees.").  As Plaintiffs acknowledge in their Motion to Compel Notice, congressional subpoenas exert "coercion" on their recipients.  *See* ECF No. 31.  Indeed, courts have repeatedly found that constitutional claims brought against banks fail as a matter of law because banks and their employees do not qualify as state actors.  *See Swope* v. *Northumberland Nat'l Bank,* 625 F. App'x 83, 86 (3d Cir. 2015); *see also Dailey* v. *Bank of Am.*, 106 F. App'x 533, 533 (9th Cir. 2004) (affirming district court's determination that the bank was not a state actor); *Elsman* v. *Standard Fed. Bank*, 46 F. App'x 792, 798 (6th Cir. 2002) (finding plaintiff's due process claim "without merit" because defendant bank was not a state actor);

17

*Hoskins* v. *TCF Nat'l Bank*, 248 F. App'x 742, 743 (7th Cir. 2007) ("The bank is not a state actor.").

With respect to Plaintiffs' First Amendment claim, it is well-established that the First Amendment "is a restraint on government action, not that of private persons." *Columbia Broad. Sys., Inc.* v. *Democratic Nat'l Comm.*, 412 U.S. 94, 94 (1973). "The First Amendment has never been read to require private parties to guarantee freedom of speech to other private parties." *See The Pen* v. *DC Radio Assets*, LLC, 181 F. Supp. 3d 49, 53 (D.D.C. 2014) (citing *Columbia Broad. Sys., Inc.*, 412 U.S. at 113). To plead a violation of the First Amendment by a private party, Plaintiffs must show that a private party has become a governmental actor. The test for when a private party becomes a governmental actor looks at "the extent to which the actor relies on governmental assistance and benefits," "whether the actor is performing a traditional governmental function," and "whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *See Edmonson* v. *Leesville Concrete Co., Inc.*, 500 U.S. 614, 621–22 (1991). Here, Plaintiffs have not even attempted to plead facts that JPMCB is a governmental actor under the test articulated in *Edmonson*. Hence, Plaintiffs do not state a claim that JPMCB violated the First Amendment.

Similarly, the Supreme Court has consistently construed the Fourth Amendment as "proscribing only governmental action." *See United States* v. *Jacobsen*, 466 U.S. 109, 113–14 (1984). The Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* (internal quotations omitted); *see also Skinner* v. *Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614 (1989) (holding that a Fourth Amendment violation can occur only when the "private party acted as an instrument or

agent of the Government").  There is no basis to claim that a bank or other private party's compliance with a subpoena turns that party into an instrument or agent of the government. Moreover, bank customers do not have "an interest legitimately protected by the Fourth Amendment" in bank records, because such records belong to the bank, not the customer.  *See United States* v. *Miller*, 425 U.S. 435, 440–41 (1976) (holding that the bank records were not the "private papers" of the customer because the customer could not assert either "ownership or possession" over them).

Likewise, Plaintiffs' Fifth Amendment due process claim fails because JPMCB is neither a state actor nor did it deprive Plaintiffs of any cognizable property or liberty interest.  "To state a claim for the denial of procedural due process, a plaintiff must allege that the government deprived her of a liberty or property interest to which she had a legitimate claim of entitlement, and that the procedures attendant upon that deprivation were constitutionally [in]sufficient."  *See New Vision Photography Program, Inc.* v. *D.C.*, 54 F. Supp. 3d 12, 28 (D.D.C. 2014) (Boasberg, J.) (citing *Roberts* v. *United States*, 741 F.3d 152, 161 (D.C. Cir. 2014)) (internal quotations omitted).

It is well-settled that the Fifth Amendment only applies to state actors.  *See Anderson* v. *USAir, Inc.*, 818 F.2d 49, 56 (D.C. Cir. 1987).  To allege that a private party is a state actor for purposes of the Fifth Amendment, the private party must "perform a service for the government or enter into a symbiotic relationship with the government."  *Id*.  Plaintiffs can provide no authority for the position that banks or other private parties who comply with a subpoena should be deemed to perform services for the government or enter into a symbiotic relationship with the government.

It is also well-settled that Plaintiffs have no protectible property interest in their bank records, and thus a deprivation of property cannot serve as the basis of their due process claim. *See Miller*, 425 U.S. at 440–41 ("On their face, the documents subpoenaed here [microfilms or checks, deposit slips, and other records relating to target's accounts] are not respondent's 'private papers' . . . these are the business records of the banks.").

