## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR BUDOWICH, *et al.*,<br><br>      Plaintiffs,<br><br>     v.<br><br>NANCY PELOSI, in her official capacity as Speaker of the United States House of Representatives, *et al.*,<br><br>      Defendants. | No. 1:21-cv-03366 (JEB) |

**DEFENDANT J.P. MORGAN CHASE BANK, N.A.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.    CERTAIN OF PLAINTIFFS' CLAIMS ARE MOOT, AND AN EXCEPTION
TO THE MOOTNESS DOCTRINE DOES NOT APPLY .............................................. 3

II.    PLAINTIFFS' RFPA CLAIM SHOULD BE DISMISSED ............................................ 6

    A.    The RFPA Does Not Apply to Congressional Committee Subpoenas ................. 6

    B.    Plaintiffs Do Not Adequately Plead Actual or Punitive Damages ........................ 8

III.    PLAINTIFFS' CLAIMS THAT JPMCB VIOLATED THE U.S.
CONSTITUTION SHOULD ALSO BE DISMISSED FOR FAILURE TO
STATE A CLAIM ........................................................................................................ 11

IV.    PLAINTIFFS' CLAIMS AGAINST JPMCB BASED ON CALIFORNIA LAW
SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................ 15

    A.    Plaintiffs Do Not Adequately Plead An Invasion of Privacy ............................ 15

    B.    Plaintiffs Do Not Allege That JPMCB's Actions Are "Unlawful" ..................... 19

    C.    Plaintiffs Do Not Adequately Plead That JPMCB's Business Practices Are
"Unfair" ............................................................................................................ 21

CONCLUSION .................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009).................................................................................2, 15, 17

*Baughman* v. *State of California*,
   45 Cal. Rptr. 2d 82 (Cal. Ct. App. 1995) ...............................................................18

*Blum* v. *Yaretsky*,
   457 U.S. 991 (1982)..............................................................................................11, 12

*Bond* v. *U.S. Postal Serv. Fed. Credit*,
   164 F. Supp. 3d 740 (D. Md. 2015) .......................................................................10

*Brentwood Acad.* v. *Tenn. Sec. Sch. Athl. Ass'n*,
   531 U.S. 288 (2001)..............................................................................................11, 12

*Chesapeake & Potomac Tel. Co.* v. *Clay*,
   194 F.2d 888 (D.C. Cir. 1952) .................................................................................9

*Cierco* v. *Lew*,
   190 F. Supp. 3d 16 (D.D.C. 2016) (Boasberg, J.)....................................................6

*Colgate* v. *JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................................................21

*Crooker* v. *U.S. State Dep't*,
   628 F.2d 9 (D.C. Cir. 1980) ......................................................................................3

*Dailey* v. *Bank of Am.*,
   106 F. App'x 533 (9th Cir. 2004) ............................................................................12

*Elsman* v. *Standard Fed. Bank*,
   46 F. App'x 792 (6th Cir. 2002) ..............................................................................12

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d at 601 ........................................................................................................15

*Flowers* v. *First Hawaiian Bank*,
   295 F. Supp. 2d 1130 (D. Haw. 2003), *aff'd sub nom. Flowers* v. *U.S. Army*,
   *25th Infantry Div.*, 179 F. App'x 986 (9th Cir. 2006) ...........................................10

*Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)....................................................................................................5

*Hill* v. *Nat'l Collegiate Athletic Ass'n*,
    865 P.2d 633 (Cal. 1994) ...................................................................18

*Hoskins* v. *TCF Nat. Bank*,
    248 F. App'x 742 (7th Cir. 2007) .......................................................12

*Hubbard* v. *United States*,
    514 U.S. 695 (1995) ............................................................................7

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................17

*J. T.* v. *D.C.*,
    983 F.3d 516 (D.C. Cir. 2020) .............................................................5

*Kingman Park Civic Ass'n* v. *Gray*,
    27 F. Supp. 3d 142 (D.D.C. 2014) ...................................................9, 13

*Loder* v. *City of Glendale*,
    14 Cal. 4th 846, 927 P.2d 1200 (Cal. 1997) ......................................17

*Lugar* v. *Edmondson Oil Co.*,
    457 U.S. 922 (1982) ..........................................................................12

*Nicksolat* v. *U.S. Dep't of Transportation*,
    277 F. Supp. 3d 122 (D.D.C. 2017) (Brown Jackson, J.) ..................14

*Oneok, Inc.* v. *Learjet, Inc.*,
    575 U.S. 373 (2015) ..........................................................................21

*Prince* v. *Acheson*,
    305 F. Supp. 3d 48 (D.D.C. 2018) (Boasberg, J.) .............................15

*Ralls Corp.* v. *Comm. on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014) .............................................................4

*Robertson* v. *Cartinhour*,
    No. CIV.A. AW-09-3436, 2010 WL 716221 (D. Md. Feb. 23, 2010) ....14

*Shaeffer* v. *Califia Farms, LLC*,
    258 Cal. Rptr. 3d 270, 277 (Cal. Ct. App. 2020) ...............................19

*Skinner* v. *Railway Labor Executives' Ass'n*,
    489 U.S. 602 (1989) ..........................................................................13

*Spencer* v. *Kemna*,
    523 U.S. 1 (1998) ................................................................................4

*Swope* v. *Northumberland Nat. Bank*,
   625 F. App'x 83 (3d Cir. 2015) ...............................................................12

*Trump* v. *Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019)..................................................6, 7, 8, 10

*United States* v. *Bormes*,
   568 U.S. 6 (2012)...........................................................................7

*Watkins* v. *United States*,
   354 U.S. 178 (1957)................................................................10, 20

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................18

*Zukerman* v. *United States Postal Serv.*,
   961 F.3d 431 (D.C. Cir. 2020) .................................................5

