# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TAYLOR BUDOWICH, *et al*.,

                Plaintiffs,

    v.

NANCY PELOSI, *et al*.,

                Defendants.

Case No. 1:21-cv-3366-JEB

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR <u>MOTION TO DISMISS</u>

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

*Counsel for the Congressional Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.  THE CONGRESSIONAL DEFENDANTS ARE ABSOLUTELY IMMUNE FROM SUIT .......................................................................................................................... 2

II.  THIS CASE IS MOOT ................................................................................................ 9

III.  PLAINTIFFS FAIL TO STATE A CLAIM ............................................................... 12

     A.  Plaintiffs' Claims Regarding The Validity Of The Select Committee Subpoena Should Be Dismissed For The Same Reasons This Court Concluded Plaintiffs Are Unlikely To Succeed On The Merits ........................... 12

     B.  The Right to Financial Privacy Act Does Not Apply To Congress ..................... 14

     C.  Plaintiffs' Consitutional Claims Fail .................................................................. 17

CONCLUSION .................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Bean LLC v. John Doe Bank*,
   291 F. Supp. 3d 34 (2018) ...............................................................................19

*Bergman v. Senate Special Comm. on Aging*,
   389 F. Supp. 1127 (S.D.N.Y. 1975)....................................................................4

*\*Brown & Williamson Tobacco Corp. v. Williams*,
   62 F.3d 408 (D.C. Cir. 1995) ..........................................................................4, 7

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018).....................................................................................19

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)...........................................................................................11

*Cruzan by Cruzan v. Dir., Mo. Dep't of Health*,
   497 U.S. 261 (1990).........................................................................................18

*Doe v. Harris*,
   696 F.2d 109 (D.C. Cir. 1982) .........................................................................11

*Doe v. McMillan*,
   412 U.S. 306 (1973)...........................................................................................3

*Dugan v. Rank*,
   372 U.S. 609 (1963)...........................................................................................8

*\*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975).........................................................................2, 3, 4, 5, 18

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
   720 F.3d 939 (D.C. Cir. 2013) ...........................................................................5

*Hubbard v. United States*,
   514 U.S. 695 (1995).........................................................................................15

*\*Judicial Watch, Inc. v. Schiff*,
   998 F.3d 989 (D.C. Cir. 2021) ........................................................................2, 4

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880).......................................................................................3, 5

*Klayman v. Nat'l Sec. Agency*,
   280 F. Supp. 3d 39 (D.D.C. 2017) ...................................................................11

*Kupperman v. U.S. House of Representatives,
   436 F. Supp. 3d 186 (D.D.C. 2019) ...................................................................9

Lane v. Peña,
   518 U.S. 187 (1996)..........................................................................................8

Larsen v. U.S. Navy,
   525 F.3d 1 (D.C. Cir. 2008) .......................................................................10, 11

Larson v. Domestic & Foreign Commerce Corp,
   337 U.S. 682 (1949)......................................................................................7, 8

Los Angeles Cnty. v. Davis,
   440 U.S. 625 (1979)..........................................................................................9

MBIA Ins. Corp. v. F.D.I.C.,
   708 F.3d 234 (D.C. Cir. 2013) .......................................................................12

Nat'l Ass'n of Mfrs. v. Taylor,
   582 F.3d 1 (D.C. Cir. 2009) ...........................................................................19

Penthouse Int'l, Ltd. v. Meese,
   939 F.2d 1011 (D.C. Cir. 1991) .......................................................................9

Rangel v. Boehner,
   785 F.3d 19 (D.C. Cir. 2015) ...........................................................................3

*Senate Permanent Subcomm. on Investigations v. Ferrer,
   856 F.3d 1080 (D.C. Cir. 2017) ................................................................2, 6, 7

*Trump v. Deutsche Bank AG,
   943 F.3d 627 (2d Cir. 2019).......................................................................8, 17

Trump v. Mazars USA LLP,
   140 S. Ct. 2019 (2020).................................................................................4, 17

*Trump v. Thompson,
   20 F.4th 10 (D.C. Cir. 2021), cert. denied, 142 S. Ct. 1350 (2022) .....................5, 8, 12, 13

United States v. Am. Tel. & Tel. Co.,
   567 F.2d 121 (D.C. Cir. 1977).......................................................................4, 5

United States v. Harriss,
   347 U.S. 612 (1954)........................................................................................19

United States v. Helstoski,
   442 U.S. 477 (1979)..........................................................................................6

*United States v. Miller*,
    425 U.S. 435 (1976) ................................................................................19

*Worth v. Jackson*,
    451 F.3d 854 (D.C. Cir. 2006) ................................................................10

**Statutes**

12 U.S.C. § 3412 ........................................................................................16

12 U.S.C. § 3413 ...................................................................................15, 16

**Constitutional & Legislative Authorities**

U.S. Const., Amend. I ........................................................................... 18, 19

U.S. Const., Amend. IV ............................................................................ 19

U.S. Const., Amend. V ....................................................................17, 18, 19