Plaintiffs allege in a conclusory fashion that JPMCB's "production of private financial records of Plaintiffs to the Select Committee implicates certain protected liberty interests, to wit:  privacy, engagement in expressive speech, and associational rights."  Am. Compl. ¶ 132. Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States" and "are not unlimited."  *See Kentucky Dep't of Corr.* v. *Thompson*, 490 U.S. 454, 460 (1989); *Kretchmar* v. *Fed. Bureau of Investigation*, 32 F. Supp. 3d 49, 56 (D.D.C. 2014), *aff'd* (Jan. 16, 2015).  Plaintiffs, however, cannot cite any authority for the proposition that JPMCB's compliance with a congressional subpoena implicates Plaintiffs' liberty interests.  *See Zaman* v. *U.S. Dep't of Homeland Sec.*, No. CV 19-3592 (ABJ), 2021 WL 5356284, at *8 (D.D.C. Nov. 16, 2021) (granting defendants' motion to dismiss because plaintiff did not provide the court "with any legal support" for plaintiff's assertion that he had a liberty interest cognizable under the Due Process Clause).  In *Richardson* v. *D.C. Bar Ass'n*, the D.C. Circuit held that a bank customer's procedural due process rights were not violated when bank records pertaining to the customer were subpoenaed because the customer lacked a constitutionally protected liberty or property interest in those records.  No. 97-7051, 1997 WL 404321, at *1 (D.C. Cir. June 30, 1997).

JPMCB's production of documents therefore involved no deprivation of Plaintiffs' property or liberty interests that would implicate the Due Process Clause's protections in the first place.  *See Sargeant* v. *Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997) ("Absent an underlying

property or liberty interest, therefore, one has no entitlement to procedural due process and hence no 'right to be heard.'").  For the reasons set forth above, Plaintiffs' First (Count V), Fourth (Count VI), and Fifth Amendment (Count III) claims should be dismissed.

## IV.   PLAINTIFFS' CLAIM AGAINST JPMCB FOR VIOLATING THE CALIFORNIA CONSTITUTION (COUNT VII) SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' claim that JPMCB violated a right to privacy under the California Constitution should be dismissed for failure to state a claim.  Plaintiffs do not allege facts sufficient to satisfy the required elements of the claim or the balancing test courts must undertake if the elements are satisfied.  Moreover, corporate Plaintiff Conservative Strategies does not have a constitutional right to privacy under California law and, therefore, has no standing to bring such a claim.  For these reasons, Count VII should be dismissed.

### A.   Plaintiffs Fail to State a Claim for Invasion of Privacy under the California Constitution

Plaintiffs do not have an actionable claim for invasion of privacy because their amended complaint falls far short of the "high bar" required for such a claim.  *See Low* v. *LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).  Plaintiffs, in conclusory fashion and without sufficient facts, allege that JPMCB's production of records to the Select Committee constituted an invasion of privacy.  *See* Am. Compl. ¶ 160.  To state a claim for invasion of privacy under the California Constitution, Plaintiffs must allege that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive."  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601.  Courts "consider the claims together and ask whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive."  *Id*.  The pleading requirements are stringent because the

California Constitution sets a "high bar for an invasion of privacy claim." *See Low*, 900 F. Supp. 2d at 1025.

Further, assuming the above elements are satisfactorily alleged, courts must also evaluate potential invasions of privacy by "balancing the privacy interest at stake and the seriousness of the threatened invasion with the strength of legitimate and important countervailing interests." *Grafilo* v. *Wolfsohn*, 245 Cal. Rptr. 3d 564, 571–72 (Cal. Ct. App. 2019); *Med. Bd. of California* v. *Chiarottino*, 170 Cal. Rptr. 3d 540, 546 (Cal. Ct. App. 2014) ("If the [invasion of privacy] claimant establishes all three required elements [for a claim], the strength of that privacy interest is balanced against countervailing interests.").

Here, Plaintiffs' claim fails because there is no basis in law or fact to conclude that JPMCB's production of financial records in compliance with a congressional subpoena constitutes an intrusion "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Plaintiffs assert in *ipse dixit* fashion that "JPMorgan's actions violated social norms of California customers such that the disclosure was unacceptable as a matter of California public policy" but provide no allegations as to what social norms or public policies are even implicated. *See Tah*, 991 F.3d at 239 (discussing how a complaint cannot survive a motion to dismiss with only conclusory statements).