**Statutes**

2 U.S.C. § 192.................................................................................12, 20

12 U.S.C. § 3401...........................................................................6, 8

12 U.S.C. § 3405............................................................................6

12 U.S.C. § 3412(d) ......................................................................8

12 U.S.C. § 3413(j)........................................................................8

15 U.S.C. § 6802(e)(8)...................................................................19

Cal. Fin. Code § 4056(b)(7)..........................................................19

California Unfair Competition Law .............................................15

California Financial Information Privacy Act ............................19, 20

Gramm-Leach-Bliley Act ..........................................................19, 20

**Other Authorities**

Black's Law Dictionary (5th ed. 1979).......................................7

California Constitution..............................................................15, 17, 18

Federal Rule of Civil Procedure 12(b)(6) ....................................6

United States Constitution ................................................... *passim*

## PRELIMINARY STATEMENT

This case is straightforward.  J.P. Morgan Chase Bank (JPMCB) produced documents in response to a facially valid congressional subpoena, just as Plaintiff Mr. Budowich did in response to a subpoena from the same committee.  Prior to production, JPMCB voluntarily provided Plaintiffs notice of the subpoena.  Plaintiffs then requested an extension of the deadline from the committee, which was not granted.  On pain of contempt and other legal consequences that apply to non-compliance with a congressional subpoena, JPMCB produced the requested documents in accordance with the deadline.

This Court should reject Plaintiffs' invitation to accept a number of positions that have never been, and should continue to not be, the law.  This includes the positions that: (1) private parties responding to a subpoena are converted into state actors merely by complying with the subpoena; (2) private parties must, in the face of a facially valid subpoena, choose between contempt and other consequences of non-compliance and liability if the subpoena is later found to be non-compliant with the United States Constitution or state constitution; (3) if a private party chooses to provide voluntary notice of a subpoena, the manner of that voluntary notice is actionable under federal and state law; and (4) a private party must violate a subpoena deadline if a customer indicates that it plans to challenge the subpoena.  Accepting any of these novel positions would create tremendous legal uncertainty, spur additional litigation, and increase the costs of and liabilities for complying with facially valid subpoenas.

Plaintiffs' opposition fails to rehabilitate any of their deficient claims.  Their claims  that JPMCB violated the U.S. Constitution and their claims that the Select Committee and its investigation are invalid should be dismissed as moot under well-established case law, given that JPMCB has already produced the documents pertaining to Plaintiffs required by the subpoena.  With respect to the Right to Financial Privacy Act (RFPA), this Court has already held,

1

in denying Plaintiffs' motion to compel notice, that the RFPA does not apply to congressional inquiries.  *See* ECF No. 40 at 3–4 ("The Right to Financial Privacy Act . . . does not entitle Plaintiffs to any relief, as it [does not] appl[y] to congressional inquiries.").  Plaintiffs also failed to plead sufficient facts to state a claim for actual or punitive damages under the RFPA.  With regard to Plaintiffs' claims that JPMCB violated the First, Fourth, and Fifth Amendments to the U.S. Constitution, none of the cases cited by Plaintiffs comes close to demonstrating that complying with a subpoena converts a private person into a state actor so that she may be held liable for violating the U.S. Constitution.  With respect to their California law claims, Plaintiffs have failed to plead facts showing that JPMCB's compliance with a facially valid subpoena amounts to an "egregious breach" of social norms that is "highly offensive" or is otherwise "unfair," "immoral," or "oppressive."

Plaintiffs failed to allege adequate facts in their Amended Complaint (Am. Compl.).  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs' purported "multitude of unresolved facts" as to JPMCB's subpoena response is wholly insufficient to save their claims from dismissal.

For all of these reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   CERTAIN OF PLAINTIFFS' CLAIMS ARE MOOT, AND AN EXCEPTION TO THE MOOTNESS DOCTRINE DOES NOT APPLY

JPMCB has carried its burden to show that Plaintiffs' claims that JPMCB violated the First, Fourth, and Fifth Amendments to the U.S. Constitution (Counts III, V, and VI) and claims that the Select Committee is neither duly authorized nor has a valid legislative purpose (Counts I and II) are moot.  Plaintiffs have not demonstrated that an exception to the mootness doctrine applies.

As described in its opening brief, on December 24, 2021—in response to the Select Committee's subpoena—the Bank produced the required documents pertaining to Plaintiffs. Plaintiffs do not challenge, and therefore concede, the holding of *Crooker* v. *U.S. State Dep't* that that "once the records are produced the substance of the controversy disappears and becomes moot."  628 F.2d 9, 10 (D.C. Cir. 1980).  This is dispositive that the claims are moot.

Plaintiffs' arguments that these claims are not moot are off the mark.  *First*, Plaintiffs argue that they are "seeking the return of their documents" and that they are challenging an "ongoing policy: the Select Committee's issuance of unnoticed, overbroad subpoenas."  *See* Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss the Amended Complaint by JPMCB, ECF No. 39 (Pls.' Opp.) at 8.  Plaintiffs' opposition notably does not argue that JPMCB will produce additional documents pertaining to them, much less that there is a "more than speculative" chance that the Bank would do so.  Rather, Plaintiffs assert that "it is likely that [the] *Select Committee Defendants* will issue unnoticed subpoenas to additional third-parties that maintain Plaintiffs' private information."  *See* Pls.' Opp. at 10 (emphasis added).  These arguments are inapplicable to JPMCB.  For whatever merit these arguments might have regarding claims *against the Select Committee Defendants*, these arguments have no bearing on whether Plaintiffs' claims *against JPMCB* are moot.