Cong. Rec. H4216-18 (daily ed. Apr. 6, 2022) ........................................14

*Elec. Funds Transfer and Fin. Priv.: Hearings on S. 2096, S. 2293 and S. 1460 Before the
    Subcomm. on Fin. Insts. of the S. Comm. on Banking, Hous. and Urb. Affs.*,
    95th Cong. (1978) ................................................................................17

H. Rep. No. 95-1383 (1978) ....................................................................17

H. Res. 503, 117th Cong. (2021) ......................................................4, 8, 14

*Resolution Recommending that the House of Representatives Find Peter K. Navarro and Daniel
    Scavino, Jr., in Contempt of Congress for Refusal to Comply with Subpoenas Duly Issued by
    the Select Committee to Investigate the January 6th Attack on the United States Capitol*,
    H. Res 1037, 117th Cong. (2d Sess. 2022) ..........................................14

Rule XI, Rules of the U.S. House of Representatives, 117th Cong. (2021) ...............................4, 8

## INTRODUCTION

This Court has already ruled that this suit—and the relief Plaintiffs seek—is barred by the Speech or Debate Clause.  Further, it has also concluded that the Select Committee has a valid legislative purpose and is validly constituted, and that the subpoena at issue is not overbroad. Those conclusions are unquestionably correct; indeed, they are compelled by precedent.  On top of that, the Congressional Defendants have provided additional reasons that dismissal of the Amended Complaint is required:  Plaintiffs' claims are now moot because the Select Committee has already received the documents at issue, the Right to Financial Privacy Act does not apply to Congress, and Plaintiffs have failed to state any valid claim for relief under the Constitution.

In response, Plaintiffs largely ignore this Court's previous conclusions, and fail to engage meaningfully with the Congressional Defendants' arguments.  Ultimately, Plaintiffs' response makes clear that they continue to seek return of the documents at issue and interference with the Select Committee's ongoing investigation—relief that is squarely foreclosed by binding precedent.  This case has suffered from fatal jurisdictional defects from the start, and Plaintiffs have provided no valid reason that their suit against the Congressional Defendants, over a subpoena with which JPMorgan Chase has already complied, should continue.  The Amended Complaint should be dismissed.

## ARGUMENT

For the reasons explained in the Congressional Defendants' memorandum in support of their motion to dismiss (Mem.), the Congressional Defendants are immune from Plaintiffs' suit, and the relief Plaintiffs seek is barred by the Speech or Debate Clause.  Further, because the Select Committee does not seek additional documents relating to Plaintiffs from JPMorgan, Plaintiffs' claims are moot.  Plaintiffs' responses are flawed and unpersuasive.

1

Jurisdiction and mootness aside, all of Plaintiffs' claims fail on the merits.  Plaintiffs

offer no reason for this Court to depart from its previous ruling, based on D.C. Circuit precedent,

that the Select Committee has a valid legislative purpose, and that the Court must defer to

Congress's interpretation of its own authorizing resolution.  In addition, Plaintiffs cannot state a

claim under the Right to Financial Privacy Act because that statute does not apply to a

Congressional subpoena.  Finally, Plaintiffs' Constitutional claims fail for multiple reasons.

## I. THE CONGRESSIONAL DEFENDANTS ARE ABSOLUTELY IMMUNE FROM SUIT

1.  As this Court has already explained, it "has no jurisdiction to order Congress, because

of the Speech [or] Debate Clause, to return documents that it has received."  ECF 27 (Jan 20,

2022 Oral Arg. Tr.) at 32:20-22; *see also id.* at 33:9-16 (recognizing the Speech or Debate

Clause would bar Plaintiffs' claims against the Congressional Defendants "even if [Plaintiffs]

had been able to bring the case prior to" the production of documents).  That holding was plainly

correct:  the Congressional Defendants are absolutely immune from suit because a committee's

"issuance of subpoenas" is "a legislative act protected by the Speech or Debate Clause."  *Judicial

Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (citations omitted); *see Eastland v. U.S.

Serviceman's Fund*, 421 U.S. 491, 504 (1975).  What is more, "the separation of powers,

including the Speech or Debate Clause, bars this court from ordering a [C]ongressional

committee to return, destroy, or refrain from publishing the subpoenaed documents."  *Senate

Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017)

(citations omitted).  The Clause precludes Plaintiffs' suit and the relief they seek.

Plaintiffs continue to resist this straightforward conclusion, but their arguments are

unavailing.

*First*, Plaintiffs argue that the Speech or Debate Clause is inapplicable due to the "unique" allegations in this case—that is, allegations that the Select Committee "intentionally thwarted an individual's right to seek review of a congressional subpoena that is patently unconstitutional and *ultra vires*." Opp. 24. Far from being unique, however, similar arguments are "made in almost every Speech or Debate Clause case" and have "been rejected time and again." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (citation omitted). As the D.C. Circuit has made clear, "[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution." *Id.* (citing *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880), *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973), and *Eastland*, 421 U.S. at 509-10). Plaintiffs do not address this principle, which forecloses their claims.