California law demonstrates that JPMCB's compliance with the congressional subpoena comes nowhere close to meeting the pleading standard for this element. "Actionable invasions of privacy must be 'highly offensive' to a reasonable person and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *See Hernandez* v. *Hillsides, Inc.*, 47 Cal. 4th 272, 295 (Cal. 2009) (internal citations omitted). Courts have held

that the "disclosure to third parties of unique device identifier number, personal data, and geolocation information" of a cellular device is insufficient to establish an invasion of privacy claim.  *See Low*, 900 F. Supp. 2d at 1025 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)).  California courts have only been willing to recognize egregious breaches of social norms in very limited circumstances, which are drastically different from those here.  *See, e.g.*, *Am. Acad. of Pediatrics* v. *Lungren*, 940 P.2d 797, 831 (Cal. 1997) (holding that a statute requiring a pregnant minor to secure parental consent or judicial authorization before obtaining abortion violated right of privacy guaranteed by California Constitution); *Jeffrey H.* v. *Imai, Tadlock & Keeney*, 101 Cal. Rptr. 2d 916, 922 (Cal. 2000) (finding plaintiff had adequately alleged a serious invasion of a protected privacy interest regarding the improper release of hospital records disclosing plaintiff's HIV status to his employer).

Here, JPMCB, as it was legally required to do, complied with a congressional subpoena demanding financial information relating to Plaintiffs.  Mr. Budowich did the same in response to a subpoena he received from the same committee.  Further, JPMCB *did* provide notice to Plaintiffs, even though the Bank was not legally required to do so.  Plaintiffs' counsel, in turn, sought an extension of time from the Select Committee for the Bank to produce the records, but an extension was not granted.  Absent an extension, the Bank produced the required records.  These circumstances fall far short of any arguable egregious breach of social norms.  Plaintiffs' invasion of privacy claims based on California's Constitution should therefore be dismissed.  *See Chiarottino*, 170 Cal. Rptr. 3d at 546 ("A defendant is entitled to prevail if it negates any of the . . . required elements").

The Court need "not proceed to balancing" because Plaintiffs failed to make "a satisfactory threshold showing." *Chiarottino*, 170 Cal. Rptr. 3d at 546. Even if the Court were to proceed to the balancing test, Plaintiffs' claims still fail. Under the balancing test, courts are hesitant to find that a purported invasion of privacy outweighs countervailing interests because "an otherwise actionable invasion of privacy may be legally justified if it substantively furthers one or more legitimate competing interests." *Id.* ("Legitimate interests derive from the *legally authorized* and socially beneficial activities of government and private entities. Their relative importance is determined by their proximity to the central functions of a particular public or private enterprise. Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests.") (citing *Hill* v. *Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 656 (Cal. 1994)) (emphasis added).

Here, there is clearly a legitimate countervailing interest for JPMCB to comply with a congressional subpoena. Congress has the legal authority to issue subpoenas as an "indispensable ingredient" of its legislative power. *See Eastland* v. *United States Servicemen's Fund*, 421 U.S. 491, 505 (1975); *McGrain* v. *Daugherty*, 273 U.S. 135, 174 (1927) ("[T]he power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function."). Thus, even if Plaintiffs could state the required elements for their invasion of privacy claim, which they cannot, Plaintiffs allege no facts demonstrating why their claim should survive in the face of the required balancing test.

Finally, Plaintiffs allege that "JPMorgan's actions constitute oppression, malice, and fraud." *See* Am. Compl. ¶ 167. However, Fed. R. Civ. P. 9(b) requires "particularity when pleading 'fraud or mistake.'" *See Ashcroft*, 556 U.S. at 686–87. Plaintiffs threadbare invocation of fraud is insufficient to meet this standard.

**B.    Corporate Plaintiff Conservative Strategies
Has No Standing to Assert This Type of Claim**

"The right to privacy under the California Constitution is only applicable to natural

persons and does not apply to corporations."  *See Roberts* v. *Gulf Oil Corp.*, 195 Cal. Rptr. 393,

406 (Cal. Ct. App. 1983); *SCC Acquisitions, Inc.* v. *Superior Ct.*, 196 Cal. Rptr. 3d 533, 544

(Cal. Ct. App. 2015).  Thus, as a corporation, Conservative Strategies has no standing to assert a

violation of California's constitutional right to privacy.