3

*Second,* Plaintiffs assert that their claims are not moot because they "seek monetary damages." *Id.* at 8. But Plaintiffs do not adequately plead that they are seeking damages with respect to their claims that JPMCB violated the U.S. Constitution. As JPMCB explained in its opening brief, damages for violations of the U.S. Constitution would not be available against JPMCB. *See* JPMCB's Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Amended Complaint, ECF No. 34 (JPMCB Mot. Dismiss) at 16[1] (citing *Correctional Servs. Corp.* v. *Malesko*, 534 U.S. 61, 63 (2001), for the proposition that *Bivens* cannot be extended to confer a right of action for damages against private corporate entities for constitutional violations even if those entities are acting under color of federal law). Plaintiffs do not challenge this point in their opposition, and therefore concede it. In the Prayer for Relief, Plaintiffs seek a declaratory judgment, not monetary damages for Counts I and II. *See* Am. Compl. Prayer for Relief.

*Third*, Plaintiffs do not carry their burden of showing that the "capable of repetition, yet evading review" exception to the mootness doctrine applies. "To satisfy th[is] exception, a party must demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Ralls Corp.* v. *Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014). Only when "these two circumstances are simultaneously present" in "exceptional situations" will the capable-of-repetition exception apply. *See Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks omitted).

Here, Plaintiffs fail to carry their burden on the second prong. Plaintiffs do not allege or demonstrate that the Select Committee will subpoena *JPMCB* again for records pertaining to

---

[1] The pincites refer to the page numbers at the bottom of the page, not the ECF page number.

Plaintiffs. *See* Pls.' Opp. at 9–12. Plaintiffs instead speculate that the Select Committee may subpoena "additional third parties." *Id.* They thus do not demonstrate a "reasonable degree of likelihood that the issue will be the basis of a continuing controversy *between the[] two parties*" here at issue—the Plaintiffs and JPMCB. *See J. T.* v. *D.C.*, 983 F.3d 516, 524 (D.C. Cir. 2020) (internal quotation marks omitted) (emphasis added). Any such future subpoena to JPMCB is speculative at best. *See* ECF No. 28 ("The Select Committee Defendants state that, to their knowledge, they have received all of the financial records requested, and do not anticipate issuing any more subpoenas to Defendant JPMorgan concerning Plaintiffs."). Further, the D.C. Circuit has explained that "a legal controversy so sharply focused on a unique factual context w[ill] rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *J. T.*, 983 F.3d at 524 (internal quotation marks omitted). Plaintiffs' pleading outlines a sequence of events that is exactly the kind of unique factual circumstance that is unlikely to repeat.

     *Finally*, Plaintiffs are incorrect that JPMCB faces a "heavy burden" in showing mootness. The "heavy burden" standard applies when plaintiffs allege *voluntary cessation* of the challenged conduct by the defendant. *See Zukerman* v. *U.S. Postal Serv.*, 961 F.3d 431, 443 (D.C. Cir. 2020); *see also Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (emphasis added) ("[T]he standard we have announced for determining whether a case has been mooted by the *defendant's voluntary conduct* is stringent . . . [there is a] 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again."). Here, as in *Crooker*, JPMCB has not ceased some challenged conduct that it might one day resume; rather, JPMCB has simply already produced the subpoenaed documents. Plaintiffs are also incorrect in asserting that a court must take the complaint's allegations as true in assessing

mootness.  Rather, "[a] court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *See Cierco* v. *Lew*, 190 F. Supp. 3d 16, 22 (D.D.C. 2016) (Boasberg, J.) (internal quotation marks omitted).  This means that "unlike with a motion to dismiss under Rule 12(b)(6), the Court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Id*. at 23 (internal quotation marks omitted).

For these reasons, Counts I, II, III, V, and VI as against JPMCB should be dismissed as moot.

## II.     PLAINTIFFS' RFPA CLAIM SHOULD BE DISMISSED

As this Court recently held, the RFPA "neither applies to congressional inquiries nor protects records relating to corporations such as Conservative Strategies."  *See* ECF No. 40 at 3– 4.  Further, Plaintiffs have conceded that the RFPA does not apply to Conservative Strategies, Inc. *See* Pls.' Opp. at 14, n. 1.  Additionally, Plaintiffs did not adequately allege actual or punitive damages under the RFPA.

### A.     The RFPA Does Not Apply to Congressional Committee Subpoenas

This Court has already found that the RFPA does not apply to congressional inquiries.  *See* ECF No. 40 (citing 12 U.S.C. §§ 3401, 3405 and *Trump* v. *Deutsche Bank AG*, 943 F.3d 627, 641– 45 (2d Cir. 2019)), *vacated and remanded sub nom. on other grounds by Trump* v. *Mazars USA, LLP*, 140 S. Ct. 2019 (2020)).  Indeed, Plaintiffs' opposition fails to acknowledge, let alone overcome, the textual and other evidence discussed at length by the Second Circuit in *Trump* v. *Deutsche Bank AG* when it held that the RFPA does not apply to congressional committee subpoenas.

Plaintiffs cannot cite one case holding that Congress is an "agency or department" under the RFPA.  The cases that Plaintiffs cite refer to a "legislative department" in other contexts and

have no applicability to the RFPA.  Moreover, Plaintiffs' cherry-picked citations ignore the Supreme Court's reasoning in *Hubbard* v. *United States*, 514 U.S. 695, 699 (1995), which was relied on by the Second Circuit, that the "far more common" use of the word "department" is "to refer to a component of the *executive* branch."  *Deutsche Bank AG*, 943 F. 3d at 645 (emphasis added) (internal quotations omitted).  Although Plaintiffs argue that "agency" also covers Congress, Plaintiffs' arguments fail for similar reasons.  *See* Agency Definition, Black's Law Dictionary (5th ed. 1979) (defining "agency" as a "department or other instrumentality of the executive branch of the federal government").