*Second*, Plaintiffs suggest that, for Speech or Debate protections to apply, this Court must conduct a searching inquiry for a "valid legislative purpose." Opp. 24. That argument misreads the Supreme Court's decision in *Eastland v. U.S. Servicemen's Fund* and ignores D.C. Circuit precedent. The Supreme Court explained in *Eastland* that "once it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." 421 U.S. at 503 (citation omitted). Accordingly, the scope of the Supreme Court's inquiry in *Eastland* was "narrow." *Id.* at 506.

As the Court put it, "[i]f the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Id.* at 508-09. Thus, because Congress "was authorized to investigate any subject 'on which legislation could be had,' . . . its issuance of

subpoenas necessarily fell within the legislative sphere." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) (quoting *Eastland*, 421 U.S. at 504 n.15)).

The D.C. Circuit recently applied these principles in *Judicial Watch v. Schiff*, rejecting the argument that a Congressional committee's subpoenas "served no legitimate legislative purpose and were therefore unprotected by the Speech or Debate Clause." 998 F.3d at 992 (internal quotation marks and citation omitted).  The Court explained that "[t]he wisdom of congressional approach or methodology is not open to judicial veto," "[n]or is the legitimacy of a congressional inquiry to be defined by what it produces."  *Id.* (quoting *Eastland*, 421 U.S. at 509).  Here, the Select Committee's investigation and subpoena easily fall within the "legislative sphere:" the Select Committee is investigating an attack on Congress itself, and its authorizing resolution includes customary investigatory powers such as the ability to issue subpoenas.  *See* H. Res. 503, § 5(c)(4), 117th Cong. (2021); *see also* Rule XI 2(m)(1), Rules of the U.S. House of Representatives, 117th Cong. (2021).  As in *Eastland* and *Judicial Watch*, the Speech or Debate Clause provides "complete immunity" for the Select Committee's "issuance of th[e] subpoena." *Eastland*, 421 U.S. at 507.

The cases on which Plaintiffs rely are inapposite.  Plaintiffs first cite the Supreme Court's recent decision in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) (Opp. 24-25), but the Congressional parties in *Mazars* affirmatively intervened in the suit and did not invoke the Speech or Debate Clause.  Nor did the Congressional parties rely on the Speech or Debate Clause in *Bergman v. Senate Special Comm. on Aging*, 389 F. Supp. 1127 (S.D.N.Y. 1975) (*see* Opp. 24)—a case in New York federal district court that was decided before *Eastland*.

Plaintiffs then turn to *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977) (Opp. 24-25), but reliance on that decision is likewise misplaced.  There, in concluding

that Speech or Debate immunity did not bar judicial review of the subpoena at issue, the Court emphasized that the subcommittee Chairman had voluntarily intervened in the case and thus no member had "been made a defendant in a judicial proceeding." *AT&T*, 567 F.2d at 130.  Here, unlike in *AT&T*, the Congressional Defendants are decidedly not voluntary participants in the litigation.  Plaintiffs have hauled the Congressional Defendants into court against their will, and the Congressional Defendants have sought dismissal from the outset.  Forcing the Congressional Defendants to remain in this case—to defend a subpoena for which they have already received the requested documents—would needlessly impair their ability to carry out their legislative functions.

Contrary to Plaintiffs' contention (Opp. 25), once it is determined that the challenged act is within the legislative sphere, the Speech or Debate Clause operates as a jurisdictional bar. *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 941 (D.C. Cir. 2013).  The cases Plaintiffs cite (Opp. 25) stand for the simple proposition that the Speech or Debate Clause does not protect acts *outside* of the legislative sphere.  *See, e.g.*, *Eastland*, 421 U.S. at 508 (distinguishing *Kilbourn*, 103 U.S. at 182, because the "arrest by the Sergeant at Arms" was not "essential to legislating") (internal quotation marks and citation omitted).  The Select Committee's subpoena falls easily within the legislative sphere.  *See* pp. 2-4, *supra*.

Regardless, even if a valid legislative purpose were required to invoke the Speech or Debate Clause, the Select Committee plainly has one.  *See Trump v. Thompson*, 20 F.4th 10, 41 (D.C. Cir. 2021) ("the January 6th Committee plainly has a valid legislative purpose and its inquiry concerns a subject on which legislation could be had" (internal quotation marks and citation omitted)), *cert. denied*, 142 S. Ct. 1350 (2022); pp. 12-13, *infra*.