For all of these reasons, Plaintiffs' claim that JPMCB invaded their right to privacy under

the California Constitution (Count VII) should be dismissed.

**V.    PLAINTIFFS' CLAIMS FOR VIOLATION OF CALIFORNIA'S
UNFAIR COMPETITION LAW AGAINST JPMCB (COUNTS VIII AND IX)
SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Plaintiffs' claims under California's Unfair Competition Law ("UCL") and related

statutes should be dismissed for failure to state a claim.  The UCL prohibits "unlawful, unfair or

fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."

*See* Cal. Bus. & Prof. Code §§ 17200, *et seq.*  "Each prong of the UCL is a separate and distinct

theory of liability" and "an independent basis for relief."  *Lozano* v. *AT&T Wireless Servs., Inc.*,

504 F.3d 718, 731 (9th Cir. 2007).  Here, Plaintiffs attempt, but fail, to allege claims under the

"unlawful" and "unfairness" prongs.

**A.    JPMCB's Actions Are Not "Unlawful"; Thus Count VIII Should Be
Dismissed**

To state a claim under the "unlawful" prong of the UCL, a plaintiff must plead, among

other things, a predicate violation of federal or California "statute or regulation."  *Shaeffer* v.

*Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 277 (Cal. Ct. App. 2020); *Davis* v. *HSBC Bank*

*Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("[S]ection 17200 borrows violations of other

laws and treats them as unlawful practices that the unfair competition law makes independently

actionable.") (internal citations omitted).  Therefore, in order to plead a claim under the

"unlawful" prong, Plaintiffs must state facts sufficient to allege a violation of the underlying law.

*See In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *15 (N.D. Cal.

Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing plaintiffs' claims under the

UCL's unlawful prong because they failed to adequately allege a predicate violation of another

law).  Here, Plaintiffs have not adequately pled that JPMCB violated any laws—neither the

RFPA, nor the U.S. Constitution, nor the California Constitution, nor any federal or state statute

or regulation.  Without this required predicate pleading, Plaintiffs' UCL claim necessarily fails.

*See Eidmann* v. *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021), *appeal dismissed*, No.

21-15659, 2021 WL 4785889 (9th Cir. May 17, 2021) ("[I]f the plaintiff cannot state a claim

under the predicate law . . . [the UCL] claim also fails.") (internal citations omitted).

To the extent Plaintiffs allege that JPMCB violated the California Information Privacy

Act ("CalFIPA") "by sharing Plaintiffs' non-public, personal information despite Plaintiffs'

express protestations against doing so," this claim fails.  Am. Compl. ¶ 179.  CalFIPA  provides

an exception that permits disclosure where, as here, disclosure is made to comply with legal

requirements or to comply with a civil, criminal, or regulatory subpoena.  Specifically, CalFIPA

states that:

> A financial institution may release nonpublic personal information
> . . . to comply with federal, state, or local laws, rules, and other
> applicable legal requirements; to comply with a properly authorized
> civil, criminal, administrative, or regulatory investigation or
> subpoena or summons by federal, state, or local authorities; or to
> respond to judicial process or government regulatory authorities
> having jurisdiction over the financial institution for examination,
> compliance, or other purposes as authorized by law.

*See* Cal. Fin. Code § 4056(b)(7).  Further, if as claimed by Plaintiffs, CalFIPA purported to

prohibit the production of information pursuant to a congressional subpoena without Plaintiffs'

consent, it would be preempted by federal law.  The preemption doctrine is a manifestation of the U.S. Constitution's Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  To the extent compliance with both federal and state law is impossible, "or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," federal law controls.  *Oneok, Inc.* v. *Learjet, Inc.*, 575 U.S. 373, 373, 377 (2015) (quoting *California* v. *ARC America Corp.*, 490 U.S. 93, 100, 101 (1989)) (internal quotations omitted); *see also Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (explaining that "state law is naturally preempted to the extent of *any* conflict with a federal statute" and finding a state law preempted where its enforcement would "undermine[]" the "natural effect" of a federal law).  Thus, CalFIPA clearly cannot serve as the basis for Plaintiffs' UCL allegations.