Plaintiffs ignore various other factors cited by the Second Circuit in support of its holding that the RFPA does not apply to congressional subpoenas.  For example, the RFPA refers to regulations promulgated by an agency or department, whereas Congress and its committees do not issue regulations.  *Id*. at 642 (citing 12 U.S.C. § 3408(2)).  Moreover, the Second Circuit reasoned that the RFPA's provision for damages makes it "highly unlikely" that Congress "would have subjected itself to such [civil] penalties, especially in the absence of a clear indication of an intent to do so."  *Id*.; *see also United States* v. *Bormes*, 568 U.S. 6, 9–10 (2012) ("[A] consent to be sued [must be] unequivocally expressed.") (internal quotation marks omitted).

Plaintiffs argue that if Congress had wanted to exempt itself from the RFPA, it had the opportunity and chose not to.  *See* Pls.' Opp. at 20.  Plaintiffs cite a draft bill, ultimately rejected by Congress, that would have defined "Government authority" as "the Congress of the United States, *or* any agency or department of the United States or of a State or political subdivision . . ."  *See* Electronic Funds Transfer and Financial Privacy: Hearings on S. 2096, S. 2293 and S. 1460 Before the Subcomm. on Fin. Insts. of the Senate Comm. on Banking, Housing & Urban Affairs, 95th Cong. 194 (1978) (emphasis added).  But the opposite conclusion is true.  By rejecting this

language, Congress decided to not subject itself to the statute's requirements.  As the Second Circuit explained, the fact that Congress did not include the word "Congress" in the definition of "Government authority" is "strong evidence of a deliberate decision by Congress not to apply the [RFPA] to itself." *Deutsche Bank AG*, 943 F. 3d at 642–43.

Finally, Plaintiffs argue that Section 3412(d) of the RFPA "confirms that Congress expected [the] RFPA to apply beyond the executive branch." *See* Pls.' Opp. at 21–22.  Section 3412(d) states, "[n]othing in this chapter shall authorize the withholding of information by any officer or employee of a supervisory agency from a duly authorized committee or subcommittee of the Congress." *See* 12 U.S.C. § 3412(d).  Contrary to Plaintiffs' interpretation, Section 3412(d) does not bring congressional committees within the definition of "Government authority," which is defined as an "agency or department of the United States . . ." *See* 12 U.S.C. § 3401.  Rather, Section 3412(d) provides that nothing in the RFPA authorizes a supervisory agency to withhold information from a congressional committee.  Contrary to Plaintiffs' argument, this section further supports the position that the RFPA does not apply to congressional subpoenas.  Similarly, Section 3413(j), which provides that the RFPA "shall not apply when financial records are sought by the Government Accountability Office pursuant to an authorized proceeding, investigation, examination or audit directed at a government authority" does not support Plaintiffs' position that the RFPA applies to congressional subpoenas.  *See* 12 U.S.C. § 3413(j).

Thus, in accord with the Second Circuit's holding, the House of Representatives' long-standing view, and this Court's decision, *see* ECF No. 40 at 3–4, Plaintiffs' RFPA claim (Count IV) should be dismissed.

### B.    Plaintiffs Do Not Adequately Plead Actual or Punitive Damages

This Court should also dismiss the actual and punitive damages components of Plaintiffs' RFPA claim because the Amended Complaint does not set forth sufficient facts.  *See* JPMCB Mot.

Dismiss at 12 (citing *Hugler* v. *Chimes D.C.*, No. CV RDB-15-3315, 2017 WL 1176031, at *4, *7–9 (D. Md. Mar. 30, 2017)).

Plaintiffs aver that they have sufficiently pleaded actual damages because they seek nominal damages.  *See* Pls.' Opp. at 23.  Plaintiffs are incorrect as a matter of law.  Nominal damages are only available when a plaintiff is *not* entitled to actual damages.  *See Chesapeake & Potomac Tel. Co.* v. *Clay*, 194 F.2d 888, 890 (D.C. Cir. 1952) (emphasis added) ("[N]ominal damages means a trivial sum . . . awarded to a plaintiff whose legal right has been technically violated but *who has proved no real damage*.").  A "plaintiff cannot be entitled to both forms of damages." *Id*.  Thus, by falling back on nominal damages, Plaintiffs have conceded that they have not adequately pleaded actual damages.

Plaintiffs argue in their opposition that "Mr. Budowich is now in jeopardy of suffering irreparable injuries to his reputation and goodwill as a professional political consultant and strategist due to the imminent disclosure of his private and First Amendment protected financial information and records by the Select Committee."  *See* Pls.' Opp. at 23.  Plaintiffs' new allegations fail for two reasons.  *First*, it is "well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss."  *See Kingman Park Civic Ass'n* v. *Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014).  Plaintiffs cannot save their Amended Complaint and its conclusory allegations of actual damages by pleading new facts in their brief. *See* JPMCB Mot. Dismiss at 12–13.  *Second*, the asserted "imminent disclosure" of records by the Select Committee is exactly the kind of future, speculative injury not actionable under the RFPA. *See* JPMCB Mot. Dismiss at 12–13 (citing 12 U.S.C. § 3417(a)(2); *Hugler*, 2017 WL 1176031, at *7; *Brackfield & Assocs. P'ship* v. *Branch Banking & Tr. Co.*, No. 3:14-CV-524-PLR-HBG, 2015

9

WL 5177737, at *3 (E.D. Tenn. Sept. 4, 2015), *aff'd*, 645 F. App'x 428 (6th Cir. 2016)).  Plaintiffs'

actual damages claim should therefore be dismissed.