*Third*, Plaintiffs incorrectly contend (Opp. 31) that the Right to Financial Privacy Act waives Speech or Debate Clause immunity. No court has held that Speech or Debate Clause immunity is waivable. To be sure, a Congressional entity may choose not to assert its Speech or Debate immunity in a given case, but that is far different from saying that Congress has implicitly waived its immunity as to an entire category of litigation. *See Ferrer*, 856 F.3d at 1085-87 (rejecting argument that by "seeking to enlist the judiciary's assistance in enforcing its subpoena," the Senate subcommittee had "necessarily accepted an implicit restriction on the Speech or Debate Clause"). Even "[a]ssuming" that waiver of Congressional immunity is "possible," it "can be found only after explicit and unequivocal renunciation of the protection." *United States v. Helstoski*, 442 U.S. 477, 490-91 (1979). Plaintiffs do not, and cannot, identify any "explicit and unequivocal renunciation" in the Right to Financial Privacy Act. The fact that Congress has included language in an entirely different statute—completely irrelevant to these proceedings—that makes clear that its provisions "shall not constitute a waiver" of Speech or Debate immunity (Opp. 31) does nothing to alter that conclusion.

*Fourth*, Plaintiffs eventually acknowledge, as they must, that "*Ferrer, Brown & Williamson*, and *Hearst* all broadly support the Select Committee's contention that the Court cannot order the return of documents in Congress's possession." Opp. 29 (citations omitted). But they nonetheless ask this Court to fashion a new exception to that settled principle when it is alleged that Congress has "thwart[ed] *any* challenge to a congressional subpoena where the Committee *was on actual notice* of a forthcoming legal challenge." *Id.* Plaintiffs cite no case law in support of their novel proposition, and the Select Committee is aware of none. Indeed, Plaintiffs' exception would substantially undermine the operation of the Speech or Debate Clause, which "permits Congress to conduct investigations and obtain information without

6

interference from the courts." *Brown & Williamson.*, 62 F.3d at 416.  And, contrary to Plaintiffs'

suggestion (Opp. 30), the issuance of the subpoena here was "procedurally regular."  The Select

Committee issued a duly authorized subpoena to JPMorgan, and JPMorgan complied with that

subpoena.  There is simply no requirement—in any statute, case law, or otherwise—that the

Select Committee provide notice to Plaintiffs of the third-party subpoena at issue.  Any

complaint Plaintiffs may have about the extent of notice provided to them is a private matter

between Plaintiffs and JPMorgan, not the Select Committee.

Plaintiffs' fallback argument—that this Court "can at least compel the Select Committee

to adopt proper safeguards and protections" for handling of Plaintiffs' documents (Opp. 31)—is

no less problematic.  Such judicial management of a Congressional investigation would raise

serious separation of powers concerns and violate the principle that the Speech or Debate Clause

"affords Congress a privilege to use materials in its possession without judicial interference."

*Ferrer*, 856 F.3d at 1086 (internal quotation marks omitted).  As this Court has already

recognized, the Speech or Debate Clause bars this suit and the requested relief.  On that basis

alone, the Amended Complaint should be dismissed.

2.  Plaintiffs' suit is also barred by sovereign immunity.  *See* ECF 23 (Mem. in Opp. to

Mot. for TRO) at 13-14.  Plaintiffs contend that sovereign immunity is inapplicable here because

the *Larson-Dugan* exception applies and because Congress waived sovereign immunity in the

Right to Financial Privacy Act.  Opp. 21.  Plaintiffs are wrong on both scores.

a.  Plaintiffs cannot rely on the *Larson-Dugan* exception in this case.  The Supreme Court

explained in *Larson v. Domestic & Foreign Commerce Corp.*:

> There may be, of course, suits for specific relief against officers of
> the sovereign which are not suits against the sovereign…. [W]here
> the officer's powers are limited by statute, his actions beyond those

> limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

337 U.S. 682, 689-90 (1949); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963). None of these factors is present in this case.

As an initial matter, the powers of the Congressional Defendants are not "limited by statute." There exist no statutory "limitations" on the issuance of subpoenas by a House committee during an investigation. In fact, by issuing subpoenas, the Committee *was* "doing the business which [the Constitution and the House had] empowered [it] to do." *Larson*, 337 U.S. at 689; *see also* H. Res. 503. Similarly, no statute or other law limits or prohibits the subpoena at issue here.

Nor were Congressional Defendants' actions here "*ultra vires*." Quite the opposite. Both the Select Committee's investigation and its issuance of subpoenas were expressly authorized and entirely consistent with the House's standing rules. *See* H. Res. 503; Rule XI.2(m)(1)(B); *Trump v. Thompson*, 20 F.4th at 41-42; pp. 12-14, *infra*.

b. Congress did not waive sovereign immunity in the Right to Financial Privacy Act. Plaintiffs have not, and cannot, identify a waiver of sovereign immunity as to *Congress* that is "unequivocally expressed" in that statute. *Lane v. Peña*, 518 U.S. 187, 192 (1996). To the contrary, as the Second Circuit has recognized, it is "highly unlikely" that Congress would have subjected itself to the civil and punitive penalties in the Act, "especially in the absence of a clear indication of an intent to do so." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 642 (2d Cir. 2019), *vacated on other grounds sub nom. Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020); *see* pp. 14-17, *infra*.

Accordingly, because Plaintiffs do not identify an applicable waiver of sovereign immunity, the Amended Complaint must be dismissed.