To the extent Plaintiffs' UCL claim is based on the Gramm-Leach-Bliley Act ("GLBA"), it also fails.  Plaintiffs allege JPMCB violated the GLBA, "which prohibits disclosure of Plaintiffs' non-public personal information."  Am. Compl. ¶ 180.  GLBA, however, explicitly permits financial institutions to disclose nonpublic personal information "[t]o comply with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, state, or local authorities."  12 C.F.R. § 1016.15(a)(7)(ii).  Thus, the GLBA cannot serve as the predicate for Plaintiffs' UCL claim.

Finally, Plaintiffs allege "JPMorgan intended to preclude any opportunity to challenge the records requested by the subpoena, as evidenced by its refusal to delay production until Plaintiffs could obtain a court order on its motion for temporary restraining order."  Am. Compl. ¶ 175.  Plaintiffs fail to state any legal basis for their position that JPMCB's compliance with a congressional subpoena is unlawful or any legal basis by which JPMCB could refuse production

by the deadline imposed by the Select Committee.  In any event, Plaintiffs make no attempt to

articulate how the Bank's conduct was "unlawful" or otherwise in violation of Section 17200 of

California's Business and Professions Code.

> **B.      JPMCB's Actions Are Not "Unfair"; Thus Count IX Should Be Dismissed**

Plaintiffs fail to plead facts showing that JPMCB engaged in business practices that were

"unfair" pursuant to the UCL.  To determine whether conduct is "unfair" under the UCL, courts

have articulated two main tests.  One line of authority defines "unfair" as prohibiting conduct

that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and

requires the court to weigh the utility of the defendant's conduct against the gravity of the harm

to the alleged victim (the "*Sperry*" test).  The other line of authority requires that the business

practice violate a public policy that is tethered to specific constitutional, statutory, or regulatory

provisions (the "tethering" test).  *See Hall* v. *Fiat Chrysler America US LLC*, 550 F. Supp. 3d

847, 853 (C.D. Cal. 2021); *see also Colgate* v. *JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 758–59

(N.D. Cal. 2019) (defining the criteria for the *Sperry* and tethering tests).

Plaintiffs make no attempt to articulate how JPMCB's conduct is "unfair" under either

test.  As explained above, financial institutions are obligated to "respond to subpoenas, to respect

the dignity of the Congress and its committees."  *See Watkins*, 354 U.S. at 187.  Plaintiffs have

even acknowledged to this Court that the Bank complied with a facially valid congressional

subpoena.  *See* TRO Tr. at 8:15–17.  Consequently, it cannot be the case that complying with a

congressional subpoena is "immoral, unethical, oppressive, unscrupulous, or substantially

injurious," nor contrary to "public policy."  The Bank's actions, therefore, cannot be held to be

"unfair" so as to violate the UCL.

Plaintiffs state the conclusion that "even after JPMCB was informed that Plaintiffs were

going to challenge the legality of the Select Committee's subpoena, JPMCB nonetheless

produced Plaintiffs' records.  This action demonstrated an utter disregard for the protection of

Plaintiffs' private financial records and was immoral, unethical, oppressive, unscrupulous, and

substantially injurious."  *See* Am. Compl. ¶ 190.  The recitation of mere labels, no matter how

malicious-sounding, is insufficient to state a claim.  *See Tah*, 991 F.3d at 239  (deciding that

claims cannot survive a motion to dismiss with only "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements").  Again, Plaintiffs have failed to

articulate what legal basis JPMCB would have had for refusing to comply with a congressional

subpoena and refusing to make the production by the Select Committee's deadline.  There is no

precedent for the position that a customer's announcement that it will seek legal relief is

sufficient to excuse a subpoena recipient from its obligation to comply with a facially valid

subpoena.  Plaintiffs' dissatisfaction with the manner in which JPMCB provided them with

notice of the subpoena, especially when notice was not required by law, is insufficient to state a

claim under the UCL's "unfair" prong.  *See McKinney* v. *Google, Inc.*, No. 5:10-CV-01177 EJD

(PSG), 2011 WL 3862120, at *7 (N.D. Cal. Aug. 30, 2011) (assertion "that customer service was

inadequate" was insufficient to state a claim under the UCL's "unfair" prong).

> For all of these reasons, Plaintiffs' claims for violations of California's Unfair

Competition Law (Count VIII and Count IX) should be dismissed.