Plaintiffs' claim for punitive damages pursuant to the RFPA should be dismissed because

they fail to allege any facts that meet the standard of "intentional or willful" conduct that is "so

patently egregious and unlawful that anyone undertaking the conduct should have known it is

unlawful." *Bond* v. *U.S. Postal Serv. Fed. Credit*, 164 F. Supp. 3d 740 (D. Md. 2015).  Just as

Plaintiff Mr. Budowich complied with a subpoena from the Select Committee for testimony and

documents, JPMCB complied with a facially valid subpoena from the same committee.  Plaintiffs

conceded that the Bank complied with a facially valid congressional subpoena.  *See* JPMCB Mot.

Dismiss at 13–14 (citing ECF No. 27).  Compliance with a congressional subpoena, particularly

after the Second Circuit's RFPA ruling in *Trump* v. *Deutsche Bank AG*, cannot be considered

"unlawful" or "willful" conduct meriting punitive damages.  *See Bond*, 164 F. Supp. 3d. at 750;

*Watkins* v. *United States*, 354 U.S. 178, 187–88 (1957) ("It is unquestionably the duty of all

citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent

legislative action.  It is their unremitting obligation to respond to subpoenas, to respect the dignity

of the Congress and its committees . . . ."); *see also Flowers* v. *First Hawaiian Bank*, 295 F. Supp.

2d 1130, 1138 (D. Haw. 2003), *aff'd sub nom. Flowers* v. *U.S. Army, 25th Infantry Div.*, 179 F.

App'x 986 (9th Cir. 2006) (finding a financial institution did not willfully violate the RFPA and

thus was not subject to punitive damages by complying with a facially valid subpoena where prior

court decisions had indicated it was proper to comply with this subpoena "without fear of violating

the RFPA.").  Plaintiffs' claim for punitive damages should therefore be dismissed.

III.    **PLAINTIFFS' CLAIMS THAT JPMCB VIOLATED THE U.S. CONSTITUTION SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM**

In addition to being moot, Plaintiffs' claims that JPMCB violated the First, Fourth, and Fifth Amendments to the U.S. Constitution (Counts III, V, and VI) should also be dismissed for failure to state a claim.

*First*, Plaintiffs ask this Court to hold that JPMCB became a state actor simply because it responded to a congressional subpoena.  Such a holding would mean that all private parties that comply with a subpoena from the government become state actors and are bound to comply with the U.S. and state constitution.  Plaintiffs cannot cite a single decision that has so held.  Such a holding would put all subpoena recipients into the impossible position of either subjecting themselves to contempt and criminal prosecution for non-compliance or being sued for constitutional violations for complying with the subpoena.  As JPMCB demonstrated in its opening brief, courts have declined to penalize private parties for complying with facially valid subpoenas. *See* JPMCB Mot. Dismiss at 31 (citing *United States* v. *Hambrick*, 55 F. Supp. 2d 504, 509 (W.D. Va. 1999); *United States* v. *Santiago-Lugo*, 904 F. Supp. 43, 44–50 (D.P.R. 1995)).

Plaintiffs rely on cases that are far afield from the situation here.  For example, Plaintiffs cite *Brentwood Acad.* v. *Tenn. Sec. Sch. Athl. Ass'n*, which in turn cited *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982), for the proposition that "a challenged activity may be state action when it results from the State's exercise of 'coercive power.'" 531 U.S. 288, 296 (2001).  But *Blum* is about the State being held liable for a private decision, not a private actor being held responsible for a State's decision.  457 U.S. at 1004.  In *Blum*, nursing home patients on Medicaid challenged the decisions of their respective nursing homes to discharge or transfer them without notice or opportunity for hearing.  457 U.S. at 993.  The Court ultimately held that the State was not liable because "privately owned enterprises providing services that the State would not necessarily

11

provide, even though they are extensively regulated, do not" create the sort of relationship that would render a State liable for that entity's actions; nor did the private entity offer a function that is "traditionally the exclusive prerogative of the State." *Id.* at 1010–11.

Plaintiffs also cite *Brentwood* in arguing that JPMCB is a state actor because it was a "willful participant in a joint activity with the" Select Committee. *See* Pls.' Opp. at 26 (citing 531 U.S. at 296). But JPMCB was not a "willful participant" in a "joint activity." JPMCB was required to, and did, comply with a facially valid subpoena. Failure to comply with a congressional subpoena is a violation of law and may result in contempt of Congress, criminal prosecution, and civil litigation. JPMCB Mot. Dismiss at 17 (citing 2 U.S.C. § 192).[2]

Plaintiffs rely on the holding in *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 941 (1982), that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." In *Lugar* the petitioner's property was "effectively sequestered" when the private entity obtained an *ex parte* writ of attachment, which was executed by the county sheriff. *Id.* at 924. The Court noted that "joint participation" occurs "when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute." *Id.* at 942. By contrast, here, JPMCB complied with a subpoena. Plaintiffs did not cite any cases holding that compliance with a subpoena is "joint participation."

---

[2]   Plaintiffs fail to rebut the proposition that banks are routinely held to be non-state actors. *See Swope* v. *Northumberland Nat. Bank*, 625 F. App'x 83, 86 (3d Cir. 2015) ("[T]he Bank Defendants neither deprived him of a constitutional right nor acted under color of law . . . ."); *Hoskins* v. *TCF Nat. Bank*, 248 F. App'x 742, 743 (7th Cir. 2007) ("The bank is not a state actor."); *Dailey* v. *Bank of Am.*, 106 F. App'x 533, 533 (9th Cir. 2004) ("We conclude that the district court did not err in concluding that the Bank was neither a state actor nor acting under color of state law, and in dismissing Dailey's 1983 action."); *Elsman* v. *Standard Fed. Bank*, 46 F. App'x 792, 798 (6th Cir. 2002) ("[T]hese defendants are not state actors.").