## II.    THIS CASE IS MOOT

As this Court has been made aware, JPMorgan has already complied with the Select Committee's subpoena, and the Select Committee does not seek further documents pursuant to that subpoena. Plaintiffs' claims for injunctive and declaratory relief are therefore moot. Plaintiffs offer no persuasive response.

1. As a threshold matter, Plaintiffs cannot avoid dismissal by contending that they seek "monetary damages and a return of their documents." Opp. 7; *see also id.* at 12-13. The request for the return of documents is plainly foreclosed by the Speech or Debate Clause, *see* pp. 6-7, *supra*, and Plaintiffs' damages claim under the Right to Financial Privacy Act fails because the statute does not apply to Congress and does not include a waiver of Congress's sovereign immunity, *see* pp. 14-17, *infra*. The remaining claims must be dismissed because they are moot.

2. Plaintiffs now contend that they challenge an "ongoing policy"—that is "the Select Committee's issuance of unnoticed, overbroad subpoenas that exceed a valid legislative purpose and are issued by a committee that is not duly formed." Opp. 8. Even if the Amended Complaint had alleged any such "policy" (it does not), Plaintiffs' request for a judgment regarding such a policy would not redress any harm to Plaintiffs and would be a quintessential "advisory opinion[] on abstract propositions of law" that Article III prohibits. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 633 (1979) (quotation marks and citation omitted); *see also Kupperman v. U.S. House of Representatives*, 436 F. Supp. 3d 186, 191-94 (D.D.C. 2019).[1]

---

[1] "Even assuming that there is some trace of a continuing injury sufficient to satisfy Article III," no "declaratory relief would be appropriate as an exercise of the court's discretionary, equitable powers." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991). Where, as here,

3.  In the alternative, Plaintiffs contend (Opp. 8) that this case "fits into the mootness exception for cases capable of repetition yet evading review."  That is incorrect.  *First*, Plaintiffs cannot seriously argue that challenges to the Select Committee's subpoenas, as a general matter, "evade review" when another court has already adjudicated a similar challenge and when numerous other cases are pending.  *See, e.g.*, Order, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Jan. 25, 2022), ECF 43.

*Second*, Plaintiffs cannot show any "reasonable probability" (Opp. 8) that they will be subject to the same action again.  Plaintiffs speculate that it is "likely" that the Select Committee will "issue unnoticed subpoenas to additional third-parties that maintain Plaintiffs' private financial information."  Setting aside the different factual scenario that a different subpoena to a different third-party would present, Plaintiffs' conjecture is woefully insufficient to preserve an Article III controversy.  For example, courts will entertain a challenge to a law that has been repealed only "where the governing body expresse[s] an intent to re-enact the allegedly defective law."  *Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006); *see also Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) ("because the [defendant] already eliminated the [challenged policy] and plaintiffs never allege that the [defendant] will reinstitute it, any injunction or order declaring it illegal would accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits").  Here, the Select Committee has expressed no intent to issue another subpoena for the Plaintiffs' information (and Plaintiffs have alleged no such intent); indeed, there is simply no reason to presume the Select Committee will do so.

---

"it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play."  *Id.*

Plaintiffs also have not shown how the existence of any supposed policy could injure them personally. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). To establish standing to challenge the prospective issuance of overbroad subpoenas, Plaintiffs would need to show both that they are themselves likely to be the subject of one of those subpoenas and that this hypothetical future subpoena will be "unnoticed" and "overbroad." Plaintiffs' unsupported prediction that the Select Committee will likely subpoena another third party for Plaintiffs' information (Opp. 10-11) is insufficient.

Plaintiffs' reliance on *Doe v. Harris*, 696 F.2d 109 (D.C. Cir. 1982), is misplaced. There, the plaintiff challenged the Assistant United States Attorney's demand for the plaintiff's medical records maintained by the Veterans Administration. In holding the case was not moot, the Court emphasized that the prosecutor explicitly "reserved" a "circumstance in which he might seek to obtain [the plaintiff's] psychiatric records again"—that is, if the plaintiff was indicted and raised the defense of insanity. *Id.* at 112. Because the plaintiff "remain[ed] under investigation" for a crime, the likelihood that he would be indicted was a "reasonable expectation," and "given his history of psychiatric troubles" it was also "reasonably likely that his counsel would assert insanity." *Id.* Those facts—and the accompanying likelihood that the alleged misconduct would recur—bear no resemblance to the pure speculation Plaintiffs have offered here. *See Larsen*, 525 F.3d at 4 (distinguishing *Harris* because there "the defendant expressly said it would commit the same alleged violation again under certain circumstances").

Because a decision from this Court would not have a "more-than-speculative chance" of affecting Plaintiffs' rights, their claims should be dismissed as moot. *Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 50 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama*, 759 F. App'x 1 (D.C. Cir. 2019). At a minimum, this Court should exercise its discretion to dismiss the claims

under the doctrine of prudential mootness.  *See MBIA Ins. Corp. v. F.D.I.C.*, 708 F.3d 234, 245

(D.C. Cir. 2013).