**VI.     PLAINTIFFS' CLAIMS FOR DECLARATORY JUDGMENTS
         THAT THE SELECT COMMITTEE IS NOT DULY AUTHORIZED
         (COUNT I) AND DOES NOT HAVE A VALID LEGISLATIVE
         PURPOSE (COUNT II) SHOULD BE DISMISSED FOR LACK
         OF STANDING AND FOR FAILURE TO STATE A CLAIM**

> In Counts I and II, Plaintiffs seek declaratory judgments that the Select Committee is not

duly authorized and does not have a valid legislative purpose, and therefore the subpoena issued

to JPMCB is invalid.  *See* Am. Compl. ¶¶ 115–29.  These claims should be dismissed for lack of

standing and for failure to state a claim.

First, as with Plaintiffs' federal constitutional claims, the Court should dismiss these claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs lack Article III standing.  JPMCB has already produced the documents required by the subpoena, and thus the dispute over the validity of the subpoena is moot.  JPMCB respectfully refers the Court to the arguments and case law cited in Part III of this memorandum.

Plaintiffs' claims independently fail for failure to state a claim under Rule 12(b)(6).  The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." *See Schilling* v. *Rogers*, 363 U.S. 666, 677 (1960).  The Declaratory Judgment Act does not, by itself, provide a cause of action; rather, the statute is procedural and enlarges the available remedies in federal courts.  *See Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Ali* v. *Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).  To survive a motion to dismiss a claim for declaratory relief, Plaintiffs must state facts sufficient to support an inference that there is an underlying statutory or common law basis for relief.  *See Fitts* v. *Fed. Nat. Mortg. Ass'n*, 44 F. Supp. 2d 317, 330 (D.D.C. 1999), *aff'd*, 236 F.3d 1 (D.C. Cir. 2001) ("A request for declaratory judgment constitutes a form of relief, not a cause of action.").

In their Amended Complaint, Plaintiffs fall far short of this standard when they ask the Court to issue declaratory judgments against all Defendants, including JPMCB, that the Select Committee is not duly authorized and that its investigation does not have a valid legislative purpose.  *See* Am. Compl. ¶¶ 115–29.  Plaintiffs fail to state any specific legal claims against JPMCB with respect to these causes of action.  Indeed, as to JPMCB, Plaintiffs have conceded to this Court that JPMCB's document production was made in response to what it thought was a valid subpoena.  *See* TRO Tr. at 8:15-17 ("Defendant JPMCB was responding to what it apparently believed was a valid request by [the] Select Committee for financial records.").

Plaintiffs cannot cite any law imposing a duty on the Bank to question or doubt the validity or effect of a facially valid subpoena from a congressional committee.  Indeed, the opposite is true.  *See, e.g.*, *United States* v. *Hambrick*, 55 F. Supp. 2d 504, 509 (W.D. Va. 1999) (holding that an internet service provider was not liable when it complied with a facially valid subpoena, which was subsequently found to be invalid); *United States* v. *Santiago-Lugo*, 904 F. Supp. 43, 44–50 (D.P.R. 1995) (acknowledging that a police department could not be faulted when it produced documents in response to a facially valid subpoena, which was later found to be invalid).  JPMCB has an affirmative duty to comply with a congressional subpoena, *see, e.g.*, *Watkins*, *supra* at Part II(B), and failure to comply risks contempt of Congress, criminal prosecution, or a civil action.  The law does not require a subpoena recipient to make the Hobson's choice between complying with a subpoena and facing liability if the subpoena is later found to be invalid and refusing to comply with a subpoena and risking contempt of Congress.  This Court should decline Plaintiffs' invitation to hold subpoena recipients liable for complying with a facially valid subpoena.

Absent allegations of any cognizable cause of action against JPMCB, Plaintiffs have failed to state a claim for declaratory relief.  JPMCB respectfully refers the Court to the House Memorandum with respect to the validity of the subpoena.

Counts I and II should therefore be dismissed as to JPMCB.

## **CONCLUSION**

For the reasons set forth herein, Defendant JPMCB respectfully requests that this Court grant its Motion to Dismiss the Amended Complaint with prejudice.

Dated: March 25, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

/s/ Loretta E. Lynch
Loretta E. Lynch (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3118
lelynch@paulweiss.com

Roberto J. Gonzalez (DC Bar No. 501406)
2001 K Street, NW
Washington, DC 20006-1047
Telephone:  (202) 223-7300
rgonzalez@paulweiss.com

*Counsel for Defendant*
*J.P. Morgan Chase Bank, N.A.*