Plaintiffs also rely on *Skinner* v. *Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989), which involved an extraordinary level of government participation in the private party's activities.  There, a private party enforced a Federal Railroad Administration regulation requiring blood and urine tests of employees involved in certain train accidents.  *Id.* at 606.  The Court ultimately found that this was reasonable conduct in consideration of the circumstances—the shedding of privacy that attaches to employees due to overriding public safety interests—and refused to enjoin the enforcement of the regulation.  In so doing, the Court stated that, "[w]hether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes *necessarily turns on the degree of the Government's participation in the private party's activities.*"  *Id.* (emphasis added).  There, the Court determined that "specific features of the regulations combine to convince us that the Government did more than adopt a passive position toward the underlying private conduct."  *Id.* at 615.  Seizing blood and urine from employees is a far cry from producing documents pursuant to a subpoena.

Apart from JPMCB not being a state actor, Plaintiffs failed to allege any protectable constitutional interest.  Plaintiffs first argue that they have asserted property interests as the basis of their Fifth Amendment claim.  *See* Pls.' Opp. at 27.  But the word "property" appears just one time in the Amended Complaint, in the context of defining the Due Process Clause.  *See* Am. Compl. ¶ 131 (emphasis added) ("The Due Process Clause of the Fifth Amendment to the United States Constitution provides that certain substantive rights – life, liberty, and *property* – cannot be deprived except pursuant to constitutionally adequate procedures.").  Plaintiffs "cannot amend [their] complaint by the briefs in opposition to a motion to dismiss."  *Kingman Park Civic Ass'n* v. *Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014).  Plaintiffs' Amended Complaint contains no allegations that a property interest serves as the foundation for their  Fifth Amendment claim.

Still, even if Plaintiffs had sufficiently alleged a property interest, none of the cases cited by Plaintiffs refute the longstanding principle that bank customers do not have a constitutional interest in bank records because such records belong to the bank, not the customer.  JPMCB Mot. Dismiss at 19 (citing *Miller*, 425 U.S. at 440–41).

Plaintiffs also argue that the "First Amendment creates inherent liberty interests that are protectible under the Fifth Amendment Due Process Clause."  *See* Pls.' Opp. at 28.  However, Plaintiffs do not rebut the case law in this Circuit demonstrating that they have no such protected liberty interest in bank records.  *See Miller*, 425 U.S. at 440–41; JPMCB Mot. Dismiss at 20 (citing *Richardson* v. *D.C. Bar Ass'n*, No. 97-7051, 1997 WL 404321, at *1 (D.C. Cir. June 30, 1997)).

Finally, Plaintiffs are incorrect in suggesting that the RFPA somehow creates a property right that mandates constitutional protection.  The enactment of the RFPA did not disturb the Supreme Court's holding that customers have no cognizable privacy rights in bank records.  *See Robertson* v. *Cartinhour*, No. CIV.A. AW-09-3436, 2010 WL 716221, at *2 (D. Md. Feb. 23, 2010). ("[T]he bank customer has no inherent right to assert either ownership, possession, or inferentially, control over the release of a bank's records of his transactions." (quoting *Clayton Brokerage Co.* v. *Clement*, 87 F.R.D. 569, 571 (D. Md. 1980))).  The law is clear that the RFPA "fill[s] the gap left by the ruling *Miller*" *only* "insofar as it accords customers of banks and similar financial institutions certain rights to be notified of and to challenge in court administrative subpoenas of financial records in the possession of the banks."  *Nicksolat* v. *U.S. Dep't of Transportation*, 277 F. Supp. 3d 122, 124 (D.D.C. 2017) (Brown Jackson, J.) (internal quotation marks omitted).  Moreover, as this Court has determined, the RFPA does not apply to congressional inquiries.

Because JPMCB is not a state actor and because the Plaintiffs have not identified a protectable interest, Counts III, V, and VI should be dismissed.

## IV.   PLAINTIFFS' CLAIMS AGAINST JPMCB BASED ON CALIFORNIA LAW SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs have not demonstrated they have actionable claims under the California Constitution or California's Unfair Competition Law.  For the reasons detailed below, Counts VII, VIII, and IX should be dismissed.

### A.   Plaintiffs Do Not Adequately Plead An Invasion of Privacy

Plaintiffs' invasion of privacy claim should be dismissed because the Amended Complaint does not contain well-pled factual allegations.  *See Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *Prince* v. *Acheson*, 305 F. Supp. 3d 48, 49 (D.D.C. 2018) (Boasberg, J.) (internal quotation marks omitted) ("[A] court need not accept as true . . . a legal conclusion couched as a factual allegation, or an inference unsupported by the facts set forth in the complaint.").

Plaintiff Conservative Strategies, Inc. has conceded that it cannot assert an invasion of privacy claim under the California Constitution so its claim must be dismissed.  *See* Pls.' Opp. at 31, n. 5.

Plaintiff Mr. Budowich failed to plead facts that come anywhere close to making out an intrusion "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive."  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).  Rather, as Plaintiffs admitted, JPMCB complied with a facially valid subpoena from a congressional committee.  Plaintiff Mr. Budowich also complied when he received a subpoena from the same committee.  *See* ECF No. 27.  Yet he asks this Court to hold that JPMCB violated his privacy by doing the very thing he did: comply with a subpoena from the Select

15

Committee.  Plaintiff Mr. Budowich turning over documents to the Select Committee demonstrates that JPMCB's compliance with the subpoena was not an intrusion "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive."  Hence, he cannot state a claim for an invasion of privacy.