### III.    PLAINTIFFS FAIL TO STATE A CLAIM

####     A.    Plaintiffs' Claims Regarding The Validity Of The Select Committee Subpoena Should Be Dismissed For The Same Reasons This Court Concluded Plaintiffs Are Unlikely To Succeed On The Merits

Regardless of the jurisdictional flaws, Plaintiffs offer no persuasive reason for this Court

to depart from its conclusions—grounded firmly in binding precedent—that the Select

Committee is validly constituted and is pursuing legitimate legislative purposes.  *See* ECF 27 at

34; *see also Trump v. Thompson*, 20 F.4th at 17, 41.

1. Plaintiffs now acknowledge (Opp. 17) that the Select Committee has "some legislative

purpose," but contend that "the breadth and entirety" of Plaintiffs' financial records "are not

relevant to any legislative purpose."  Critically, Plaintiffs ignore the fact that this Court has

already reviewed the subpoena at issue and determined that it is "not overbroad," but instead is

"sufficiently narrowed."  ECF 27 at 12:25-13:3; *see also id.* at 34:11-12.  As this Court

explained, the subpoena "is not seeking numbers of records that would have no relation to

January 6th and the funding of those and related events."  *Id.*

That conclusion is unquestionably correct.  As Chairman Thompson explained, there is

reason to believe that Budowich directed $200,000 from a source that was "not disclosed" to pay

for an advertising campaign to encourage people to attend the "Stop the Steal" rally on January

6th, in support of then-President Trump and his allegations of election fraud.  Am. Compl. Ex. A

at 3.  The documents produced by JPMorgan thus further the Select Committee's investigation

into how the events of January 6th may have been financed, and they allow the Select Committee

to ensure that the documents produced by Plaintiff were accurate and complete.  Indeed, by

producing documents responsive to the Select Committee's subpoena to Budowich personally,

Budowich has already acknowledged that he was involved in financing the events on January 6, 2021.  *See* Am. Compl. ¶¶ 57-62.  And although Plaintiffs complain about the timeframe of the subpoenaed records (Opp. 20), they overlook that information regarding the financial planning and consequences of the events of January 6th would likely appear in financial records both pre-dating and post-dating the attack.

Finally, Plaintiffs argue (again) that the Select Committee lacks a valid legislative purpose because its authorizing resolution does not identify remedial legislation, and that the Select Committee is engaging in an "impermissible law enforcement inquiry."  Opp. 20-21. Those arguments, however, are squarely foreclosed by *Trump v. Thompson*.  *See* 20 F.4th at 42 (noting that House Resolution 503 "expressly authorizes the Committee to propose legislative measures" and explaining that "[t]he mere prospect that misconduct might be exposed does not make the Committee's request prosecutorial").

2.  Plaintiffs similarly rehash their arguments that the Select Committee is invalidly constituted.  *See* Opp. 13-16.  But Plaintiffs largely ignore the deference owed to Congress in interpretation of its own rules, which this Court correctly understood.  *See* ECF 27 at 34:1-10; ECF 23 at 14-19.  The most Plaintiffs can muster is that "[a]lthough the judiciary normally avoids questions of congressional procedure and authority," this Court "can intervene" here because the Select Committee is "fail[ing] to comply with its own authorizing charter."  Opp. 16. Of course, Plaintiffs' argument is circular.  Nearly every challenge to a Congressional interpretation of its own rule involves an accusation that Congress is not complying with the rule—that is exactly the circumstance in which deference is required.

Further, Plaintiffs' reading of the authorizing resolution is wrong.  Plaintiffs cite cases for the proposition that "shall" often signifies an obligation (Opp. 14), but they fail to grapple with

the deference due to an interpretation by Congress—and here the Speaker, as ratified several times by the full House—of the House's own resolution.  Indeed, the nine-member composition follows from the Minority Leader's withdrawal of his recommendations and refusal to engage in the consultation process after the Speaker rejected two of his recommendations.  *See* ECF 23 at 4.  Consistent with House precedent and the structure of House Resolution 503—including its quorum requirement (H. Res. 503, § 5(c)(3))—the Speaker correctly determined that the Select Committee could operate with nine members.  Put simply, nothing in House Resolution 503 allows the Minority Leader to unilaterally halt the operation of the Select Committee. Furthermore, Plaintiffs do not address the fact that there is House precedent for a select committee operating with fewer than its full allotment of members when an authorizing resolution used substantially similar language.  *See* ECF 23 at 16.