Moreover, although it was not required to do so, JPMCB provided Plaintiffs notice of the subpoena.  Plaintiffs' counsel tried, but failed, to obtain an extension from the Select Committee staff.  JPMCB had no authority to unilaterally move the Select Committee's deadline and therefore produced the records in compliance with the deadline.  Plaintiff Mr. Budowich has failed to provide any authority for the assertion that compliance with a congressional subpoena is "offensive" under California law, much less "highly offensive" and an "egregious breach" of social norms.  JPMCB demonstrated in its opening brief that the cases that found this "high bar" to be met are drastically different from the situation here.  *See* JPMCB Mot. Dismiss at 23 (citing *Am. Acad. of Pediatrics* v. *Lungren*, 940 P.2d 797, 831 (Cal. 1997) and *Jeffrey H.* v. *Imai, Tadlock & Keeney*, 101 Cal. Rptr. 2d 916, 922 (Cal. Ct. App. 2000)).  Plaintiff Mr. Budowich failed to rebut either of these cases.

The scattershot assertions in the opposition do not save this claim.  For example, Plaintiff Mr. Budowich asserts that JPMCB somehow knew that he was in Washington, D.C. when JPMCB sent the voluntary notice, but Plaintiffs failed to allege this in the Amended Complaint.  Even if it had been alleged, this assertion is conclusory and does not give rise to a claim for invasion of privacy.  *See* Am. Compl. ¶ 4 (alleging that JPMCB "delayed" notifying Mr. Budowich but not alleging that JPMCB transmitted notice on December 21, 2021 knowing that the Plaintiff was in Washington, D.C.).  Further, the assertion that JPMCB "refused" to extend the deadline does not support a claim for invasion of privacy.  Plaintiff Mr. Budowich cites no authority that would have

allowed JPMCB to unilaterally extend a Committee deadline, and he admits that *the Committee* failed to extend the deadline.  *See* Am. Compl. ¶ 5.

Plaintiffs have failed to carry their burden of making well-pled factual allegations in their complaint to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678.  Hence, their assertions that there are factual questions are insufficient to save their claim from dismissal. That is not the law.  Plaintiffs are putting the cart before the horse in claiming they are entitled to a jury trial.  Plaintiffs first had to state a plausible claim, which they failed to do.

Contrary to Plaintiffs' assertion that it is inappropriate to dismiss this claim on a motion to dismiss, *see* Pls.' Opp. at 30–31, courts can and do dismiss California invasion of privacy claims at the pleading stage for failing to adequately allege a "highly offensive" intrusion.  In *Mastel* v. *Miniclip SA*, the court rejected exactly the argument that Plaintiffs put forward here: that a court should not determine what constitutes "egregious" or "highly offensive" conduct in breach of social norms at the motion to dismiss stage.  549 F. Supp. 3d 1129, 1142 (E.D. Cal. 2021) ("[T]he weight of the case law indicates that [plaintiff's] allegations simply do not approach the sort of 'egregious' or 'highly offensive' conduct which courts have typically permitted to proceed beyond the motion to dismiss stage."); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (granting defendants' motion to dismiss for plaintiffs' failure to state an invasion of privacy claim under the California Constitution because "Plaintiffs' claim fail[ed] under the third element.").

Indeed, the pleading requirements for an invasion of privacy claim under the California Constitution are purposefully high in order to "weed out claims" at the pleading stage because "the legal concept of 'privacy' potentially has a very broad sweep."  *See Loder* v. *City of Glendale*, 927 P.2d 1200, 1230–31 (Cal. 1997) ("[T]he three 'elements' . . . [are] 'threshold elements' that may

be utilized to screen out claims that do not involve a significant intrusion on a privacy interest protected by the state constitutional privacy provision."); *see also Hill* v. *Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 655 (Cal. 1994) ("No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy.").

Finally, even if Plaintiffs made out a claim of a "highly offensive" intrusion (which they do not), their claim should be dismissed because JPMCB's compliance with a facially valid congressional subpoena "substantively furthers one or more legitimate competing interests."  *See* JPMCB Mot. Dismiss at 24 (quoting *Med. Bd. of California* v. *Chiarottino*, 170 Cal. Rptr. 3d 540, 546 (Cal. Ct. App. 2014)).  Plaintiffs rely on *Hill* to assert that raising a competing interest is an affirmative defense.  *See* Pls.' Opp. at 33 (citing 865 P.2d at 657).  However, many cases since that 1994 decision consider "competing interests" at the pleading stage in the context of a motion to dismiss, and none continue to identify it as an affirmative defense.  *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (internal quotation marks omitted) (citing *Hill*, 865 P. 2d at 865) (discussing in the context of a motion to dismiss that "[i]n the event a plaintiff establishes the three elements [for an invasion of privacy claim], the diverse and somewhat amorphous character of the privacy right may still be balanced with competing or countervailing interests of the defendant."); *Baughman* v. *State of California*, 45 Cal. Rptr. 2d 82, 87 (Cal. Ct. App. 1995) (discussing competing interests in affirming a trial court's dismissal of plaintiff's complaint for failing to state a cause of action for invasion of privacy).

For these reasons, this Court should dismiss Plaintiffs' invasion of privacy claim (Count VII) under the California Constitution.

**B.       Plaintiffs Do Not Allege That JPMCB's Actions Are "Unlawful"**

Plaintiffs also failed to meet their pleading burden under the "unlawful" prong of California's UCL (Count VIII).