With respect to "consultation with the minority leader," Plaintiffs overlook that the Speaker *did* in fact consult with the minority leader about the appointments, which is sufficient to satisfy the resolution.  *See* ECF 23 at 18-19.  Notably, the House has repeatedly validated the Select Committee's structure and use of subpoenas, including after being explicitly presented with the same arguments made by Plaintiffs.  *See*, *e.g.*, *Resolution Recommending that the House of Representatives Find Peter K. Navarro and Daniel Scavino, Jr., in Contempt of Congress for Refusal to Comply with Subpoenas Duly Issued by the Select Committee to Investigate the January 6th Attack on the United States Capitol,* H. Res 1037, 117th Cong. (2d Sess. 2022); 165 Cong. Rec. H4216-18 (daily ed. Apr. 6, 2022).  As this Court has already recognized, the Select Committee's reasonable interpretation is entitled to deference.

## B.    The Right to Financial Privacy Act Does Not Apply To Congress

Plaintiffs maintain that the Right to Financial Privacy Act applies to the Select Committee's subpoena (Opp. 33-41), but, as this Court recently recognized, the statute "neither

applies to congressional inquiries nor protects records relating to corporations such as Conservative Strategies."  ECF 40 at 3 (citations omitted).  Indeed, the text of the Act, the statutory context, and its legislative history leave no doubt that Congressional requests for information are not governed by the statute.  *See* ECF 23 at 24-33.  Plaintiffs' contrary arguments are unconvincing.

*First*, resisting the ordinary meaning of the terms "agency" and "department" (*see* ECF 23 at 27-28), Plaintiffs point to definitions of those terms on government websites, uses of the terms in various case law, and even the use of "Department" in a 1973 document regulating access to press galleries (Opp. 35-37).  None of those sources is sufficient to overcome the ordinary understanding that a Congressional committee is not an agency or department.  After all, in *Hubbard v. United States*, 514 U.S. 695 (1995), the Supreme Court suggested that "department or agency of the United States"—as used in 18 U.S.C. § 1001—refers *only* to Executive Branch entities, explaining that "while we have occasionally spoken of the three branches of our Government, including the Judiciary, as 'department[s],' that locution is not an ordinary one," and "[f]ar more common is the use of 'department' to refer to a component of the Executive Branch."  514 U.S. at 699 (citation omitted).  Plaintiffs do not even mention *Hubbard*, let alone attempt to distinguish it.  They cannot.

*Second*, Plaintiffs disregard the Right to Financial Privacy Act's structure and other uses of "agency or department" (*see* ECF 23 at 26-28), and instead point to a smattering of provisions that they claim support their position (Opp. 38-40).  But their arguments are based on misreading those provisions.  For example, Plaintiffs point out that Section 3413(j) contains an exemption "where 'financial records are sought by the Government Accountability Office' ['GAO']," and contend that because Congress exempted the GAO (a specific agency within the Legislative

Branch) it must not have intended to exempt itself.  Opp. 38-39 (quoting 12 U.S.C. § 3413(j)).

But Section 3413(j) differentiates the GAO from "a government authority" and thus supports the

opposite conclusion:  the GAO may obtain financial records in its proceedings or investigations

that are "*directed at* a government authority." 12 U.S.C. § 3413(j) (emphasis added).

Similarly, Plaintiffs argue that Section 3412(d) "specifically addresses the one

circumstance where Congressional inquiries are *not* subject to RFPA's procedures: when the

records request is from 'a duly authorized committee or subcommittee of Congress' to 'any

officer or employee of a supervisory agency.'"  Opp. 39-40 (quoting 12 U.S.C. § 3412(d)).

Plaintiffs contend that the Congressional Defendants' argument would render that provision

superfluous.  *Id.* at 40.  But Plaintiffs selectively quote from Section 3412 and read it out of

context.  That Section governs "[u]se of information," and its provisions apply to the handling of

financial records *already obtained by a government authority*.  *See, e.g.*, 12 U.S.C. § 3412(a).

Subsection (d) says nothing about records *requests from* Congress.  It simply provides that

officers or employees of supervisory agencies (*i.e.*, Executive Branch agencies that oversee the

financial sector) may transfer records in their possession *to* Congress without adhering to the

statute's requirements concerning inter-agency transfers.

*Third*, Plaintiffs implausibly argue that the legislative history of the Act supports their

reading.  *See* Opp. 38.  To the contrary, that history makes clear that Congress did not intend the

Act's restrictions to govern Congress.  *See* ECF 23 at 28.  The Department of Justice specifically

proposed legislative language that would have defined "government authority" to mean "*the

Congress of the United States*, or any agency or department of the United States or of a State or

political subdivision, or any officer, employee or agent of any of the foregoing."[2]  (Notably, the separate listing of Congress in the proposal underscores the ordinary understanding that Congress is *not* an "agency or department.")  But Congress did not adopt that proposal.  Instead, Congress focused on limiting agencies'—not Congress's—access to customer financial records, with exceptions for law enforcement activities.  *See* H. Rep. No. 95-1383, at 6 (1978) (the Act would "[g]ive[] individuals notice of, and a chance to challenge, *Federal Government agency requests* for their bank records" (emphasis added)); *id.* at 33.  That Congress chose not to bind itself when enacting the Right to Financial Privacy Act does not lead to "perilous consequences" or "betray" the purpose of the statute (Opp. 40)—it simply means that the statute was not intended to address Congressional requests for information.