As JPMCB demonstrated in its opening brief, Plaintiffs failed to plead any predicate violation of any "federal or California statute or regulation" to support an "unlawful" claim. *See Shaeffer* v. *Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 277 (Cal. Ct. App. 2020) (internal quotation marks removed). In their opposition, Plaintiffs attempt, but fail, to cure this fatal defect by arguing that congressional subpoenas and investigations are outside the scope of provisions of the California Financial Information Privacy Act (CalFIPA) and the Gramm-Leach-Bliley Act (GLBA) that allow financial institutions to disclose information to comply with legal requirements, subpoenas, and investigations, and thus CalFIPA and GLBA provide a predicate violation. *See* Pls.' Opp. at 34–36. Plaintiffs are incorrect for several reasons. *First*, tellingly, Plaintiffs did not cite any cases that hold that congressional subpoenas or investigations are outside the scope of these provisions. *Id. Second*, Plaintiffs ask this Court to ignore the broadness of these provisions. CalFIPA provides that a financial institution may release information "to comply with federal, state, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, administrative, or regulatory investigation or subpoena or summons by federal, state, or local authorities." *See* Cal. Fin. Code § 4056(b)(7). Similarly, the GLBA permits a financial institution to disclose nonpublic personal information "to comply with Federal, State, or local laws, rules, and other applicable legal requirements [and] to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities." *See* 15 U.S.C. § 6802(e)(8). Surely, compliance with an investigation and subpoena from a congressional committee falls within these provisions. "Civil, criminal, administrative, or regulatory" covers the gamut of investigations or subpoenas. Contrary to

Plaintiffs' interpretation, this language is not somehow a limitation excluding congressional investigations or subpoenas.  Further, the Select Committee's investigative purpose was clearly described in the cover letter to the subpoena:

> The Select Committee is ***investigating*** the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power, in order to identify and evaluate lessons learned and to recommend to the House and its relevant committees corrective laws, policies, procedures[,] rules, or regulations.

Am. Compl. Exhibit B (emphasis added).

The exception for compliance with an investigation or subpoena by federal authorities is therefore met.  Consequently, Plaintiffs cannot rely on CalFIPA or GLBA as the predicate violation of any "statute or regulation" to support a claim under the "unlawful" prong of California's UCL.

Moreover, Plaintiffs ignore that JPMCB's compliance with the subpoena meets the "to comply with federal, state, or local laws, rules, and other applicable legal requirements" exceptions to CalFIPA or GLBA.  JPMCB was required to comply with federal laws, including 2 U.S.C. § 192, which criminalizes noncompliance with congressional subpoenas.  "It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.  It is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees . . . ."  *Watkins* v. *United States*, 354 U.S. at 187–88 (1957).

*Finally,* Plaintiffs assert that CalFIPA should be interpreted to require a customer to consent before a bank or other third party makes production under a congressional subpoena, *see* Pls.' Opp. at 36.  Plaintiffs provide no support for that extraordinary proposition.  Reading such a requirement into California law would manifestly conflict with the requirement to comply with

congressional subpoenas and would be preempted by federal law.  *See Oneok, Inc.* v. *Learjet, Inc.*, 575 U.S. 373, 377 (2015).

Last, Plaintiffs' conclusory allegations in the Amended Complaint fall short of the pleading requirements.

For these reasons, Plaintiffs' claims under the "unlawful prong" of the UCL (Count VIII) should be dismissed.

### C.    Plaintiffs Do Not Adequately Plead That JPMCB's Business Practices Are "Unfair"

Plaintiffs also fail to meet their pleading burden under the "unfair" prong of California's UCL (Count IX).  Plaintiffs provide no well-pled factual allegations showing that JPMCB engaged in a business practice that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or violates a "'public policy that is tethered to specific constitutional, statutory, or regulatory provisions.'"  *See Hall* v. *Fiat Chrysler America US LLC*, 550 F. Supp. 3d 847, 853 (C.D. Cal. 2021) (quoting *Bardin* v. *DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 636 (Cal. Ct. App. 2006)); *see also Colgate* v. *JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 758–59 (N.D. Cal. 2019).  "The burden is on the plaintiffs to show why" a defendant is *not* permitted to engage in the business practice.  *Berryman* v. *Merit Prop. Mgmt.*, 62 Cal. Rptr. 3d 177, 186 (Cal. Ct. App. 2007).  Reciting the words "immoral, unethical, oppressive, unscrupulous, and substantially injurious" in the Amended Complaint does not meet the requirement of well-pled factual allegations.  *See* Am. Compl. ¶ 190.

Again, Plaintiffs do not dispute that they admitted to this Court that the Bank complied with a facially valid congressional subpoena.  *See* JPMCB Mot. Dismiss at 28 (citing ECF No. 27).  They provide no basis for this Court to hold that compliance with a facially valid congressional subpoena is "immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers" under California law.  Plaintiffs also failed to provide a basis for holding that JPMCB's decision to voluntarily provide notice is actionable under California law.  Plaintiffs' asserted dissatisfaction with the timing of the notice given does not save their deficient claim. Here, JPMCB's voluntary notice allowed Plaintiffs to seek an extension from the Committee, which extension was not granted.  Moreover, JPMCB had no authority to unilaterally extend the Committee's deadline.  As with Plaintiffs' invasion of privacy claim, Plaintiffs would have every challenge to a subpoena response result in a jury trial.  That is not the law.

For all of these reasons, Plaintiffs' claims under California law (Counts VII, VIII, and IX) should be dismissed.

## CONCLUSION

For the reasons set forth herein and in Defendant JPMCB's Motion to Dismiss, *see* ECF No. 34, Defendant JPMCB respectfully requests that this Court grant its Motion to Dismiss the Amended Complaint with prejudice.

Dated: April 15, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Loretta E. Lynch*
Loretta E. Lynch (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
lelynch@paulweiss.com

Roberto J. Gonzalez (DC Bar No. 501406)
2001 K Street, NW
Washington, DC 20006-1047
Telephone:  (202) 223-7300
rgonzalez@paulweiss.com

*Counsel for Defendant*
*J.P. Morgan Chase Bank, N.A.*