Notably, Plaintiffs fail to acknowledge that the only court to address this issue rejected the argument they advance here.  *See Deutsche Bank AG*, 943 F.3d at 627.[3]  Relying on the statutory structure and context, dictionary definitions, and legislative history, the Second Circuit correctly held that a committee of Congress is not a government authority under the Right to Financial Privacy Act.  This Court should hold the same.

### C.    Plaintiffs' Constitutional Claims Fail

For the reasons the Congressional Defendants have explained, Plaintiffs have failed to state a claim for relief under the Constitution.  *See* Mem., ECF 33 at 13-19.  Plaintiffs now argue (Opp. 41) that they have "asserted several liberty and property interests warranting due process protection."  But, crucially, their arguments flout the principle that "determining that a person

---

[2] *Elec. Funds Transfer and Fin. Priv.: Hearings on S. 2096, S. 2293 and S. 1460 Before the Subcomm. on Fin. Insts. of the S. Comm. on Banking, Hous. and Urb. Affs.*, 95th Cong. 194, 397 (1978) (emphasis added); *see id.* at 161.

[3] The Supreme Court vacated the Second Circuit's decision on other grounds, but the petitioners did not challenge the Second Circuit's holding that the Right to Financial Privacy Act did not apply, and the Supreme Court did not address it.  *See Mazars*, 140 S. Ct. 2019.

has a liberty interest under the Due Process Clause does not end the inquiry; whether [a person's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant [governmental] interests." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 279 (1990) (quotation marks, citation, and footnote omitted).  Plaintiffs' failure to explain how that balance comes out in their favor is fatal to their due process argument.  In fact, that balance tilts decisively toward Congress:  a Congressional committee has a profound interest in promptly obtaining subpoenaed documents from a third party to advance an investigation.  *See* Mem. at 17-18.

Nor do Plaintiffs offer any persuasive support for the proposition that they are entitled to notice and an opportunity to seek judicial intervention before a third party complies with a Congressional subpoena.  Plaintiffs do not, and cannot, explain why they would be entitled to more process than that provided in other Congressional investigations.  *See* Mem. 18-19. Plaintiffs rely on *Eastland*, 421 U.S. at 501 n.14 (Opp. 43), but (again) they misconstrue that decision.  Nowhere did the Court in *Eastland* hold or even suggest that, as a matter of due process, a Congressional committee must notify an interested party—and allow sufficient time for a court challenge—before the committee obtains information from a third party pursuant to a subpoena.

In any event, Plaintiffs have not alleged any liberty interest sufficient to underpin a due process claim.

*First*, Plaintiffs summarily assert (Opp. 42) that their First Amendment interests "warranted an opportunity to challenge the subpoena before the records were turned over."  But they do not identify any valid First Amendment interests in the first place.  Indeed, Plaintiffs offer no response to the fact that courts have routinely rejected arguments that compelled

disclosure of information regarding contributors, clients, and associates of organizations involved in political activities implicates the First Amendment. *See, e.g.*, *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 6 (D.C. Cir. 2009) (citing *United States v. Harriss*, 347 U.S. 612, 625-26 (1954)); *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 46 (2018); ECF 23 at 34; Mem. 16-17.  Plaintiffs' First Amendment arguments likewise fail.

*Second*, Plaintiffs contend (Opp. 42) that the Right to Financial Privacy Act creates a protectable Fifth Amendment interest.  Plaintiffs cite no court decision embracing their novel theory.  In any event, as discussed above, the Right to Financial Privacy Act does not apply to a Congressional subpoena, and thus cannot serve as a basis for a liberty interest here.  *See* pp. 14-17, *supra*.

*Third*, Plaintiffs appear to suggest (Opp. 43) that their due process claim is predicated on the Fourth Amendment.  Plaintiffs distinguish *United States v. Miller*, 425 U.S. 435 (1976) (Opp. 43)—a case on which the Congressional Defendants did not rely for their Fourth Amendment arguments—and say this case is more like *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (Opp. 44)—an inapposite case involving cell-site location information.   But Plaintiffs offer no compelling response to the Congressional Defendants' argument that the subpoena is appropriately tailored to meet the Select Committee's valid legislative purpose.  *See* Mem. 14-15.  Indeed, this Court has already held that the subpoena at issue is not impermissibly broad. *See* ECF 27 at 12:25-13:3.  That correct conclusion—and Plaintiffs' failure to respond—dooms their Fourth Amendment argument.

Plaintiffs have failed to state any claim under the Due Process Clause.

## CONCLUSION

For the reasons stated above and in the Congressional Defendants' opening memorandum in support of their motion to dismiss, this Court should dismiss the Amended Complaint in its entirety against the Congressional Defendants.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov
-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte[*]
Noam Biale
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com
-and-

20

ARNOLD & PORTER
John A. Freedman
Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

Dated:  April 15, 2022

---

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter